**UNITED STATES DISTRICT COURT**
**DISTRICT OF NEW JERSEY**

| | |
|---|---|
| M.H. and J.H., on behalf of their minor child C.H., | |
| Plaintiffs, | Civil Action No. 2:20-cv-11294-KM-JBC |
| v. | |
| OMEGLE.COM, LLC., | |
| Defendant. | |

**PLAINTIFFS' OPPOSITION TO DEFENDANT OMEGLE.COM, LLC'S MOTION TO DISMISS PLAINTIFF'S COMPLAINT**

## <u>TABLE OF CONTENTS</u>

TABLE OF AUTHORITIES ............................................................................................... 3

PRELIMINARY STATEMENT ....................................................................................... 7

STATEMENT OF FACTS ................................................................................................ 8

ARGUMENT .................................................................................................................. 10

  I.   PLAINTIFFS HAVE SUFFICENTLY PLEAD PERSONAL JURISDICTION OVER OMEGLE .................................................................................................................. 10

    A.   This Court Has Personal Jurisdiction Over Interactive Websites that Solicit Users Within the Jurisdiction ....................................................................................... 11

    B.   The "Effects Test" Conveys Personal Jurisdiction to this Court ............................... 13

  II.   PLAINTIFF HAS PROPERLY PLEADED COGNIZABLE CLAIMS AGAINST THE DEFENDANT .......................................................................................................... 15

    A.   C.H. Has Pleaded a Valid Cause of Action under the VPPA ..................................... 15

      1.   C.H. Has Alleged that Omegle Is a "Video Service Provider" under the VPPA ....... 16

      2.   C.H. Has Pleaded Facts Showing that She Was a "Subscriber" of Omegle ............. 17

      3.   C.H. Has Pleaded that Omegle Collected and Disclosed Her PII without Parental Consent ...................................................................................................... 18

    B.   Omegle Is Not Immune From Suit Under Section 230 Of The Communications Decency Act ........................................................................................................... 20

  III.   PLAINTIFF HAS ALLEGED SUFFICIENT STATE LAW CLAIMS AGAINST THE DEFENDANT .......................................................................................................... 23

    A.   C.H. Has Properly Pleaded an Intrusion upon Seclusion Cause of Action ................ 23

      1.   C.H. Has Pleaded a Cause of Action for Negligence .................................................. 27

      2.   C.H. Has Pleaded a Cause of Action for Intention Infliction of Emotional Distress . 28

CONCLUSION ................................................................................................................ 30

## <u>TABLE OF AUTHORITIES</u>

*Cases*

*Ajax Enterprises, Inc. v. Szymoniak Law Firm, P.A.,*
    CIV.A. 05-5903 NLH, 2008 WL 1733095, (D.N.J. Apr. 10, 2008) ........................................ 11

*Asahi Metal Indus. Co. v. Superior Court,*
    480 U.S. 102 (1987) ...................................................................................................... 15, 23

*Beckman v. Match.com, LLC,*
    743 Fed. App'x. 142 (9th Cir. 2018) ................................................................................ 28

*Bell Atl. Corp. v. Twombly,*
    550 U.S. 544 (2007) ............................................................................................................ 15

*Bisbee v. John C. Conover Agency,*
    186 N.J. Super. 335 (App. Div. 1982) ............................................................................. 23

*Buckley v. Trenton Sav. Fund Soc'y,*
    111 N.J. 355 (1988) ..................................................................................................... 29, 30

*Calder v. Jones,*
    465 U.S. 783 (1984) ............................................................................................................ 13

*Cammer v. Bloom,*
    711 F. Supp. 1264 (D. N.J. 1989) ...................................................................................... 31

*Christie v. National Institute for Newman Studies,*
    258 F. Supp. 3d 494 (D.N.J., 2017) ............................................................................ 13, 14

*Cisco Sys. Inc. v. ST Microelectronics Inc.,*
    2015 WL 5138556 (N.D. Cal., 2015) ................................................................................ 13

*CompuServe, Inc. v. Patterson,*
    89 F.3d 1257 (6th Cir.1996) .............................................................................................. 11

*D'Jamoos ex rel. Estate of Weingeroff v. Pilatus Aircraft Ltd.,*
    566 F.3d 94 (3rd Cir., 2009) ......................................................................................... 14, 15

*Doe v. MySpace Inc.,*
    528 F.3d 413 (5th Cir., 2008) ............................................................................................ 22

*Dole Food Co., Inc. v. Watts,*
    303 F.3d 1104 (9th Cir., 2002) .......................................................................................... 13

*Dyroff v. Ultimate Software Group, Inc.,*
    934 F.3d 1093 (9th Cir. 2019), *cert. denied*, 140 S. Ct. 2761 (2020) ................................ 27, 28

*Ellis v. Cartoon Network, Inc.*,
   803 F.3d 1251 (11th Cir., 2015) ........................................................ 17

*Fair Housing Council of San Fernando Valley v. Roommates.com, LLC*,
   521 F.3d 1157 (9th Cir., 2008) .......................................................... 22

*Federal Trade Commission v. Accusearch Inc.*,
   570 F.3d 1187 (10th Cir. 2009) ......................................................... 22

*Friedman v. Martinez*,
   242 N.J. 449 (2020) ........................................................................... 24

*Frugis v. Bracigliano*,
   177 N.J. 250 (2003) ..................................................................... 20, 28

*GTE New Media Services Inc. v. Ameritech Corp.*,
   21 F. Supp. 2d 27 (D.D.C., 1998) ..................................................... 12

*Harkwicke v. American Boychoir School*,
   188 N.J. 69 (2006) ...................................................................... 29, 30

*In re Civil Commitment of J.M.B.*,
   395 N.J. Super. 69 (N.J. App. Div. 2007) ......................................... 24

*In re Facebook Inc. Internet Tracking Litigation*,
   956 F.3d 589 (9th Cir. 2020) ............................................................ 26

*In re Google Inc. Cookie Placement Consumer Privacy Litigation*,
   806 F.3d 125 (3rd Cir. 2015) ............................................................ 24

*In re Nickelodeon Consumer Privacy Litigation*,
   827 F.3d 262 (3d Cir. 2016) .............................................................. 18

*Jane Doe No. 14 v. Internet Brands, Inc.*,
   824 F.3d 846 (9th Cir. 2016) ............................................................ 22

*Kost v. Kozakiewicz*,
   1 F3d 176 (3d Cir. 1993) .................................................................. 15

*Manigault-Johnson v. Google, LLC*,
   2019 U.S. Dist. LEXIS 59892 (D.S.C. Mar. 31, 2019) ................ 24, 25

*Maritz, Inc. v. Cybergold, Inc.*,
   947 F.Supp. 1328 (E.D.Mo.1996) ..................................................... 12

*McDonald v. Kiloo APS*,
   385 F. Supp. 3d 1022 (N.D. Cal. 2019) ....................................... 25, 26

*McTernan v. City of York, Pennsylvania,*
    577 F.3d 521 (3rd Cir. 2009) ........................................................ 26

*Minatee v. New Jersey,*
    710 F. Supp. 2d 487 (D.N.J., 2010) ............................................ 20

*NOC, Inc. v. Schaefer,*
    197 N.J. Super. 249 (Law Div., Burlington Co., 1984) ................ 23

