UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF NEW JERSEY

| | |
|---|---|
| **M.H. and J.H., on behalf of their minor child, C.H.,** | |
| Plaintiffs, | Civ. No. 20-11294 (KM) (JBC) |
| v. | **OPINION** |
| **OMEGLE.COM LLC,** | |
| Defendant. | |

### KEVIN MCNULTY, U.S.D.J.:

C.H., an eleven-year-old girl, logged onto Omegle.com, a website that randomly pairs users for video and text chats. Omegle paired C.H. with an anonymous user who sexually exploited her. After this incident, C.H.'s parents, M.H. and J.H. ("the parents"), sued Omegle on her behalf, asserting tort claims and a claim under the Video Privacy Protection Act ("VPPA"), 18 U.S.C. § 2710. Omegle moves to dismiss for lack of personal jurisdiction, pursuant to Fed. R. Civ. P. 12(b)(2), and failure to state a claim, pursuant to Fed. R. Civ. P. 12(b)(6). (DE 10.)[1] With deepest sympathy for the parents, I am constrained to **GRANT** Omegle's motion to dismiss for lack of personal jurisdiction. Because I lack the power to hear the case, Omegle's motion to dismiss for failure to state a claim is **DENIED** as moot.

---

[1] Certain citations to the record are abbreviated as follows:

DE = docket entry

Compl. = Complaint (DE 1)

K-Brooks Decl. = Declaration of Leif K-Brooks (DE 10-2)

Mot. = Omegle's Brief in Support of its Motion to Dismiss (DE 10-1)

Opp. = The Parents' Opposition to Omegle's Motion to Dismiss (DE 15)

I. **BACKGROUND**

Omegle is an Oregon limited liability company that had its principal place of business in Washington at the time of the events here, but now is located in Florida. (K-Brooks Decl. ¶¶ 4–5.) Omegle allows users to communicate with random individuals anonymously. (Compl. ¶ 20.) Specifically, a user logs into Omegle, and Omegle matches him or her with another user for a video or text chat. (*Id.* ¶ 21.) Omegle receives millions of page views per day from across the world. (*Id.* ¶ 6.)

When a user logs on, there are terms of service printed at the bottom of the webpage. (*Id.* ¶ 32.) Those terms declare that, by using Omegle, a user is not to engage in sexual behavior or take and publicize other users' information. (*Id.*) The terms also provide that no one under 13 should use Omegle, and users under 18 should have a parent or guardian's permission. (*Id.*)

Nonetheless, the terms state that Omegle is not responsible for users' conduct. (*Id.*) Omegle does not ask for age verification or other personal authentication. (*Id.* ¶ 25.) Omegle also does not inform users that their personal information can be obtained by other users. (*Id.* ¶ 49.)

Given its offering of anonymous chat, Omegle has been used for sexual exploitation. (*Id.* ¶ 27.) Indeed, Omegle has been used by sexual criminals across the country, including in New Jersey. (*Id.* ¶ 29.) The website itself contains a warning to users that "[p]redators have been known to use Omegle." (*Id.* ¶ 22.)

C.H. was a victim of such predators. She accessed Omegle and was eventually paired with an anonymous user ("Doe") who used a black screen and communicated through text appearing on that screen. (*Id.* ¶¶ 40–41.) Doe informed C.H. that he knew where she lived and provided her geolocation to prove it. (*Id.* ¶ 41.) Doe then threatened to hack the devices of C.H. and her family if she did not disrobe and touch herself. (*Id.* ¶ 43.) C.H. complied. (*Id.*) Doe captured screenshots and recorded the encounter. (*Id.* ¶ 44.)

Immediately after this incident, C.H. informed her parents, who contacted police. (*Id.* ¶ 45.) The criminal investigation stalled, so the parents brought a civil suit against Omegle on C.H.'s behalf. (*Id.* ¶ 46.) They assert four claims: (1) a violation of the VPPA, (2) intrusion upon seclusion, (3) negligence, and (4) intentional infliction of emotional distress (*Id.* ¶¶ 55–82.) Omegle moves to dismiss, arguing that (1) this Court lacks personal jurisdiction; (2) Omegle is immune under section 230 of the Communications Decency Act ("CDA"), 47 U.S.C. § 230; and (3) the claims are not plausibly alleged. (Mot.)

## II.   STANDARD OF REVIEW

"[I]n a one-defendant case, the court must first decide the defendant's Rule 12(b)(2) motion to dismiss the complaint for lack of personal jurisdiction." *Murphy v. Eisai, Inc.*, --- F. Supp. 3d ----, ----, Civ. No. 19-17552, 2020 WL 7022747, at *3 (D.N.J. Nov. 28, 2020); *see Lightfoot v. Cendant Mortg. Corp.*, 137 S. Ct. 553, 562 (2017) ("A court must have . . . power over the parties before it (personal jurisdiction) before it can resolve a case."). "[I]f personal jurisdiction is absent," as I conclude it is here, "the court is powerless to address the merits of [a] Rule 12(b)(6) motion." *Murphy*, 2020 WL 7022747, at *3.