*Perry v. Cable News Network, Inc.,*
    854 F.3d 1336 (11th Cir., 2017) .................................................. 17

*R.B. v. Westmoreland County,*
    526 Fed. App'x. 181 (3rd Cir. 2013) ........................................... 29

*Ryder v. McCabe,*
    475 F. App'x 411 (3d Cir. 2012) .................................................. 15

*Saponaro v. Grindr, LLC,*
    93 F. Supp. 3d 319 (D.N.J., 2015) ............................................... 20

*Settineri v. PNC Bank Corp.,*
    371 N.J. Super. 537 (App. Div. 2004) .......................................... 29

*Shuker v. Smith & Nephew, PLC,*
    885 F.3d 760 (3rd Cir., 2018) ...................................................... 14

*Stanford v. Stiles,*
    456 F.3d 298 (3rd Cir. 2006) ....................................................... 29

*Taylor v. Metzger,*
    152 N.J. 490 (1998) ..................................................................... 29

*Toys "R" Us, Inc. v. Step Two, S.A.,*
    318 F.3d 446 (3rd Cir. 2003) ................................................. 12, 13

*United States v. Jones,*
    565 U.S. 400 (2012) ..................................................................... 18

*Weber v. Jolly Hotels,*
    977 F.Supp. 327 (D.N.J.1997) ..................................................... 11

*World-Wide Volkswagen Corp. v. Woodson,*
    444 U.S. 286 (1980) ..................................................................... 14

*Wytupeck v.City of Camden,*
    25 N.J. 450 (1957) ....................................................................... 27

*Yershov v. Gannett Satellite Information Network, Inc.*,
    820 F.3d 482 (1st Cir., 2016) ................................................................... 17, 18, 19

*Zenith Radio Corp. v. Hazeltine Research, Inc*.,
    401 U.S. 321, 91 S.Ct. 795, 28 L.Ed.2d 77 *reh'g denied*, 401 U.S. 1015, 91 S.Ct. 1247, 28
    L.Ed.2d 552 (1971) ................................................................................................. 31

*Zippo Manufacturing Co. v. Zippo Dot Com., Inc*.,
    952 F.Supp. 1119 (W.D.Pa.1997) .................................................................. 11, 12, 13

**Statutes**

18 U.S.C. § 1595 .......................................................................................................... 23

47 U.S.C. § 230(f)(3) .................................................................................................... 22

**Other Authorities**

Meaghan E. Mixon, "Barely Legal: Bringing Decency Back to the Communications Decency
    Act of 1996 To Protect the Victims of Child Sex Trafficking," UCLA Women's Law Journal
    25(1) 46, 57-58 (2018) ............................................................................................... 23

**Rules**

16 C.F.R. § 312.2 .......................................................................................................... 21

Fed. R. Civ. P. 12(b) .................................................................................................... 26

Fed. R. Civ. P. 32.1(b) .................................................................................................. 28

**Treatsies**

Restatement (Second) of Torts § 652B ........................................................................ 24

## PRELIMINARY STATEMENT

Defendant Omegle.com, LLC ("Omegle" or the "Company") urges this Court to dismiss Plaintiffs' Complaint ("Compl.") by misrepresenting that "Plaintiffs seek to hold [Omegle] responsible for the criminal actions of a third-party user of Omegle's online real-time chat service." Defendant's Brief in Support of its Motion to Dismiss ("Def. Br.") at 9. Defendant is wrong.

As the Complaint emphasizes, Plaintiff C.H. – an eleven-year-old victim of sexual exploitation – brings this action against Omegle because of its "*unfair and deceptive business practices*," which include failing to: (1) failing to post a "complete notice of its information practices" with respect to young children; (2) failing to take precautions to "prevent the use of its website by minors under the age of consent"; (3) failing to "provide any guidance to parents looking to monitor their [minor] children's use of the website"; and (4) the collection and disclosure of her "personally identifiable information,"[1] ("PII") in violation of applicable law, "without verifiable parental consent," resulting in her victimization by a predator who made predictable use of Omegle's high-risk "service." Compl. ¶¶ 2, 4, 15, 34, 36, 47-49. Because of Omegle's manifold misconduct, C.H. was sexually exploited – giving rise to a cause of action under the federal Video Privacy Protection Act ("VPPA") as well as state law claims for intrusion upon seclusion, negligence and intentional infliction of emotional distress.

Omegle calls young C.H.'s exploitation "reprehensible." Def. Br. at 1. In view of Omegle's illegal use of its site to mine PII from vulnerable young children, and to expose them to abuse by strangers – a pattern demonstrably well known to Omegle from the victimization of other children

---

[1] This somewhat awkward phrase is a legal term of art that will be discussed in more detail below. It refers essentially to an individual's personal information.

by means of its "service" – what is "reprehensible" is Omegle's insistence that it bears no responsibility for the misconduct resulted in C.H.'s injuries.

Fortunately, this Court has an opportunity to right a wrong to C.H. that, if uncorrected, will allow Omegle to continue to expose countless other children to similar exploitation. As shown below, Omegle's efforts to thrust aside C.H.'s complaint without even answering it should be rejected and Omegle's motion denied.

## STATEMENT OF FACTS

The Children's Online Privacy Act ("COPPA") prevents developers of child-focused apps and websites from lawfully obtaining the PII of children under 13 years of age without first obtaining verifiable consent from their parents. Compl. ¶12-17. COPPA applies to any operator of a commercial website or online service that is directed to children and that "collects, uses, and/or discloses PII of children," or "on whose behalf such information is collected or maintained." *Id.* at ¶13. Among other things, COPPA defines PII as the user's "geolocation or information sufficient to identify street name and name of a city or town." *Id.* at ¶14.  Obtaining "verifiable parental consent" has been defined through a series of acceptable actions. *Id.* at ¶17.  None of these actions were taken by Omegle. *Id.* at ¶¶ 35-36.

Omegle is an operator pursuant to COPPA. *Id.* at ¶¶18-19. Omegle is a website that enables an individual user to communicate with random individuals across the world anonymously via text and video. *Id.* at ¶20.  Users of Omegle log-in using a webcam and microphone and are matched with another random user and are generally paired randomly. *Id.* at ¶21. The website designates users as "You" or "Stranger 1" or "Stranger 2." *Id.* When a user loads the Omegle webpage, the user is met with the following language: "[t]o help you stay safe, chats are anonymous unless you tell someone who you are (not suggested!), and you can stop a chat at any time. **Predators have**

**been known to use Omegle, so please be careful**." *Id*. at ¶22 (emphasis in original). To use the Omegle website, a user simply clicks on "text" or "video" under the words "start chatting" and the user is then immediately placed in a chat with a stranger. *Id*. at ¶24.

Notably, Omegle's website does not require any age verification or authentication. There is nothing preventing a minor under the age of thirteen (13) from accessing the website. *Id*. at ¶25. Omegle's website is vulnerable to hacking and a user of Omegle is able to grab screenshots of previous conversations and then use this data to obtain another user's geographic location. *Id*. at ¶26. Since 2016, the use of Omegle's website by pedophiles became known to the public and to the Company itself. *Id*. at ¶27. The Company has been mentioned in numerous criminal cases across the country – including in the State of New Jersey– as individuals have been arrested for possessing and promoting child pornography obtained through Omegle's website. *Id*. at ¶¶ 28-29. The Company is aware that both child predators and children use its website. *Id*. at ¶¶ 30-33. Despite the Company's knowledge of the use of its website for these nefarious purposes, the Company took no precaution to monitor or log the content of the chats of its users. *Id*. at ¶35. Further, the Company took no precaution to actually monitor the age of its users or prevent the use of its website by minors under the age of consent. *Id*. at ¶36.