The plaintiff bears the burden of establishing sufficient facts to show that personal jurisdiction exists. *Marten v. Godwin*, 499 F.3d 290, 295–96 (3d Cir. 2007). Initially, a court must accept the plaintiff's allegations as true and construe disputed facts in favor of the plaintiff. *Pinker v. Roche Holdings, Ltd.*, 292 F.3d 361, 368 (3d Cir. 2002). Where factual allegations are disputed, however, the court must examine any evidence presented. *See Patterson v. FBI*, 893 F.2d 595, 603–04 (3d Cir. 1990) ("A Rule 12(b)(2) motion . . . is inherently a matter which requires resolution of factual issues outside the pleadings . . . . Once the defense has been raised, then the plaintiff must sustain its burden of proof in establishing jurisdictional facts through sworn affidavits or other competent evidence." (citation omitted)). If the district court does not hold an evidentiary hearing, "the plaintiff need only establish a prima facie case of

3

personal jurisdiction." *O'Connor v. Sandy Lane Hotel Co.*, 496 F.3d 312, 316 (3d Cir. 2007).

## III.  DISCUSSION

The first (and ultimately only) issue presented by Omegle's motion is whether the Court has personal jurisdiction over it. (Mot. at 4–8.) A federal court may exercise personal jurisdiction over a defendant to the extent authorized by state law. Fed. R. Civ. P. 4(k)(1)(A). New Jersey law provides for jurisdiction coextensive with constitutional due process. *Miller Yacht Sales, Inc. v. Smith*, 384 F.3d 93, 96 (3d Cir. 2004) (citing N.J. Ct. R. 4:4-4). Due process allows for general or specific jurisdiction. *Danziger & De Llano, LLP v. Morgan Verkamp LLC*, 948 F.3d 124, 129 (3d Cir. 2020). The parents do not argue that Omegle is subject to general jurisdiction in New Jersey (*see* Opp. at 11–15), so I focus on specific jurisdiction.[2]

A court has specific jurisdiction "when the cause of action arises from the defendant's forum related activities." *Chavez v. Dole Food Co.*, 836 F.3d 205, 223 (3d Cir. 2016) (en banc) (citation omitted). The parents must establish three elements. "First, [Omegle] must have purposefully directed its activities at the forum. Second, [the parents'] claims must arise out of or relate to [Omegle's] activities. And third, exercising personal jurisdiction must not offend traditional notions of fair play and substantial justice." *Danziger*, 948 F.3d at 129–30 (quotation marks, alterations, and citations omitted).

In applying the purposeful direction requirement to cases involving website defendants, the Third Circuit has explained that "the mere operation of a commercially interactive web site" does not suffice. *Toys "R" Us, Inc. v. Step*

---

[2]  In any event, there is no general jurisdiction over Omegle. A court may exercise general jurisdiction over a corporation when the corporation has "continuous and systematic contacts with the forum state" such that it is "essentially at home" there. *Chavez v. Dole Food Co.*, 836 F.3d 205, 223 (3d Cir. 2016) (en banc) (quotation marks and citation omitted). A corporation is "at home" at least where it is incorporated or has its principal place of business. *Id.* (citing *Daimler AG v. Bauman*, 571 U.S. 117, 137 (2014)). Omegle is registered in Oregon and has its principal place of business in Florida. (K-Brooks Decl. ¶¶ 4–5.)

4

*Two, S.A.*, 318 F.3d 446, 454 (3d Cir. 2003). Rather, the defendant must have "directly target[ed] its web site to the state," "knowingly interacted with residents of the forum state via its web site," or had other contacts with the forum. *Id.*

There are no such indicia of purposeful direction towards New Jersey by Omegle. In fact, the parents do not allege anything about Omegle's website that is New Jersey-specific. Rather, Omegle is a generally accessible website that looks and operates the same for users across the world. That is not enough to create personal jurisdiction in New Jersey. *CoachSource, LLC v. Coachforce*, Civ. No. 17-5126, 2019 WL 1385200, at *4 (D.N.J. Mar. 27, 2019). There does not even appear to be any mechanism associated with the website that would enable Omegle to ascertain information about the geographic locations of its users. *Compare LG Electronics USA, Inc. v. Seamless Interactive, LLC*, Civ. No. 09-5178, 2010 WL 3035141, at *6 (D.N.J. Aug. 3, 2010) ("[A] Court might consider . . . whether visitors can, or are asked to, submit their personal information through the website."). True, the Complaint points to a handful of prosecutions involving New Jersey defendants using Omegle. But a basic awareness that residents of a specific forum use a website is insufficient; the facts must demonstrate that the website *targeted* those users. *See Kloth v. S. Christian Univ.*, 320 F. App'x 113, 116 (3d Cir. 2008) (foreseeability that users from a forum state would access the website is insufficient); *Toys "R" Us*, 318 F.3d 454–55 (two documented sales by website to New Jersey residents were insufficient). Accordingly, the parents fail to make the showing required by *Toys "R" Us*.