Plaintiffs M.H. and J.H. are parents of minor C.H, who was born in 2009 and at all relevant times was eleven (11) years old and resides in the State of New Jersey. *Id*. at ¶4. During the COVID-19 pandemic, C.H. was forced to attend school remotely and as such was provided with a Chromebook from her school. *Id*. at ¶38. On March 31, 2020, C.H. used her Chromebook to access the Omegle website for the first time, and she was first paired with a group of minors who appeared to be older than C.H. *Id*. at ¶39. After C.H. ended the chat with the minors, she entered a second chat, where she met a black screen and an unknown user ("Doe") began to type text which appeared

on her screen. *Id*. at ¶¶40-41. Doe informed C.H. that he knew where she lived, her geolocation and threatened to hack other cell phones and computers identified in her home. *Id*. at ¶41.

Despite C.H.'s repeated pleas, Doe continued to threaten C.H. and demanded she remove all of her clothing – including her underwear – and touch herself in front of the camera. *Id*. at ¶43. C.H. pleaded with Doe and offered gift cards to Doe instead of complying with his demand, but Doe became more forceful with C.H. and demanded that she remove her clothing. *Id*. Eventually, C.H. complied with Doe's demands and disrobed and touched herself according to the instructions she received. *Id*. Doe captured screen grabs or videos of C.H.'s actions forever memorializing her forced pornographic performance. *Id*. at ¶44. Immediately after this incident, C.H. notified her parents of what occurred and M.H. and J.H. reported the incident to the local police authorities. *Id*. at ¶45.

While using Omegle, neither C.H. nor her parents were asked for verifiable parental consent to collect, disclose, or use C.H.'s PII, including C.H.'s geolocation. *Id*. at ¶5. Moreover, neither M.H. nor J.H. were ever provided direct notice with regard to the collection, use and disclosure of C.H.'s PII. *Id.* C.H. brings suit and alleges that Omegle used "deceptive business practices" (*Id*. at ¶ 2) which attracted children under the age of 13 to the site. She alleges, further, that Omegle failed to take even the smallest of the required precautions to prevent a minor from using Omegle's "service," from having her PII collected without parental consent, or from being exposed to the danger of exploitation by a "predator" through the operation of that website, including its wrongful collection of her PII. *Id*. at ¶¶ 55-56.

## **ARGUMENT**

I.   **PLAINTIFFS HAVE SUFFICENTLY PLEAD PERSONAL JURISDICTION OVER OMEGLE**

Omegle's maneuvers to deny C.H. her day in court begin with its refusal to recognize the personal jurisdiction of any tribunal located in New Jersey.

A.   **This Court Has Personal Jurisdiction Over Interactive Websites that Solicit Users Within the Jurisdiction**

Federal courts have repeatedly held that a company – like Omegle – which maintains a website deliberately aimed at users throughout the world that has, in fact, attracted considerable use within the forum state (*see* Compl. ¶ 29)[2] – is subject to personal jurisdiction in the federal court sharing that forum.

In analyzing a defendant's contacts through the use of the Internet, the probability that personal jurisdiction may be constitutionally exercised is directly proportionate to the nature and quality of commercial activity that an entity conducts over the internet. *Ajax Enterprises, Inc. v. Szymoniak Law Firm, P.A.*, CIV.A. 05-5903 NLH, 2008 WL 1733095, at *5 (D.N.J. Apr. 10, 2008); *see also Zippo Manufacturing Co. v. Zippo Dot Com., Inc*., 952 F.Supp. 1119, 1124 (W.D.Pa.1997). Three types of contacts have been identified in order to determine the existence of personal jurisdiction. *Weber v. Jolly Hotels*, 977 F.Supp. 327, 333 (D.N.J.1997). The first type of contact is when the defendant clearly does business over the internet. *Id*. "If the defendant enters into contracts with residents of a foreign jurisdiction that involve the knowing and repeated transmission of computer files over the internet, personal jurisdiction is proper." *Zippo*, 952 F.Supp. at 1124 (citing *CompuServe, Inc. v. Patterson*, 89 F.3d 1257 (6th Cir.1996)). The second type of contact occurs when "a user can exchange information with the host computer. In these cases, the exercise of jurisdiction is determined by examining the level of interactivity and

---

[2] Indeed, Omegle's site has already attracted the interest of actual and would-be child abusers within New Jersey. "In April 2019, in the state of New Jersey, twenty-four sexual predators were arrested…for using social media platforms – including Omegle – to lure children for sex." *Id.*

commercial nature of the exchange of information that occurs on the website." *Zippo*, at 1124 (citing *Maritz, Inc. v. Cybergold, Inc*., 947 F.Supp. 1328 (E.D.Mo.1996).  *See also GTE New Media Services Inc. v. Ameritech Corp.*, 21 F. Supp. 2d 27 (D.D.C., 1998) (upholding personal jurisdiction over defendant who, through "internet-related contacts," caused tortious injury within forum state).

In an exceptional case, the Third Circuit held that a website would *not* support personal jurisdiction where the site is specifically *not* intended for users in the forum state – a situation altogether remote from this case:

> [Defendant] Step Two's web sites, while commercial and interactive, do not appear to have been designed or intended to reach customers in New Jersey. Step Two's web sites are entirely in Spanish; prices for its merchandise are in pesetas or Euros, and merchandise can be shipped only to addresses within Spain. Most important, none of the portions of Step Two's web sites are designed to accommodate addresses within the United States.

*Toys "R" Us, Inc. v. Step Two, S.A.*, 318 F.3d 446, 454 (3rd Cir. 2003).

Here, both the first and second types of contacts are relevant and present within the jurisdiction of this Court and have been alleged in the Complaint. In fact, Omegle actually concedes that C.H. may establish this Court's personal jurisdiction with a showing of "specific contacts" between Omegle's website and New Jersey. But instead, ignores the specific allegations in the complaint and argues that C.H. has not even alleged such contacts. Def. Br. at 7-8.

Plaintiffs allege that Omegle clearly intends to reach all internet users, regardless of geographical location. Compl. ¶¶ 5, 6, 10, 11. The Complaint alleges that Omegle automatically and indiscriminately responds to each and every internet user who accesses its website. *Id*. at ¶¶20-26.  Indeed, Omegle's advertised service, which boasts of connecting the widest possible range of users for real-time "chats," could not operate in any other way. *Id*. at ¶¶20-23. Omegle's website is interactive – the user selects the kind of "chat" she wants, either "text" or  "video," and Omegle

changes the parties she has been "paired"– all by "clicking" appropriate on-screen buttons. *Id.* at ¶¶ 20-24.

Further, C.H. was injured through her use of Omegle's "interactive website"; Omegle obtained her PII through that contact; Omegle's goal in facilitating that contact (as with all the contacts arranged through its "service") was clearly commercial, a fact alleged in the Complaint and not denied by Omegle. Compl. ¶ 52. To the contrary, Plaintiffs specifically allege that Omegle "caus[es] its products and services to be disseminated in this District, including its website used by C.H." Compl. ¶ 10. Under *Zippo* and *Toys "R" Us*, these allegations establish the required "specific contacts" with New Jersey and thus establish this Court's jurisdiction.