Nonetheless, the parents offer two reasons for exercising jurisdiction here: (A) Omegle is an "interactive" website, and (B) jurisdiction is warranted under the "effects test" from *Calder v. Jones*, 465 U.S. 783 (1984). (Opp. at 12–13.) Neither argument is persuasive.

5

### A. Interactivity

The parents first reason that, because Omegle is an interactive website, C.H.'s use of the website while in New Jersey is sufficient to confer jurisdiction in New Jersey. (Opp. at 12–13.) This argument does not fit with the manner in which personal jurisdiction applies in website cases.

The Third Circuit addressed the relationship between personal jurisdiction and websites in *Toys "R" Us.* 318 F.3d at 452–54. There, the court reviewed the case law, including *Zippo Manufacturing Co. v. Zippo Dot Com, Inc.*, 952 F. Supp. 1119 (W.D. Pa. 1997), a case the court noted "has become a seminal authority regarding personal jurisdiction based upon the operation of an Internet web site." *Id.* at 452. The court noted that *Zippo* used a "a sliding scale of commercial interactivity" in which a more interactive website would more likely support personal jurisdiction. *Id.* Citing *Zippo*, the parents argue that Omegle is on the high end of interactivity, and so jurisdiction is *per se* warranted. As evidence of interactivity, they point to the facts that Omegle users select chat options and that Omegle pairs, initiates, and facilitates such chats. (Opp. at 12–13.)

But *Toys "R" Us* never explicitly adopted *Zippo*'s sliding scale and certainly did not hold that interactivity alone shows purposeful direction. To the contrary, the court explained that "[a]s *Zippo* and the Courts of Appeals decisions indicate, the mere operation of a commercially interactive web site should not subject the operator to jurisdiction anywhere in the world." 318 F.3d at 454. Applying that principle, the court held that the website at issue, "while . . . interactive, [did] not appear to have been designed or intended to reach customers in New Jersey," so the plaintiff could not show purposeful direction. *Id.* The same is true here. While Omegle is not a "passive" website (*i.e.*, a blog where users simply read content), the interactivity alone is insufficient to confer jurisdiction.

Indeed, although the Third Circuit has yet to precedentially address personal jurisdiction and websites since *Toys "R" Us,* two developments in the

case law further suggest that the parents' theory is faulty. First, courts generally have held that websites providing platforms (like Omegle) do not evince purposeful direction because they are not tailored to any forum. *Kuan Chen v. U.S. Sports Acad., Inc.*, 956 F.3d 45, 60 (1st Cir. 2020); *AMA Multimedia, LLC v. Wanat*, 970 F.3d 1201, 1210–13 (9th Cir. 2020); *Facebook, Inc. v. K.G.S.*, 294 So.3d 122, 140 (Ala. 2019); *Doshier v. Twitter, Inc.*, 417 F. Supp. 3d 1171, 1178 (E.D. Ark. 2019); *Bowen v. YouTube, Inc.*, No. C08-5050FDB, 2008 WL 1757578, at *2 (W.D. Wash. Apr. 15, 2008).[3] In that regard, the First Circuit's opinion in *Kuan Chen* is instructive. The defendant there was an online learning platform. 956 F.3d at 52. The court held that, although the website was "highly interactive," there was no indication that the website targeted forum residents in any way, or knowingly derived substantial traffic from them. *Id.* at 60–61. The court stressed that without such targeting, interactivity was not enough. *Id.* Omegle has a level of interactivity similar to that of the platform in *Kuan Chen*, and I agree with the First Circuit that there must be something more to confer jurisdiction.

Second, courts have noted that *Zippo*'s emphasis on interactivity is now antiquated. As the Fourth Circuit explained, "[t]he internet we know today is very different from the internet of 1997, when *Zippo* was decided." *Fidrych v. Marriott Int'l, Inc.*, 952 F.3d 124, 141 (4th Cir. 2020). "[O]n today's internet, it is an extraordinarily rare website that is not interactive at some level." *Id.* (cleaned up). For example, comment boxes and buttons to "like" or "share" a webpage are now ubiquitous on websites like recipe blogs or online newspapers, which, in *Zippo*'s day, would have deemed "passive." Accordingly, "if we attach too much significance on the mere fact of interactivity," then most websites would open a defendant up to jurisdiction anywhere in the world; by overemphasizing interactivity, "we risk losing sight of the key issue in a specific

---

[3] There are few cases involving chatroom or other social platforms, likely because such platforms often enjoy immunity under the CDA. *See Hepp v. Facebook, Inc.*, 465 F. Supp. 3d 491, 494 n.2 (E.D. Pa. 2020) (a court may address a CDA defense or a personal-jurisdiction defense).

jurisdiction case—whether the defendant has *purposefully directed* its activities at residents of the forum." *Id.* at 142 (cleaned up).