B.     **The "Effects Test" Conveys Personal Jurisdiction to this Court**

Personal jurisdiction in New Jersey is further confirmed through the application of the "effects" test set forth in *Calder v. Jones*, 465 U.S. 783, 788 (1984). Indeed, this Court has already held that "in tort cases that involve harmful communications…the 'express aiming' requirement of the 'effects test' remains satisfied when the defendant is alleged to have engaged in wrongful conduct targeted at a plaintiff whom the defendant knows to be a resident of the forum state." *Christie v. National Institute for Newman Studies*, 258 F. Supp. 3d 494, 504 (D.N.J., 2017), *citing Cisco Sys. Inc. v. ST Microelectronics Inc.*, 2015 WL 5138556 at *3 (N.D. Cal., 2015) and *Dole Food Co., Inc. v. Watts*, 303 F.3d 1104, 1111 (9th Cir., 2002). Specifically, the Court stressed that "if an Internet tortfeasor claims ignorance of where his tortious conduct will be felt, but knows his conduct will result in an injury, his claim of ignorance cannot defeat personal jurisdiction." *Christie,* 258 F. Supp. 3d at 505.

This reasoning applies perfectly here. Omegle's illegal collection of C.H.'s PII was a tortious act, which Omegle certainly knew; moreover, given the history of Omegle's role in

facilitating sexual exploitation of children by way of that wrongful collection (as amply alleged in the Complaint), Omegle was also aware of the likelihood of the C.H.'s resultant additional injury. Under this Court's holding in *Christie, supra*, Omegle's professed ignorance that these injuries would occur in New Jersey "cannot defeat personal jurisdiction."

Ignoring all this authority, Omegle insists that it can only be subject to personal jurisdiction in the state in which it maintains "its principal place of business." *See* Def. Br. at 6. Evidently Omegle would require anyone injured through the use of its website, no matter where, to file suit in the state in which Omegle happens to be headquartered – even if that state is thousands of miles in distance from the victim.

In fact, the Third Circuit in *D'Jamoos ex rel. Estate of Weingeroff v. Pilatus Aircraft Ltd.,* 566 F.3d 94 (3rd Cir., 2009) went on to reject the very argument Omegle advances, ruling that where a plaintiff's claim arises out of the defendant's "efforts to serve, even indirectly, the [forum state] market" – exactly the situation in this case, where Omegle's projection of its website into New Jersey resulted in C.H.'s injury – "it is not unreasonable to subject it [defendant] to suit" in that state. 566 F.3d at 106, *citing World-Wide Volkswagen Corp. v. Woodson*, 444 U.S. 286, 297 (1980).

C.H. has alleged just this set of facts. Omegle does not deny – nor can it – that it seeks "to serve" the New Jersey "market," whether directly or indirectly. Nor can it deny that C.H.'s injury arose from Omegle's efforts. It follows that personal jurisdiction is proper in this Court.

Omegle argues that *Shuker v. Smith & Nephew, PLC*, 885 F.3d 760, 780 (3rd Cir., 2018) rejects "the...stream-of-commerce theory of personal jurisdiction." Def. Br. at 7. Omegle's argument is misplaced. The *Shuker* Court reasoned that plaintiffs failed to allege "some act by which the defendant purposefully avails itself of the privilege of conducting activities within the

forum state, thus invoking the benefits and protections of its laws." 885 F.3d at 780, *citing Asahi Metal Indus. Co. v. Superior Court*, 480 U.S. 102, 109 (1987).

As shown above, *D'Jamoos* does not – as Omegle asserts – reject the "stream-of-commerce theory of personal jurisdiction" under facts like these, in which Omegle has "avail[ed] itself of the privilege of conducting activities within" New Jersey through its "efforts to serve" this forum, whether those injected efforts are deemed to be "direct" or "indirect." 566 F.3d at 104. Specifically, where Plaintiffs have sufficiently alleged that Omegle has made purposeful efforts to serve consumers of its interactive website within the fourm. Thus, under the very precedents Omegle cites, the personal jurisdiction of this Court is not in doubt. Omegle's attempt to force children like C.H. to traverse thousands of miles in search of justice for the devastating effects of its worldwide "service" is nothing more than a smokescreen. It should not mislead the Court.

## II.   PLAINTIFF HAS PROPERLY PLEADED COGNIZABLE CLAIMS AGAINST THE DEFENDANT

A plaintiff must "state a claim for relief that is plausible on its face." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007); *see also Ryder v. McCabe*, 475 F. App'x 411, 412 (3d Cir. 2012). A compliant states a claim upon which relief may be granted when it alleges "sufficient information to outline the elements" of a claim or permits "inferences to be drawn that these elements exist." *See Kost v. Kozakiewicz*, 1 F.3d 176, 183 (3d Cir. 1993). Therefore, a complaint should not be dismissed for failure to state claim unless it appears beyond doubt that *plaintiff can prove no set of facts* in support of her claim which would entitle her to relief. *See Twombly*, 550 U.S. at 570 (emphasis added). Accordingly, Omegle's motion to dismiss must fail as a matter of law.

### A.   C.H. Has Pleaded a Valid Cause of Action under the VPPA

As Omegle concedes the VPPA establishes a civil cause of action if three factual elements are alleged: that Omegle is a "video service provider"; that C.H. was a "subscriber" to Omegle's website service; and that Omegle collected and disclosed her "personally identifiable information." *See* Def. Br. at 16. C.H. has alleged these elements. It follows then, as a matter of law, this cause of action is not subject to dismissal.

      **1.**    **C.H. Has Alleged that Omegle Is a "Video Service Provider" under the VPPA**

Omegle denies that it is a "video tape service provider" solely because, it says, "the Complaint is devoid of any *facts* showing that Omegle is a 'video tape service provider' as defined by the VPPA." Def. Br. at 16 [emphasis in original].

Omegle's argument is incorrect. C.H. specifically alleges that Omegle "is a video tape service provider" and that it is "engaged in the business" of "delivering videos recorded on its website." Compl. ¶¶ 18, 52. It is Omegle – by denying that such facts have been sufficiently pleaded – that advances a mere "naked assertion," meaningless in law, while falsely accusing C.H. of having done so. Def. Br. at 17. C.H. plainly alleges what the law requires.

Furthermore, although Omegle has gone to the trouble of submitting a "declaration" from its "founder and sole manager" allegedly providing a description of the nature of its business; not a single word in that "declaration" – and nothing in the exhibits attached to it – contradicts C.H.'s explicit allegation that Omegle is a video service provider, nor that it delivers videos that have been recorded on its website. *See* Dkt. 10-2 at 2-8. Given C.H.'s direct allegations on both of these points, and in the absence of any denial from Omegle – an absence only underscored by Omegle's submission of *other* statements regarding its business – the Court must, at this stage of the litigation, accept the competent pleading that Omegle is a "video service provider" within the meaning of the VPPA.