For those reasons, the parents' focus on interactivity as the *sine qua non* of jurisdiction is misplaced. While *Zippo* may have elevated interactivity's importance, the Third Circuit stressed that interactivity is not enough, and other courts have held similarly. Accordingly, absent any New Jersey-specific facts about Omegle, I cannot exercise personal jurisdiction over it.

### B. Effects Test

The parents' second argument is based on the "effects test" for jurisdiction. The Supreme Court in *Calder* articulated a "slightly refined version" of the specific jurisdiction test, which the Third Circuit holds applies to intentional-tort cases. *O'Connor*, 496 F.3d at 317 n.2. Under *Calder*, the forum has personal jurisdiction when (1) "the defendant committed an intentional tort"; (2) "the plaintiff felt the brunt of the harm in the forum"; and (3) "the defendant expressly aimed his tortious conduct at the forum such that the forum can be said to be the focal point of the tortious activity." *Marten*, 499 F.3d at 297 (citation omitted). "Only if the 'expressly aimed' element . . . is met need we consider the other two elements." *Id.* at 297–98 (citation omitted).

Thus, the effects test offers no escape from the essential prerequisite of personal jurisdiction, *i.e.*, whether the defendant purposefully targeted the forum. To invoke the effects test, the parents must show that Omegle "knew that [C.H.] would suffer the brunt of the harm caused by the tortious conduct in the forum, and point to specific activity indicating that [Omegle] expressly aimed its tortious conduct at the forum." *Id.* at 298 (citation omitted).

As explained above, the parents have not shown any "specific activity" by Omegle directed at New Jersey. For their intentional-tort claims, the parents allege that Omegle "design[ed] the website" in a way that allowed C.H.'s personal information to be taken, and that Omegle knowingly failed to monitor its website. (Compl. ¶¶ 62, 76.) But those allegations attack Omegle's website *generally*—they speak of no intentional conduct regarding New Jersey

8

specifically. Nor do the parents allege that Omegle took any action towards C.H. specifically. *Compare Christie v. Nat'l Inst. for Newman Studies*, 258 F. Supp. 3d 494, 504 (D.N.J. 2017) (express aiming found when defendants knowingly hacked a New Jersey resident's computer). It follows that New Jersey was not "focal point of the tortious activity." *Marten*, 499 F.3d at 297 (citation omitted). The parents have failed to satisfy the effects test.

In sum, under *Toys "R" Us*, Omegle is not subject to personal jurisdiction in New Jersey for the parents' claims, and their alternative theories based on interactivity or the effects test are not persuasive.

\* \* \*

I deal with two loose ends:

First, I recognize that a court may order jurisdictional discovery when "factual allegations . . . suggest with reasonable particularity the possible existence of the requisite contacts between the party and the forum state, such that its claim is not clearly frivolous." *Murphy*, 2020 WL 7022747, at \*14 (cleaned up). The facts alleged here, however, adequately apprise the Court of the nature of Omegle's website, and I cannot infer any likelihood that discovery would reveal evidence showing that the website is directed at New Jersey. Accordingly, I will not order jurisdictional discovery.

Second, "a district court that lacks personal jurisdiction must at least consider a transfer." *Danziger*, 948 F.3d at 132. A court may transfer a case when (1) the transferee court would have personal jurisdiction, and (2) a transfer is in the interests of justice. *D'Jamoos ex rel. Estate of Weingeroff v. Pilatus Aircraft Ltd.*, 566 F.3d 94, 107, 110 (3d Cir. 2009) (citing 28 U.S.C. § 1631). It seems that Omegle would be subject to general jurisdiction in Oregon or Florida, but the parents have not indicated whether they would be amenable to a transfer to either of those fora. Accordingly, I will stay my dismissal order for 14 days. Within that period, the Court will entertain a letter application in which the parents may suggest a transfer.

## IV. CONCLUSION

For the reasons set forth above, Omegle's motion to dismiss for lack of personal jurisdiction is granted. Because I lack the power to consider the motion to dismiss the case for failure to state a claim, it will be denied as moot. The effect of this dismissal is stayed for 14 days to permit the parties to address the issue of a transfer of venue.

A separate order will issue.

Dated: March 19, 2021

/s/ Kevin McNulty

———————————————
**Hon. Kevin McNulty
United States District Judge**