16

###### 2.     C.H. Has Pleaded Facts Showing that She Was a "Subscriber" of Omegle

Omegle argues that C.H. could not have been a "subscriber" of Omegle, as that term is used in the VPPA, because she had never used the site before the day on which she was abused. Def. Br. at 20. Even if this novel restriction on the meaning of the word "subscriber" were adopted by the Court – and there is no reason it should be – Omegle overlooks the fact that C.H. had already finished one chat before she found herself in contact with "Doe," meaning that even by Omegle's reasoning she was not a first-time user when her injury occurred. Compl. ¶¶ 39-40.

In any event, upon signing in, C.H. had to move through Omegle's long list of disclaimers before she could proceed to any actual contacts. *Id*. at ¶ 32. In other words, she had to do much more than simply download an application, like the plaintiff in *Ellis v. Cartoon Network, Inc.*, 803 F.3d 1251, 1257 (11th Cir., 2015), relied upon by Omegle (Def. Br. at 18), and of no relevance whatsoever to this matter. Similarly, *Perry v. Cable News Network, Inc.*, 854 F.3d 1336, 1343 (11th Cir., 2017), also relied on by Omegle, is readily distinguishable as there the Eleventh Circuit ruled that the plaintiff was not a "subscriber" because he "did not…provide his personal information" when using the website in question. Clearly, *Perry* does not apply to C.H., whose PII, including her geolocation, was indeed collected by Omegle.

Tellingly, Omegle admits the applicability of *Yershov v. Gannett Satellite Information Network, Inc.*, 820 F.3d 482 (1st Cir., 2016) to this case. Def. Br. at 19-20.  Omegle concedes that the Third Circuit has never issued a decision at odds with the holding in *Yershov, supra* regarding the meaning of "subscriber." Def. Br. at 18. That concession is fatal to Omegle's position, for the definition of "subscriber" embraced in *Yershov* is simply "[a]n agreement to receive or be given access to electronic texts or services." 820 F.3d at 487. Even if the Court were to accept Omegle's unsubstantiated insistence that the law requires "something more" than accessing the site to

become a subscriber (Def. Br. at 20), C.H. has clearly alleged doing "something more" in that she provided her geolocation to Omegele much like the plaintiff in *Yershov* who provided his mobile location, thus rendering Omegle's objection moot. 820 F.3d at 489. Since the holding in *Yershov* mandates a finding that C.H. was a "subscriber" to Omegle's site, it follows from Omegle's own admission that there is no legal basis for dismissing the Complaint on this ground.

### 3.   C.H. Has Pleaded that Omegle Collected and Disclosed Her PII without Parental Consent

As specifically alleged in the Complaint, the "broad definition" for PII as codified by COPPA includes, *inter alia*, "geolocation information sufficient to identify street name and name of a city or town." Compl. ¶ 14.[3] Moreover, C.H. alleges that her "geolocation" was obtained by her abuser from Omegle and as a result identified her address. *Id*. at ¶ 41. These allegations thus satisfy the pleading requirement of a cause of action under the VPPA.

Although, "[a]s a practical matter, norms about what ought to be treated as private information on the Internet are both constantly in flux and often depend on the novelty of the technology at issue" – *In re Nickelodeon Consumer Privacy Litigation*, 827 F.3d 262, 284 (3d Cir. 2016) – the particularly sensitive nature of anyone's geolocation has been specifically recognized by the U.S. Supreme Court. *United States v. Jones*, 565 U.S. 400, 412 (2012) (tracking an individual's "movements from one place to another…through electronic means" might constitute "an unconstitutional invasion of privacy"). What is more, in *Yershov, supra*, 820 F.3d at 486, the Court specifically held that anything that tends to identify a party's "home and work addresses"

---

[3] Omegle's claim that the Complaint "does not explain what is meant by 'geolocation'" (Def. Br. at 3) is false. C.H. not only cites the explicit definition of "geolocation" established by COPPA, but specifically alleges that "Doe" was able to tell her "he knew where [she] lived" when he "provided C.H. with her geolocation." Compl. ¶ 14, 41. Her geolocation thus established where C.H. lived, giving Doe information from which he could readily deduce even more about her identity.

constitutes "[PII] within the meaning of the VPPA." Since C.H. alleges that the geolocation collected from her by Omegle furnished "Doe" with the information needed to identify where she lived – and as a consequence to threaten, blackmail and sexually exploit her – she has certainly alleged a collection of her PII under the *Yershov* standard. Omegle fails to cite a single Third Circuit case that rejects this approach because there is none.

What is more, Omegle's collection of PII from C.H. was *illegal*. COPPA specifically prohibits services like Omegle from collecting, let alone disclosing, any PII from a child under the age of 13 without first obtaining her parents' "verifiable consent." Compl. ¶ 16; *see* 16 C.F.R. § 312.2. The Complaint alleges the methods of obtaining "verifiable consent" that have been enumerated by the Federal Trade Commission ("FTC"). Compl. ¶ 17.  In fact, the Complaint alleges that Omegle failed to prevent C.H., an 11 year old, from using and being fully entangled in its "service"; Omegle did not even "require any age verification or authentication" from any user.  *Id*. at ¶ 25. Nor did Omegle "provide any guidance to parents looking to monitor their children's use of the website" when C.H. accessed the website. *Id*. at ¶ 34. All of this was in stark violation of applicable law.

Omegle argues that no collection of C.H.'s PII ever took place or, if it did, that it was not disclosed to "Doe." Def. Br. at 21.  However, the Complaint alleges that "Doe" did obtain C.H.'s PII from Omegle, including her geolocation (sufficient to indicate where she lived), based on C.H.'s initial log-in to the site and her prior conversation with other children. *See* Compl. ¶ 26.

Omegle argues that, even if it did collect and disclose C.H.'s personal information, thus intruding on her privacy and facilitating her victimization, its misconduct is irrelevant because its website contains language that "prohibits users under 13 years of age from using Omegle's real-time chat service." Def. Br. at 2. Defendant's argument is contrary to law. All applicable authority

recognizes that children are members of "a vulnerable class by virtue of their age and immaturity." *Frugis v. Bracigliano*, 177 N.J. 250, 282 (2003); *see also Minatee v. New Jersey*, 710 F. Supp. 2d 487, 493 (D.N.J., 2010). A few words on a website cannot substitute for the positive legal obligations unequivocally imposes on Omegle, particularly where the protection of a children under 13, who could not be expected to fully anticipate the dangers on Omegle's site, was in question. Accordingly, the Defendant's motion must be denied.

B.   **Omegle Is Not Immune From Suit Under Section 230 Of The Communications Decency Act**

Omegle argues that it is immune from all possible claims arising from C.H.'s "reprehensible" injury through the use of its website through blanket immunity provided by Section 230 of the Communications Decency Act ("CDA"). Def. Br. at 10.  However, the CDA provides no legal basis for Omegle to escape liability. First, C.H. asserts, *inter alia*, a cause of action under VPPA, and thus, Omegle's claim to immunity must fail because – as Omegle itself concedes – not a single reported case supports the application of Section 230 immunity to a claim under the VPPA. *Id*. at, n. 2. Nor does Section 230 support the novel theory concocted by Omegle granting it limitless immunity for any misconduct carried out by means of its website.

It is true that, under Section 230, "interactive computer service providers cannot be held liable for *publishing* harmful information that is generated by a third party." *Saponaro v. Grindr, LLC*, 93 F. Supp. 3d 319, 323 (D.N.J., 2015)(emphasis added). But, C.H. does not assert claims against Omegle for "publishing harmful information." Rather, C.H. alleges that Omegle, despite ample notice that its site is dangerous for minors – indeed, notwithstanding Omegle's own admission that its "service" has been used by "predators" – not only "took no precaution to monitor or log the content of the chats of its users," but also "took no precaution to actually monitor the age of its users or prevent the use of its website by minors under the age of consent." Compl. ¶¶

22, 35-36. Omegle's liability arises out of its illegal operation of its website not from "publishing harmful information that is generated by a third party."

Further, C.H. alleges that Omegle was directly responsible for illegal "collection, use and disclosure of [her PII] and/or viewing [her] data" without obtaining "verifiable parental consent," or even "notifying her parents and/or guardians" – and without C.H.'s knowledge. Compl. ¶¶ 47-49, 54. Additionally, C.H. alleges that PII – her geolocation – reached "Doe" and thus contributed directly to her victimization. These wrongful business practices of Omegle are the basis of C.H.'s action and are unquestionably illegal. As set forth in the Complaint, relevant law establishes that:

> [o]btaining verifiable consent means making any reasonable effort (taking into consideration available technology) to ensure that before personally identifiable information is collected from a child, a parent of the child…[r]eceives notice of the operator's personally identifiable information collection, use and disclosure practices; and [a]uthorizes any collection, use, and/or disclosure of the personally identifiable information.

*Id*. at ¶ 16; *see also* 16 C.F.R. § 312.2. Omegle does not – and cannot – argue that it obtained the "verifiable consent" of C.H.'s parents before collecting her PII – including, at a minimum, her geolocation – or even that it made the legally-required "reasonable effort" to do so.

 Defendant's argument that C.H. "seek[s] to treat Omegle as the publisher or speaker of third-party content, specifically video and/or text communications" (Def. Br. at 11) is therefore not only incorrect, but confounding.  C.H. alleges that Omegle used "deceptive business practices" (Compl. ¶ 2) which, in violation of statutory law, attracted children under the age of 13 to the site. She alleges, further, that Omegle failed to take even the smallest of the required precautions to prevent a minor from using Omegle's "service," from having her PII collected without parental consent, or from being exposed to the danger of exploitation by a "predator" through the operation of that website, including its wrongful collection of her PII. *Id*. at ¶¶ 55-56.

Defendant's reliance on *Doe v. MySpace Inc.*, 528 F.3d 413 (5th Cir., 2008), is equally misplaced. Even from Omegle's description of that case, it is clear that *MySpace* did not involve the improper collection of the victim's PII by the website operator, let alone the transmission of that private information to the victim's abuser, as alleged here. Def. Br. at 13.

This case is analogous with *Fair Housing Council of San Fernando Valley v. Roommates.com, LLC*, 521 F.3d 1157 (9th Cir., 2008), in which the defendant's website collected PII from its users. There, the Ninth Circuit held that Section 230 **did not** immunize the defendant, where it deliberately obtained PII from users, finding that the defendant's website was "much more than a passive transmitter of information…[the website became] the developer…of that information. And section 230 provides immunity only if the interactive computer does not "create" or "develop" the information "in whole or in part." *Id.* at 1165-66, *citing* 47 U.S.C. § 230(f)(3). Notably, *Roommates.com* does stand alone. The Tenth Circuit reached the same conclusion, holding that the CDA's Section 230 did not bar a civil suit against a website operator that obtained "confidential material" and did so illegally. *Federal Trade Commission v. Accusearch Inc.*, 570 F.3d 1187, 1199-1200 (10th Cir. 2009). Similarly, in *Jane Doe No. 14 v. Internet Brands, Inc.*, 824 F.3d 846 (9th Cir. 2016)[4], the Ninth Circuit once again refused to confer immunity under Section 230 to a website operator who was sued, not for what it published, but "for failing to warn [plaintiff] about information it obtained…about how third parties targeted and lured victims," thus facilitating the sexual victimization of the plaintiff in that case. *Id.*, 824 F.3d at 851.

As these precedents show, the scope of Section 230 immunity urged by Omegle is unjustified by any reasonable reading of the law. Blanket protection from suit for website operators

---

[4] Omegle actually cites this case, though it tucks it away in the discussion of another subject. Def. Br. at 38, n. 6.

whose illegal conduct results in disastrous sexual harm to children would subvert the very purpose of the CDA.[5] Omegle's arguments require precisely such an "untenable" twisting of the law, manipulating a limited immunity to provide legal cover for the sexual exploitation of children. Nothing in the CDA justifies such a perverse result. Here, Omegle used its website to obtain C.H.'s PII, and developed her PII when it deliberately and illegally collected her data in direct violation of statutory law requiring it to obtain "verifiable parental consent" by means of specific procedures the Company deliberately avoided. Therefore, Omegle is not entitled to immunity under Section 230.

## III.   PLAINTIFF HAS ALLEGED SUFFICIENT STATE LAW CLAIMS AGAINST THE DEFENDANT

### A.   C.H. Has Properly Pleaded an Intrusion upon Seclusion Cause of Action

Under applicable New Jersey law, "[o]ne who intentionally intrudes, physically or otherwise, upon the solitude or seclusion of another or his private affairs or concerns, is subject to liability to the other for invasion of privacy, if the intrusion would be highly offensive to a reasonable person." *NOC, Inc. v. Schaefer*, 197 N.J. Super. 249, 254 (Law Div., Burlington Co., 1984), *citing Bisbee v. John C. Conover Agency*, 186 N.J. Super. 335 (App. Div. 1982). Learning that one has been viewed in a private moment, because of the intentional efforts of another, under

---

[5] *See* Meaghan E. Mixon, "Barely Legal: Bringing Decency Back to the Communications Decency Act of 1996 To Protect the Victims of Child Sex Trafficking," UCLA Women's Law Journal 25(1) 46, 57-58 (2018)("The plain meaning of Section 230(e)(1) [of the CDA] sets out a clear and unambiguous exception to immunity in that it specifically instructs that '[n]othing in this section shall be construed to impair [enforcement relating to sexual exploitation of children]. Moreover, 18 U.S.C. § 1595 states …that [child sexual exploitation] victims…'may bring a civil action against the perpetrator (*or whoever knowingly benefits, financially or by receiving anything of value* from participation in a venture which that person knew or should have known has engaged in an act in violation of this chapter)." Importantly, the relevant sections are…intended to enforce or enhance federal criminal statutes, and…comba[t] the sexual exploitation of children.")(emphasis in original).

circumstances that would be highly offensive to a reasonable person and satisfies the tort's elements and purpose. *See* Restatement (Second) of Torts § 652B; *see also Friedman v. Martinez*, 242 N.J. 449, 470–71 (2020).

Moreover, applicable authority confirms that C.H.'s allegations of unwanted and improper PII collection are sufficient to establish an actionable violation of privacy. Specifically, "unwanted access to data by electronic or other covert means, in violation of the law or social norms," constitutes an actionable intrusion upon privacy. *In re Google Inc. Cookie Placement Consumer Privacy Litigation*, 806 F.3d 125, 151 (3rd Cir. 2015).

Omegle argues that C.H. somehow "consented" to the deceptive business practices that led to her violation – including the collection of her PII without her knowledge or parental consent – because she "gave permission" when she "chose to use the video chat option." Def. Br. at 26. The notion that an 11-year-old can give legally binding "permission" for an otherwise illegal practice is preposterous; Omegle cites no case law holding that minors can grant such permission, and cannot, because New Jersey courts have consistently rejected this argument. *See In re Civil Commitment of J.M.B.*, 395 N.J. Super. 69, 91 (N.J. App. Div. 2007).

Finally, the Company argues that its surreptitious pilfering of C.H.'s PII is not sufficiently "offensive" to constitute a tort. Def. Br. at 26-29.  Omegle misinterprets the law it cites to reach such a conclusion. According to Omegle, in *Manigault-Johnson v. Google, LLC*, 2019 U.S. Dist. LEXIS 59892 (D.S.C. Mar. 31, 2019), plaintiffs' allegations about a website that "collected the personal information from children under 13 without giving notice and obtaining consent in alleged violation of COPPA…did not allege 'sufficiently offensive conduct' to state a claim for intrusion." *Id.* However, there plaintiffs failed to allege any harm resulted from the collection of

those children's personal information – a fact fatal to Omegle's position since C.H. alleges the exact opposite. *See* Def. Br. at 30.

Here, C.H. alleges Omegle obtained her personally identifiable information, without her knowledge and in violation of applicable law that required her parents' "verifiable consent." Compl. ¶¶ 55-56. C.H. alleges that Omegle "intentionally intruded" into her "seclusion" and "private affairs" by "intentionally designing the website to allow for the surreptitious and improper gaining of knowledge of, review, and or retention of C.H.'s activities." *Id*. at ¶ 62. She further alleges that this is "highly offensive to a reasonable person," and she emphasizes that the offensiveness is clear from "legislation enacted by Congress, rules promulgated and enforcement actions undertaken by the FTC, and countless studies, op-eds, and articles decrying the online tracking of children." *Id*. at ¶ 63. Further, C.H. does not simply allege harm from Omegle's abstract intrusion on her privacy. She alleges that Omegle's illegal collection of her PII enabled "Doe" to use his knowledge of where she lived to blackmail her into submitting to sexual exploitation. This allegation alone removes the instant case as far as possible from the facts of *Manigault-Johnson*, in which the plaintiffs alleged *no harm whatever*. Omegle thus commandeers an irrelevant holding in an attempt to foist on this Court a standard for "offensive conduct" in privacy cases that no court has ever adopted. *See McDonald v. Kiloo APS*, 385 F. Supp. 3d 1022, 1033 (N.D. Cal. 2019) (warning that "[d]efendants' insistence on a sky-high standard of egregiousness is…questionable…. [N]either the law nor common sense demand that 'egregious' be cabined to such extraordinary circumstances and nothing more").

The "sky-high standard" for privacy violations Omegle urges here is not only unsupported by law; it is flatly incompatible with a resolution "so-ordered" last year by the District Court for

the Central District of California between FTC and Musical.ly[6] in a case remarkably similar to this one. Musical.ly, like Omegle, is a website operator that allegedly failed to "post a privacy policy on its online service providing clear, understandable, and complete notice of its information practices; fail[ed] to provide direct notice of its information practices to parents; [and] fail[ed] to obtain verifiable parental consent prior to collecting, using, and/or disclosing personal information from children," all in violation of COPPA. *See* Declaration of Hillary Nappi ("Nappi Decl.") Exhibit "A" at 2. In its stipulated order, the district court "permanently restrained and enjoined" the defendants from violating COPPA. *See id*. at 8. The violations of COPPA alleged against Musical.ly are a perfect replica C.H's allegations against Omegle.

Moreover, other federal courts have held that dismissal of a cause of action for intrusion upon seclusion at this preliminary stage of the litigation is improper. The key issues to be resolved – the nature of the information appropriated, the expectation of privacy in that information, and whether the conduct was "highly offensive" or "egregious" – are all highly fact-specific; they cannot be challenged without a detailed presentation of evidence, which is not possible in a motion to dismiss under Fed. R. Civ. P. 12(b). *See In re Facebook Inc. Internet Tracking Litigation*, 956 F.3d 589 (9th Cir. 2020) (reversing the lower court's dismissal of the plaintiffs' claims, reasoning that dismissal was precluded by law before a more complete factual picture could be presented to the court); *McDonald*, 385 F. Supp. 3d at 1034 (stressing "the importance of having an adequate factual record before dismissing a privacy case."). Under this standard, C.H.'s claims regarding Omegle's intrusion into her privacy are not subject to dismissal.

---

[6] The full text of the order is attached hereto to Nappi Decl. at Exhibit "A." Since it is contained in the official record of a federal district court case, the court's order is a matter of public record and this Court may take judicial notice of it and its contents. *See McTernan v. City of York, Pennsylvania*, 577 F.3d 521, 526 (3rd Cir. 2009).

### 1.   C.H. Has Pleaded a Cause of Action for Negligence

Omegle argues that C.H. has not explained what "duty of care" Omegle owed her under the facts set out in the Complaint. *See* Def. Br. at 36-37. Omegle is incorrect as C.H. clearly sets out Omegle's duty by alleging Omegle's negligence in "failing to implement adequate safety and security measures – including monitoring its users' age." Compl. ¶ 69. C.H. is even more explicit in pleading Omegle's breach of this duty and alleges specific failures of the Company. These failures include, *inter alia*, that Omegle "failed to prevent minors from using its website despite its knowledge" minors used the website and that its website was "inherently dangerous" and that "sexual predators" used its website to groom and sexually abuse and exploit children"; further, Plaintiffs allege that Omegle "failed to interview, assess, inspect or otherwise check on the welfare of its users to ensure that they were not being harmed, sexually abused, or otherwise mistreated." *Id*. at. ¶ 70. Furthermore, to underline Omegle's awareness danger its website posed, the Complaint emphasizes that the website carries the admission: "Predators have been known to use Omegle, so please be careful." *Id*. at ¶ 22. In light of its own implicit admission, Omegle's argument that C.H.'s injury was not "foreseeable" – and therefore not actionable in a suit for negligence – is confounding.[7] *See* Def. Br. at 37.

Relying on *Dyroff v. Ultimate Software Group, Inc.*, 934 F.3d 1093 (9th Cir. 2019), *cert. denied*, 140 S. Ct. 2761 (2020), Omegle argues that it owed no duty to C.H. despite its unlawful failure to give parental notice *of*, and to obtain verifiable parental consent *for*, its collection of C.H.'s PII. Def. Br. at 38. Omegle's reliance is misplaced as *Dyroff* is readily distinguishable from

---

[7] To argue that an 11-year-old child was properly put on notice of the danger, and therefore adequately protected from it, by Omegle's casual placement of the words "please be careful" in small print on the website ignores longstanding precedent. *See Wytupeck v.City of Camden*, 25 N.J. 450, 464 (1957) (holding that written notice on eight-foot-high fence was not sufficient to warn young child of serious and hidden danger of electrocution).

the instant case. There, the defendant had taken no action, through its website, that made the position of the plaintiff "worse" than before the plaintiff accessed the website; accordingly, the defendant had no "duty to warn" of a danger that arose solely through a third party's communications through the site. *Id.*, 934 F.3d at 1100-01.

Here, C.H. alleges that Omegle's illegal collection of her PII enabled "Doe" to know where she lived and thus to blackmail her and sexually exploit her. Clearly, C.H. was worse off for having accessed Omegle. Further, C.H. asserts much more than an abstract "duty to warn," as her claims are grounded in explicit requirements of federal statutory law violated by Omegle.[8]

Lastly, Omegle argues that holding it liable for its wrongs against C.H. would offend "broader considerations of fairness and public policy." Def. Br. at 37.  The relevant public policy applicable to C.H.'s negligence claim is simply that "[t]he overarching mission of the State government is to protect children from harm." *Frugis v. Bracigliano, supra*, 177 N.J. at 268.

Omegle's definition of "considerations of fairness and public policy" suggests that it should escape liability because its connection with C.H. was "at best fleeting" (Def. Br. at 37). Omegle would place the full burden of the relevant "duty of care" on an 11-year-old child who suffered an act of sexual exploitation because of Omegle's illegal operation of its website. The law dictates a different standard. Omegle's negligence is amply pleaded in the Complaint, and dismissal is precluded as a matter of law.

### 2.   C.H. Has Pleaded a Cause of Action for Intention Infliction of Emotional Distress

---

[8] Omegle also cites *Beckman v. Match.com, LLC*, 743 Fed. App'x. 142 (9th Cir. 2018) to support this curious line of argument, but that case is more inapposite than *Dyroff*.  Not only does the holding concern merely an abstract "duty to warn" (rendering it irrelevant), it applies Nevada state law (not New Jersey law, which governs here) and it is an unpublished case – yet Omegle has not "file[d] and serve[d] a copy of [the] opinion" as required by Fed. R. Civ. P. 32.1(b) for such unpublished cases.  *Id.*, 743 F. App'x. at 142.

To successfully prosecute a claim for intentional infliction of emotional distress[9], a plaintiff must establish intentional and outrageous conduct by the defendant, proximate cause, and distress that is severe. *Settineri v. PNC Bank Corp*., 371 N.J. Super. 537, 546 (App. Div. 2004) quoting *Buckley v. Trenton Sav. Fund Soc'y*, 111 N.J. 355, 366 (1988). Initially, the plaintiff must allege that the defendant acted intentionally or recklessly. *Buckley*, 111 N.J. at 366. For an intentional act to result in liability, the defendant must intend both to do the act and to produce emotional distress. *Id.* Liability will also attach when the defendant acts recklessly in deliberate disregard of a high degree of probability that emotional distress will follow. *Id.* A defendant's conduct must be so outrageous and extreme that it is beyond the bounds of decency, and a civilized community would consider it atrocious and intolerable. *See Taylor v. Metzger*, 152 N.J. 490, 508–21 (1998). "Deliberate indifference has been sufficient" to "shock the conscience," thus making such indifference legally equivalent to deliberate misconduct. *See R.B. v. Westmoreland County*, 526 Fed. App'x. 181, 186 (3rd Cir. 2013), *citing Stanford v. Stiles*, 456 F.3d 298, 306-07 (3rd Cir. 2006).

Omegle claims that it cannot be liable unless it actually *intended* "to produce emotional distress" when it illegally collected C.H.'s PII and facilitated her sexual violation by "Doe." Def. Br. at 32. Further, Omegle argues that it "is no different in kind than any other social networking website or app that offers users the means to interact with one another in real time" and as such, the conduct alleged by C.H. is not out of the norm, and cannot, therefore be considered so "outrageous" or "extreme" as to permit liability for intentional infliction of emotional distress. Def. Br. at 32.

---

[9] Under New Jersey law, intentional infliction of emotional distress has long been recognized as an appropriate claim in cases of child sexual abuse. *See, e.g., Harkwicke v. American Boychoir School*, 188 N.J. 69, 85 (2006).

This is simply not the relevant standard. As *Buckley*, the case upon which Omegle heavily relies*,* makes clear, a "reckless" and "deliberate" disregard of the "high degree of probability" that emotional distress will follow its actions is enough to establish liability. 111 N.J. at 366. As pleaded in the Complaint, Omegle well knew that it was exposing an children to situations in which, they could encounter exactly the sort of "predator" who violated C.H. through the improper conduct of Omegle's website (Compl. ¶ 22) is the "reckless" and "deliberate" type of conduct that can establish liability.

Further, C.H.'s injury does not stand alone. As the result of the persistent deceptive business practices for which C.H. brings the present action, "children across the country" have been "stalked, sexually assaulted, abused, and exploited by adults and predators." *Id*. at. ¶¶ 2, 22, 23, 29. Yet, Plaintiffs allege Omegle has continued these practices, resulting in C.H.'s victimization. To argue that facilitating an 11-year-old child's sexual abuse by luring her to a "service" that illegally collected PII from her – without even attempting to obtain the parental consent required by law – is "no different in kind than any other social networking website" disregards that Plaintiffs have met the pleading requirements of showing that Omegle knew that there was a possibility of emotional harm to users who would be victimized and disregarded it. Accordingly, this Court should deny Defendant's motion.[10]

## **CONCLUSION**

Accordingly, and for all the reasons stated above, Omegle's motion to dismiss should be denied in its entirety.[11]

---

[10] Under New Jersey law, intentional infliction of emotional distress has long been recognized as an appropriate claim in cases of child sexual abuse. *See, e.g., Harkwicke v. American Boychoir School*, 188 N.J. 69, 85 (2006).

[11] In the event the Court is inclined to grant any portion of Omegle's motion to dismiss, the Court should, in the exercise of its discretion, allow Plaintiff to replead. It is settled that leave to file

DATED:        New York, New York                **HACH ROSE SCHIRRIPA &**
              January 5, 2020                    **CHEVERIE, LLP**

                                                 /s/ *Hillary M. Nappi*
                                                 _____
                                                 Frank R. Schirripa, Esq.
                                                 Hillary M. Nappi, Esq.
                                                 112 Madison Avenue, 10th Floor
                                                 New York, New York 10016
                                                 (212) 213-8311
                                                 *Attorneys for Plaintiffs*

---

amendments of the pleadings under Rule 15(a) is in the discretion of the Court and should be granted freely. *Zenith Radio Corp. v. Hazeltine Research, Inc*., 401 U.S. 321, 91 S.Ct. 795, 28 L.Ed.2d 77 *reh'g denied*, 401 U.S. 1015, 91 S.Ct. 1247, 28 L.Ed.2d 552 (1971). "The most important factor in deciding whether to grant leave to amend is whether the non-moving party will suffer prejudice as a result of the amendment. The non-moving party must do more than simply claim prejudice; it must show that it will be unfairly disadvantaged or deprived of the opportunity to present facts or evidence." It is settled that leave to file amendments of the pleadings under Rule 15(a) is in the discretion of the Court and should be granted freely. *Id.* The most important factor in deciding whether to grant leave to amend is whether the non-moving party will suffer prejudice as a result of the amendment. *Cammer v. Bloom*, 711 F. Supp. 1264, 1278 (D. N.J. 1989) (internal citations and quotations omitted). At this early stage in litigation, Defendant cannot assert they would be prejudiced.

**<u>CERTIFICATE OF SERVICE</u>**

I, Hillary M. Nappi, do hereby certify that on the January 5, 2021, a true and correct copy of the above and foregoing – Plaintiffs' Memorandum of Law in Opposition to Defendant's Motion to Dismiss – was served via ECF and email to the counsel of record.

*<u>/s/ Hillary M. Nappi</u>*
Hillary M. Nappi
