**UNITED STATES DISTRICT COURT**
**MIDDLE DISTRICT OF FLORIDA**
**TAMPA DIVISION**

| | |
|---|---|
| M.H. and J.H., on behalf of their minor child C.H., <br><br>                  Plaintiffs, <br><br> v. <br><br> OMEGLE.COM, LLC, <br><br>                  Defendant. | Case No. 8:21-cv-00814-VMC-TGW |

**DEFENDANT OMEGLE.COM, LLC'S MOTION TO DISMISS THE**
**<u>AMENDED COMPLAINT PURSUANT TO FED. R. CIV. P. 12(b)(6)</u>**

# TABLE OF CONTENTS

FACTUAL ALLEGATIONS...........................................................................1

DISCUSSION............................................................................................2

I.      Plaintiffs' FAC Cannot Withstand Rule 12(b)(6) Scrutiny.............................2

II.     Omegle is Entitled to Immunity Under CDA 230 ...........................................3

        A.      Each of the elements of CDA 230 immunity is established.................3

                1.      Omegle is an interactive computer service provider ...............4

                2.      The claims seek to treat Omegle as the publisher of
                        content from another information content provider.................5

        B.      Plaintiffs' claims under the federal child pornography and sex
                trafficking criminal statutes are also barred by CDA 230 ...................7

                1.      Plaintiffs' claim for alleged violation of 18 U.S.C.
                        § 2252A is not excluded by CDA 230(e)(1) .................................8

                2.      The FAC does not state a plausible claim for violation of
                        18 U.S.C. § 1591 and thus is not excluded under
                        CDA 230(e)(5)(A).............................................................9

                        a.      FOSTA requires actual knowledge by the
                                interactive computer service to overcome
                                CDA 230 immunity ..........................................11

                        b.      Even absent CDA 230, the FAC fails to plausibly
                                allege Omegle participated in or benefitted from a
                                venture ......................................................14

III.    Plaintiffs' Other Claims Also Fail As a Matter of Law...................................17

        A.      Plaintiffs' VPPA claim is fatally and irreparably deficient ...............17

                1.      Omegle is not a "video tape service provider".........................17

                2.      C.H. is not a "consumer" as defined by the VPPA .................18

                3.      Omegle did not disclose PII as defined by the VPPA............19

        B.      Plaintiffs' IIED claim is properly dismissed .........................................21

C.   The intrusion upon seclusion claim fails to state a plausible claim ................................................................................... 23

D.   Plaintiffs fail to state a claim for negligence as a matter of law ......... 25

E.   The public nuisance claim is implausible and should be dismissed ...................................................................................... 28

F.   There is no cause of action for ratification/vicarious liability ........... 29

IV.   Leave to Amend Should Not Be Granted ........................................................ 29

CONCLUSION ............................................................................................................. 30

# TABLE OF AUTHORITIES

## Cases

*Action Sec. Serv., Inc. v. Am. Online, Inc.*, No. 6:03-cv-1170-Orl-22DAB, 2005 U.S. Dist. LEXIS 50842 (M.D. Fla. May 27, 2005)....................................26

*Almeida v. Amazon.com, Inc.*, 456 F.3d 1316, 1321 (11th Cir. 2006)..............................3

*Am. Dental Ass'n v. Cigna Corp.*, 605 F.3d 1283 (11th Cir. 2010) ................................3

*Ashcroft v. Iqbal*, 556 U.S. 662 (2009) ..................................................................3, 15, 28

*Austin-Spearman v. AMC Network Entm't LLC*, 98 F. Supp. 3d 662 (S.D.N.Y. 2015) ..............................................................................................18, 19

*Bell Atl. Corp. v. Twombly*, 550 U.S. 544 (2007) ........................................................29

*Biglen v. Fla. Power & Light Co.*, 910 So. 2d 405 (Fla. Dist. Ct. App. 2005)...............26

*Buckley v. Trenton Sav. Fund Soc'y*, 544 A.2d 857 (N.J. 1988)....................................22

*Carvalho v. Toll Bros. & Developers*, 675 A.2d 209 (N.J. 1996)....................................26

*Ceithami v. Celebrity Cruises, Inc.*, 207 F. Supp. 3d 1345 (S.D. Fla. 2016).................29

*Coventry First, LLC v. McCarty*, 605 F.3d 865 (11th Cir. 2010)....................................30

*Dart v. craigslist*, 665 F. Supp. 2d 961 (N.D. Ill. 2009)....................................................4

*DiMeo v. Max*, 248 F. App'x 280 (3d Cir. 2007) .............................................................4

*Doe v. Bates*, No. 5:05-CV-91-DF-CMC, 2006 U.S. Dist. LEXIS 93348 (E.D. Tex. Dec. 27, 2006).........................................................................................9

*Doe v. Kik Interactive, Inc.*, 482 F. Supp. 3d 1242 (S.D. Fla. 2020) .................... passim

*Doe v. MySpace Inc.*, 528 F.3d 413 (5th Cir. 2008)..........................................................6

*Doe v. Rickey Patel, LLC*, No. 0:20-60683-WPD-CIV-DIMITROULEAS, 2020 U.S. Dist. LEXIS 195811 (S.D. Fla. Sept. 30, 2020)....................................14

*Doe No. 14 v. Internet Brands, Inc.*, No. CV 12-3626-JFW (PJWx), 2016 U.S. Dist. LEXIS 192144 (C.D. Cal. Nov. 14, 2016)..........................27, 28

*Dyroff v. Ultimate Software Group, Inc.*, No. 17-cv-05359-LB,
    2017 U.S. Dist. LEXIS 194524 (N.D. Cal. Nov. 26, 2017)................................27

*Dyroff v. Ultimate Software Group, Inc.*, 934 F.3d 1093 (9th Cir. 2019).................7, 27

*Ellis v. Cartoon Network, Inc.*, 803 F.3d 1251 (11th Cir. 2015)..............................17, 18

*Estate of Desir ex rel. Estiverne v. Vertus*, 69 A.3d 1247 (N.J. 2013) ...........................26

*Estate of Miller v. Thrifty Rent-A-Car Sys., Inc.*, 609 F. Supp. 2d 1235
    (M.D. Fla. 2009) ........................................................................................21

*Force v. Facebook, Inc.*, 934 F.3d 53 (2d Cir. 2019) ...........................................................9

*Friedman v. Martinez*, 231 A.3d 719 (N.J. 2020) ...........................................................23

*Geiss v. Weinstein Co. Holdings LLC*, 383 F. Supp. 3d 156 (S.D.N.Y. 2019)...............16

*Green v. Am. Online*, 318 F.3d 465 (3d Cir. 2003)............................................................5

*Griffin v. Tops Appliance City, Inc.*, 766 A.2d 292
    (N.J. Super. Ct. App. Div. 2001).............................................................................23

*Hendricks v. Rambosk*, No. 2:10-cv-526-FtM-29DNF, 2011 U.S. Dist. LEXIS
    40608 (M.D. Fla. Apr. 14, 2011) ............................................................................22

*Herrick v. Grindr, LLC*, 306 F. Supp. 3d 579 (S.D.N.Y. 2018) .................................5, 6

*In re Hulu Privacy Litig.*, No. C 11-03764 LB, 2012 U.S. Dist. LEXIS 112916
    (N.D. Cal. Aug. 10, 2012) .......................................................................................19

*In re Hulu Privacy Litig.*, 86 F. Supp. 3d 1090 (N.D. Cal. 2015) .................................20

*In re Lead Paint Litig.*, 924 A.2d 484 (N.J. 2007) ...........................................................29

*In re Nickelodeon Consumer Privacy Litig.*, 827 F.3d 262 (3d Cir. 2016) .........20, 24, 25

*Jabaal v. Lombardi*, No. 1:14CV89-HSO-RHW,
    2015 U.S. Dist. LEXIS 178762 (S.D. Miss. Jan. 30, 2015)...................................16

*J.B. v. G6 Hosp., LLC*, No. 19-cv-07848-HSG,
    2020 U.S. Dist. LEXIS 151213 (N.D. Cal. Aug. 20, 2020)....................13, 15, 16

*Jersey Cent. Power & Light Co. v. Melcar Util. Co.*, 59 A.3d 561 (N.J. 2013)...............26

*Klayman v. Zuckerberg*, 753 F.3d 1354 (D.C. Cir. 2014) ...................................................7

iv

*La'Tiejira v. Facebook, Inc.*, 272 F. Supp. 3d 981 (S.D. Tex. 2017) ...........................6, 30

*Lemmon v. Snap, Inc.*, 2021 U.S. App. LEXIS 13197, 995 F.3d 1085
      (9th Cir. 2021) ..................................................................................................7

*M.A. v. Wyndham Hotels & Resorts, Inc.*, 425 F. Supp. 3d 959
      (S.D. Ohio 2019) ............................................................................................15

*Manigault-Johnson v. Google, LLC*, No. 2:18-cv-1032-BHH, 2019 U.S. Dist.
      LEXIS 59892 (D.S.C. Mar. 31, 2019) ...................................................................25

*Marfione v. Kai U.S.A., Ltd.*, No. 17-70, 2018 U.S. Dist. LEXIS 51066
      (W.D. Pa. Mar. 27, 2018) ..................................................................................7

*Mezey v. Twitter, Inc.*, No. 1:18-cv-21069-KMM, 2018 U.S. Dist. LEXIS
      121775 (S.D. Fla. July 19, 2018)..........................................................................5

*M.L. v. craigslist Inc.*, No. C19-6153 BHS-TLF, 2020 U.S. Dist. LEXIS 166334
      (W.D. Wash. Sept. 11, 2020) ..............................................................................13

*Neely v. Wells Fargo Fin., Inc.*, No. 8:12-cv-542-T-33AEP, 2012 U.S. Dist.
      LEXIS 168669 (M.D. Fla. Nov. 28, 2012) ............................................................23

*Obado v. Magedson*, No. 13-2382 (JAP), 2014 U.S. Dist. LEXIS 104575
      (D.N.J. July 31, 2014) ......................................................................................8

*Parker v. Google, Inc.*, 422 F. Supp. 2d 492 (E.D. Pa. 2006) ............................................4

*Perry v. CNN, Inc.*, No. 1:14-CV-02926-ELR, 2016 U.S. Dist. LEXIS 179395
      (N.D. Ga. Apr. 20, 2016)...................................................................................20

*Perry v. CNN, Inc.*, 854 F.3d 1336 (11th Cir. 2017) ........................................................18

*Popa v. Harriet Carter Gifts, Inc.*, 426 F. Supp. 3d 108 (W.D. Pa. 2019) ....................25

*Roca Labs, Inc. v. Consumer Opinion Corp.*, 140 F. Supp. 3d 1311
      (M.D. Fla. 2015)..............................................................................................4

*Saponaro v. Grindr, LLC*, 93 F. Supp. 3d 319 (D.N.J. 2015)................................5, 6, 30

*Stasiak v. Kingswood Co-op, Inc.*, No. 8:11-cv-1828-T-33MAP,
      2012 U.S. Dist. LEXIS 20609 (M.D. Fla. Feb. 17, 2012) ..................................23

*State Farm Mut. Auto. Ins. Co. v. Novotny*, 657 So. 2d 1210
      (Fla. Dist. Ct. App. 1995)..................................................................................22

*Stone v. Wall*, 135 F.3d 1438 (11th Cir. 1998)..............................................................21

*United States v. Ballinger*, 395 F.3d 1218 (11th Cir. 2005) ............................................20

*United States ex rel. Higgins v. HealthSouth Corp.*, No. 8:14-cv-2769-T-33AEP, 2019 U.S. Dist. LEXIS 146351 (M.D. Fla. Aug. 28, 2019).................................30

*Universal Commc'n Sys., Inc. v. Lycos, Inc.*, 478 F.3d 413 (1st Cir. 2007) ...................6

*Virgilio v. Ryland Group, Inc.*, 680 F.3d 1329 (11th Cir. 2012) .....................................26

*Williams v. Verizon N.J., Inc.*, No. 2:19-09350-KM-MAH, 2020 U.S. Dist. LEXIS 43528 (D.N.J. Mar. 12, 2020) .......................................................................29

*Yershov v. Gannett Satellite Info. Network, Inc.*, 820 F.3d 482 (1st Cir. 2016)............19

## Statutes and Rules

18 U.S.C. § 1591 ..................................................................................... passim

18 U.S.C. § 1591(a) .........................................................................................10

18 U.S.C. § 1591(e)(4)......................................................................................10

18 U.S.C. § 1595 ...............................................................................10, 13, 14

18 U.S.C. § 1595(a) ...............................................................................10, 12

18 U.S.C. § 2251 *et seq.* ....................................................................................8

18 U.S.C. § 2252A ........................................................................................8, 9

18 U.S.C. § 2710 ..............................................................................................17

18 U.S.C. § 2710(a)(1)......................................................................................18

18 U.S.C. § 2710(a)(3)......................................................................................20

18 U.S.C. § 2710(a)(4)......................................................................................17

47 U.S.C. § 230 ...................................................................................... passim

47 U.S.C. § 230(c)(1)..........................................................................................3

47 U.S.C. § 230(e)(1)......................................................................................8, 9

47 U.S.C. § 230(e)(3)................................................................................................3

47 U.S.C. § 230(e)(5)(A)...................................................................................... passim

47 U.S.C. § 230(f)(2) ..............................................................................................4

FED. R. CIV. P. 8(a)(2) .............................................................................................2

FED. R. CIV. P. 12(b)(6) ...........................................................................................1

## **Other Authority**

H.R. 115-572..........................................................................................................12

RESTATEMENT (SECOND) OF TORTS § 46, cmt. g ..........................................................22

RESTATEMENT (SECOND) OF TORTS § 821B...............................................................29

RESTATEMENT (SECOND) OF TORTS § 821B, cmt. g.....................................................29

Defendant Omegle.com, LLC ("Omegle") moves pursuant to FED. R. CIV. P. 12(b)(6) to dismiss the Amended Complaint (Dkt. 48) of Plaintiffs. In support of this Motion, Omegle incorporates the following Memorandum of Law.

WHEREFORE, for the reasons stated herein, Omegle respectfully requests that the Court dismiss the Amended Complaint in its entirety, with prejudice.

## <u>MEMORANDUM OF LAW IN SUPPORT</u>

Despite having the opportunity to amend the complaint, Plaintiffs' Amended Complaint ("FAC") suffers from the same fatal flaw as their original complaint; namely, Plaintiffs seek to hold Omegle liable as the publisher or speaker of third-party content on its website contrary to the immunity provided by Section 230 of the Communications Decency Act ("CDA 230"). Plaintiffs' attempt to inaccurately cast this case as a sex trafficking case by adding new claims does not alter the conclusion that CDA 230 bars their claims. Therefore, for the reasons stated herein, the FAC should be dismissed with prejudice.

## FACTUAL ALLEGATIONS

The FAC alleges that Plaintiffs M.H. and J.H. are the parents of 11-year-old C.H. and reside in Morris County, New Jersey. (Dkt. 48 at ¶¶ 8-10.)

In 2009, Omegle launched its free online real-time chat service, through which users can meet and chat with new people by text or video via its website. (Id. ¶¶ 13, 33.) There is no registration or log in requirement to chat with other users. (*See* id. ¶ 36.)

As Plaintiffs acknowledged in their original complaint, the Omegle website clearly prohibits users under 13 years of age from using the real-time

chat service and prohibits users under 18 years of age from using the service without a parent's or guardian's permission. (Dkt. 1 ¶ 32; *see also* Dkt. 10-2 ¶ 3, Ex. 1.) Despite this prohibition, the FAC alleges 11-year-old C.H. visited the Omegle website in March 2020, apparently without parental permission. (Dkt. 48 ¶ 57.) C.H. had never used the Omegle website before. C.H. elected to be randomly paired with another user via the video chat option at least twice. The first random pairing was with a group of minors. C.H. elected to end that chat and start a second video chat. (Id.)

In the second chat, C.H. allegedly observed a black screen on which text began appearing. (Id. ¶ 58.) The FAC alleges that the other user in the chat said "he knew where C.H. lived" and provided her "geolocation." (Id. ¶ 59.) The FAC does not explain what is meant by "geolocation." The user also allegedly stated that there were cell phones and computers in C.H.'s house and threatened to "hack" them. (Id.) The FAC alleges that the third-party user instructed C.H. to remove her clothing and touch herself in front of the camera on her computer. She complied with the user's instructions. The user allegedly captured screenshots or videos of C.H.'s actions. (Id. ¶¶ 61-62.) C.H. allegedly reported the incident to her parents who then reported it to local law enforcement. (Id. ¶ 65.)

## DISCUSSION

## I.   Plaintiffs' FAC Cannot Withstand Rule 12(b)(6) Scrutiny

Although FED. R. CIV. P. 8(a)(2) only requires that a pleading provide a "short and plain statement of the claim showing that the pleader is entitled to relief," that standard requires "more than an unadorned, the-defendant-

unlawfully-harmed-me accusation" or "naked assertion[s] devoid of further factual enhancement." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (internal quotation marks omitted). To survive a motion to dismiss, "a complaint must contain sufficient factual matter, accepted as true, to state a claim to relief that is plausible on its face." *Id.* (internal quotation marks omitted). A complaint has facial plausibility only "when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Id.*; *see also Am. Dental Ass'n v. Cigna Corp.*, 605 F.3d 1283, 1289 (11th Cir. 2010) ("*ADA*") (plaintiffs must "nudge[] their claims across the line from conceivable to plausible" to avoid dismissal) (internal quotation marks omitted). "When there are well-pleaded factual allegations, a court should assume their veracity and then determine whether they plausibly give rise to an entitlement to relief." *Iqbal*, 556 U.S. at 679. But no such assumption of veracity applies to legal conclusions or "unwarranted deduction[s] of fact." *Id.* at 678; *ADA*, 605 F.3d at 1290, 1294.

## II.    Omegle is Entitled to Immunity Under CDA 230

### A.    Each of the elements of CDA 230 immunity is established

CDA 230 states that "[n]o provider or user of an interactive computer service shall be treated as the publisher or speaker of any information provided by another information content provider." 47 U.S.C. § 230(c)(1). It preempts any state law to the contrary. 47 U.S.C. § 230(e)(3). It creates "broad federal immunity to any cause of action that would make service providers liable for information originating with a third-party user of the service." *Almeida v. Amazon.com, Inc.*,

456 F.3d 1316, 1321 (11th Cir. 2006) (internal quotation marks omitted).

CDA 230 provides immunity to a wide range of state and federal law claims, including the claims Plaintiffs assert. *See, e.g.*, *DiMeo v. Max*, 248 F. App'x 280, 281-83 (3d Cir. 2007) (IIED and defamation claims); *Dart v. craigslist*, 665 F. Supp. 2d 961, 963, 969 (N.D. Ill. 2009) (public nuisance claim); *Parker v. Google, Inc.*, 422 F. Supp. 2d 492, 500-01 (E.D. Pa. 2006) (defamation, invasion of privacy, and negligence claims), *aff'd*, 242 F. App'x 833 (3d Cir. 2007).

A defendant is immune under CDA 230 if: (1) the defendant is the provider or user of an "interactive computer service"; (2) the asserted claims treat it as the publisher or speaker of the information; and (3) the information is provided by another information content provider. *Roca Labs, Inc. v. Consumer Opinion Corp.*, 140 F. Supp. 3d 1311, 1319 (M.D. Fla. 2015).

### 1. *Omegle is an interactive computer service provider*

Omegle is the provider of an "interactive computer service." The FAC alleges that Omegle is a website "that enables individuals to communicate with random individuals across the world anonymously via text and video." (Dkt. 48 ¶ 33.) This places Omegle squarely within the definition of an interactive computer service[1] because it is a website "that allow[s] third parties" to provide content to other users "regardless of whether [that content] is made anonymously or under a pseudonym." *Roca*, 140 F. Supp. 3d at 1318; *see also*

---

[1] An "interactive computer service" is "any information service, system, or access software provider that provides or enables computer access by multiple users to a computer server[.]" 47 U.S.C. § 230(f)(2).

*Mezey v. Twitter, Inc.*, No. 1:18-cv-21069-KMM, 2018 U.S. Dist. LEXIS 121775, *3 (S.D. Fla. July 19, 2018) ("a platform that transmits, receives, displays, organizes, and hosts content . . . is an interactive computer service").

> ### 2.   The claims seek to treat Omegle as the publisher of content from another information content provider

As to the second and third elements, the claims seek to treat Omegle as the publisher or speaker of content, specifically video and/or text communications of another information content provider. Courts have held that the second element is satisfied where a plaintiff alleges that an interactive computer service published offending content that it should have filtered. *See, e.g.*, *Green v. Am. Online*, 318 F.3d 465, 471 (3d Cir. 2003) (element satisfied where plaintiff "attempt[ed] to hold [defendant] liable for decisions relating to the monitoring, screening, and deletion of content"). Courts have also found this element satisfied where a plaintiff's claims are based on an offending interaction which occurs through the site, which are ultimately based on content posted by third parties, and an alleged failure to monitor or supervise the site. *See, e.g.*, *Saponaro v. Grindr, LLC*, 93 F. Supp. 3d 319, 323 (D.N.J. 2015) (claim of failure to monitor and supervise site users was an attempt to treat defendant as a publisher of information provided by a third party); *see also Herrick v. Grindr, LLC*, 306 F. Supp. 3d 579, 590 (S.D.N.Y. 2018) (claim that defendant failed to "incorporate adequate protections against impersonating or fake accounts is just another way of asserting that [defendant] is liable because it fails to police and remove" content), *aff'd*, 765 F. App'x 586 (2d Cir. 2019), *cert. denied*, 140 S. Ct. 221 (2019).

Nor does an allegation that the interactive computer service received notice of the alleged unlawful nature of the content negate CDA 230 immunity. *See, e.g.*, *Universal Commc'n Sys., Inc. v. Lycos, Inc.*, 478 F.3d 413, 420 (1st Cir. 2007); *La'Tiejira v. Facebook, Inc.*, 272 F. Supp. 3d 981, 994 (S.D. Tex. 2017).

Here, at its core, the FAC alleges that Omegle failed to adequately monitor and/or screen the content or interactions of its users. (*See* Dkt. 48 ¶¶ 107-08, 110, 116, 120.) The Fifth Circuit's conclusion in a factually similar case is on point. In *Doe v. MySpace Inc.*, the mother of a 13-year-old girl sued the provider of a social network for allowing her daughter to access the website and meet a 19 year old, who communicated with her via the site to arrange a meeting and assault her. 528 F.3d 413, 416 (5th Cir. 2008). Similar to the allegations in this case, the mother argued that the site was liable for failing to implement proper safeguards. But the court rejected this argument, concluding that the "allegations are merely another way of claiming that MySpace was liable for publishing the communications" between the users. *Id.* at 420.

The FAC makes vague allegations directed at Omegle's website design (*see* Dkt. 48 ¶¶ 45-47, 98, 107, 129), but courts have rejected this type of a claim where neutral tools that "are not intrinsically offensive or unlawful" are used by a third party to harass another user. *Herrick*, 306 F. Supp. 3d at 589-90; *see also Saponaro*, 93 F. Supp. 3d at 324. Here, the FAC fails to state—in a manner consistent with the plausibility standard—any claims regarding the allegedly defective design that would overcome CDA immunity. Nor could Plaintiffs make any such plausible allegations as Omegle's service—a means for users to communicate

with one another via text or video—is the type of neutral tool that courts routinely find are covered by CDA 230 immunity.[2] *See, e.g., Dyroff v. Ultimate Software Group, Inc.*, 934 F.3d 1093, 1098 (9th Cir. 2019) (rejecting attempt to equate "content" with the website's offering of "tools meant to facilitate the communication and content of others"), *cert. denied*, 140 S. Ct. 2761 (2020); *Klayman v. Zuckerberg*, 753 F.3d 1354, 1358 (D.C. Cir. 2014).

Additionally, the FAC alleges that the allegedly offending communication originated from a third-party user as did the screenshots or video allegedly captured by that user. (*See, e.g.*, Dkt. 48 ¶¶ 59, 61-62.) The FAC is bereft of any allegation that Omegle "created or authored" the allegedly offensive communications or content. A plaintiff who alleges a defendant "created or developed" allegedly offensive content must do so based on "well-pleaded facts [that] permit the court to infer more than the mere possibility" of such creation and development. *Marfione v. Kai U.S.A., Ltd.*, No. 17-70, 2018 U.S. Dist. LEXIS 51066, *18-19 (W.D. Pa. Mar. 27, 2018). Plaintiffs have not satisfied that standard.

As a result, CDA 230 bars Plaintiffs' claims against Omegle.

**B.    Plaintiffs' claims under the federal child pornography and sex trafficking criminal statutes are also barred by CDA 230**

CDA 230 immunity is not absolute and Section 230(e) contains two

---

[2] The Ninth Circuit decision in *Lemmon v. Snap, Inc.*, 2021 U.S. App. LEXIS 13197, 995 F.3d 1085 (9th Cir. 2021), is of no assistance to Plaintiffs. The court concluded that the plaintiffs' claim was a clear product liability claim targeted at the interplay between the Snap "speed filter" and Snap's alleged incentive system, both of which were created by Snap and which plaintiffs alleged "encouraged users to drive at dangerous speeds." *Id.* at *14-15. But the court reiterated that interactive computer services are not liable for their "neutral tools" when plaintiff's claims "blame them for the content that third parties generate with those tools." *Id.* at *16. That is precisely the case here where Plaintiffs' claims arise from C.H.'s interaction with the other user.

exclusions potentially implicated by Plaintiffs' claims alleging violations of (1) 18 U.S.C. § 2252A and (2) 18 U.S.C. § 1591. First, Section 230(e)(1) provides that CDA 230 is not intended to "impair the enforcement of [any] Federal criminal statute," including 18 U.S.C. § 2252A, the criminal statute upon which Plaintiffs' first cause of action is based. Second, Section 230(e)(5)(A) is a new exclusion added in 2018 by the Fight Online Sex Trafficking Act ("FOSTA") that is specifically targeted at (and limited to) alleged violations of the federal sex trafficking criminal statute, 18 U.S.C. § 1591. Both exclusions are narrow in scope and neither divest Omegle of CDA 230 immunity.

> ### 1. Plaintiffs' claim for alleged violation of 18 U.S.C. § 2252A is not excluded by CDA 230(e)(1)

In the FAC, Plaintiffs add a claim alleging that Omegle violated 18 U.S.C. § 2252A, which makes it a crime for any person to knowingly possess or access material that contains an image of child pornography. (Dkt. 48 ¶¶ 71-75.) But this claim—which is based on the child pornography allegedly created by the third-party user with whom C.H. interacted—is also barred by CDA 230.

Section 230(e)(1) states, in relevant part, that nothing in CDA 230 shall "impair the enforcement of . . . chapter . . . 110 (relating to sexual exploitation of children) of [18 U.S.C. § 2251 *et seq.*], or any other Federal criminal statute." 47 U.S.C. § 230(e)(1). But this exception is of no assistance to Plaintiffs. Courts have construed it to apply only to "government prosecutions, not to civil private rights of action under [statutes] with criminal aspects." *Obado v. Magedson*, No. 13-2382 (JAP), 2014 U.S. Dist. LEXIS 104575, *27 (D.N.J. July 31, 2014), *aff'd*, 612 F.

App'x 90 (3d Cir. 2015); *see also Force v. Facebook, Inc.*, 934 F.3d 53, 72 (2d Cir. 2019) ("Section 230(e)(1) is quite clearly . . . limited to criminal prosecutions") (internal quotation marks omitted), *cert. denied*, 140 S. Ct. 2761 (2020). Courts have reached that conclusion in cases involving the same criminal statute on which Plaintiffs' first claim is based—18 U.S.C. § 2252A. *See Doe v. Bates*, No. 5:05-CV-91-DF-CMC, 2006 U.S. Dist. LEXIS 93348 *7-8, 12 (E.D. Tex. Dec. 27, 2006) (holding—in case alleging that Yahoo! was civilly liable under 18 U.S.C. § 2252A for knowingly hosting child pornography—that Section 230(e)(1) did not apply to such private civil suits). Nothing in FOSTA's amendment to the CDA (discussed below) changed Section 230(e)(1). Therefore, Plaintiffs' claim based on alleged violation of 18 U.S.C. § 2252A is also barred by CDA 230.

Moreover, even if CDA 230 was not a bar, Plaintiffs fail to state a plausible claim that Omegle violated Section 2252A. They simply quote the statutory language but offer no *facts* that Omegle ever "knowingly" possessed or accessed any "image of child pornography," much less any image of C.H. allegedly created by the third-party user. (Dkt. 48 ¶ 72.) Nor can Plaintiffs plausibly allege such knowing possession or access by Omegle as there is no claim that it had any knowledge of C.H. or her interaction with the other user prior to the filing of this case. Thus, Plaintiffs' Section 2252A claim is barred by CDA 230 and fails to state any plausible claim for relief, either of which warrants dismissal.

    **2.**     *The FAC does not state a plausible claim for violation of 18 U.S.C. § 1591 and thus is not excluded under CDA 230(e)(5)(A)*

As noted above, in 2018, via FOSTA, Congress provided a new exception

to CDA immunity narrowly targeted at federal sex trafficking claims.

Specifically, CDA 230 was amended to state that it shall not limit "any claim in a

civil action brought under [18 U.S.C. § 1595], **if the conduct underlying the**

**claim constitutes a violation of section 1591 of that title**." 47 U.S.C.

§ 230(e)(5)(A) (emphasis added). Section 1591 criminalizes the following conduct:

> (a) Whoever **knowingly** –
>     (1) in or affecting interstate or foreign commerce . . . **recruits,
> entices, harbors, transports, provides, obtains, advertises, maintains,
> patronizes, or solicits by any means a person**; or
>     (2) **benefits, financially or by receiving anything of value, from
> participation in a venture which has engaged in an act described in
> violation of paragraph (1)**,
> knowing, or, except where the act constituting the violation of
> paragraph (1) is advertising, in reckless disregard of the fact, that means
> of force, threats of force, fraud, coercion described in subsection (e)(2), or
> any combination of such means will be used to cause the person to engage
> in a commercial sex act, or that the person has not attained the age of 18
> years and will be caused to engage in a commercial sex act, shall be
> punished as provided in subsection (b).

18 U.S.C. § 1591(a) (emphasis added). "Participation in a venture" is defined as

"knowingly assisting, supporting, or facilitating a violation of subsection (a)(1)."

18 U.S.C. § 1591(e)(4). Section 1595 provides a civil remedy for those who are

victims of violations of Section 1591. 18 U.S.C. § 1595.[3]

In their new second claim, Plaintiffs appear to assert that Omegle

(1) directly participated in the alleged sex trafficking venture involving C.H. and

the third-party user, and (2) secondarily participated under a "beneficiary"

---

[3] Section 1595 provides in relevant part:
> An individual who is a victim of a violation of [18 U.S.C. § 1581 *et seq.*] may bring
> a civil action against the perpetrator (or whoever knowingly benefits, financially
> or by receiving anything of value from participation in a venture which that
> person knew or should have known has engaged in an act in violation of this
> chapter) . . . and may recover damages and reasonable attorneys fees.

18 U.S.C. § 1595(a).

theory by "knowingly benefiting" from participating in that alleged venture. (Dkt. 48 ¶¶ 80-81.) But Plaintiffs' unsupported assertions fail as a matter of law.

### a. FOSTA requires actual knowledge by the interactive computer service to overcome CDA 230 immunity

Plaintiffs' allegations regarding knowledge on the part of Omegle are bereft of any allegation of Omegle's knowledge of C.H., the third-party user, or the interaction between the two. Rather, Plaintiffs allege only that instances of abuse by users have occurred via Omegle's website and therefore Omegle must have had some knowledge regarding these types of acts generally. (Dkt. 48 ¶ 43.) But this type of allegation of general knowledge is insufficient to plausibly allege a claim under Section 1591 and overcome CDA immunity.

As the Southern District of Florida recently held, a claim under Section 1591 against an interactive computer service like Omegle is barred by CDA 230 unless the plaintiff can satisfy an "actual knowledge" standard. In *Doe v. Kik Interactive, Inc.*, the minor plaintiff alleged that Kik—which provides a service that allows users to message one another—knowingly participated in a venture under Section 1591 wherein other Kik users solicited and convinced her to send them sexually graphic photos of herself. 482 F. Supp. 3d 1242, 1244-45 (S.D. Fla. 2020). After concluding that Kik would be immune under CDA 230, *id.* at 1248-49, the court addressed the issue whether, in the language of FOSTA's amendment to the CDA, "the conduct underlying the claim constitute[d] a violation of section 1591." 47 U.S.C. § 230(e)(5)(A). Resolution of that issue depended on the level of *mens rea* required with respect to the meaning of

"participation in a venture." The criminal statute, Section 1591, imposes an actual knowledge standard. But the plaintiff contended that the "knew or should have known" standard of Section 1595(a) applied. *Kik*, 482 F. Supp. 3d at 1249. The court disagreed with plaintiff.

Citing to a line of cases involving sex trafficking claims under Section 1595 against hotel defendants, the court noted that the plaintiff's argument as to constructive knowledge "might prevail" if the case did not involve an interactive computer service provider (e.g., Kik). *Id.* at 1249-50. But "[s]ignificantly, because the hotel defendants were not interactive computer service providers, neither FOSTA nor CDA immunity were considered" in those cases. *Id.* at 1250. Turning to FOSTA, the court held that its language—making only a limited carveout from CDA immunity—imposed an actual knowledge standard:

> By its terms, FOSTA did not abrogate CDA immunity for all claims arising from sex trafficking; FOSTA permits civil liability for websites only "if the conduct underlying the claim constitutes a violation of section 1591." **And section 1591 requires knowing and active participation in sex trafficking by the defendants**.

*Id.* at 1251 (emphasis added). The court's conclusion is consistent with FOSTA's legislative history which expressly states that "general knowledge that sex trafficking occurs on a website will not suffice as the knowledge element must be proven as to a specific victim." H.R. 115-572 at p. 5.

Although there are out-of-circuit cases alleging Section 1595 claims against an interactive computer service (craigslist), unlike the *Kik* court, the cases devote little, if any, substantive discussion to the specific language of FOSTA or the interplay between that language and the purposes of CDA immunity.

12

For example, in *M.L. v. craigslist Inc.*, the court denied craigslist's motion to dismiss plaintiff's claim for "beneficiary liability" under Section 1595 because it concluded CDA immunity may not apply as it found the plaintiff plausibly alleged craigslist's development or creation of the ads that trafficked plaintiff. No. C19-6153 BHS-TLF, 2020 U.S. Dist. LEXIS 166334, *8-14 (W.D. Wash. Sept. 11, 2020). The court did not explicitly discuss the *mens rea* required for FOSTA's exception to CDA immunity as it found that, regardless of FOSTA, the immunity may not apply. Rather, it addressed only the question whether, under Section 1595, the plaintiff was required to allege that craigslist had actual or constructive knowledge of the plaintiff's specific trafficking or "general, abstract knowledge of potential trafficking." *Id.* at *17. Largely relying on the hotel cases and without discussing FOSTA or the CDA, the court concluded that a negligence, constructive knowledge standard applied to that issue. *Id.* at 17-19; *see also J.B. v. G6 Hosp., LLC*, No. 19-cv-07848-HSG, 2020 U.S. Dist. LEXIS 151213, *23-26 (N.D. Cal. Aug. 20, 2020) (stating, without analysis, that FOSTA precluded CDA immunity for Section 1595 claims and looking to the hotel cases to apply a constructive knowledge standard). In contrast to these courts, however, the *Kik* court directly addressed the question of what knowledge standard applies to claims under FOSTA and—consistent with the statutory language, the legislative history, and the unique concerns balanced in FOSTA's amendment to the CDA— concluded that actual knowledge is required.[4] *Kik*, 482 F. Supp. 3d at 1249-51.

---

[4] The *M.L.* decision was issued after *Kik* while the *J.B.* decision issued shortly before it; as a result, *Kik* does not discuss either case. Nonetheless, because those cases did not substantively

In dismissing the claim against Kik, the court then concluded that the plaintiff had not alleged facts "that would plausibly establish that [Kik] knowingly participated in the sex trafficking venture involving her[.]" *Id.* at 1251. Rather, as here, the plaintiff alleged only that Kik "knew that other sex trafficking incidents occurred on Kik," which was insufficient to "satisfy FOSTA's requirement that the conduct underlying the claim violate [Section 1591]." *Id.* As a result, the plaintiff's claim under Sections 1591 and 1595 were barred by CDA 230. Plaintiffs' allegations are similarly deficient. There are no allegations that "plausibly establish that [Omegle] knowingly participated in the sex trafficking venture involving [C.H.]." *Id.* Rather, Plaintiffs allege generally that Omegle purportedly was aware that sex trafficking incidents had occurred on its platform. (Dkt. 48 ¶¶ 39, 41-42.) But such alleged general knowledge is not sufficient to establish that Omegle "knowingly" participated in the sex trafficking venture involving C.H. and the other user. Thus, FOSTA's limited carveout from CDA 230 immunity does not apply and Plaintiffs' claim is barred.

### b. Even absent CDA 230, the FAC fails to plausibly allege Omegle participated in or benefitted from a venture

In order to plausibly plead that a defendant "participated in a venture" for purposes of Sections 1591 and 1595, a plaintiff must either allege a "direct association" or "facts from which the Court could reasonably infer [defendant] could be said to have a tacit agreement with the trafficker." *Doe v. Rickey Patel, LLC*, No. 0:20-60683-WPD-CIV-DIMITROULEAS, 2020 U.S. Dist. LEXIS 195811,

---

analyze the issue decided in *Kik*, they likely would not have impacted the court's decision.

*13-14 (S.D. Fla. Sept. 30, 2020) (internal quotation marks omitted); *see also J.B.*, 2020 U.S. Dist. LEXIS at *25-26 (same); *M.A. v. Wyndham Hotels & Resorts, Inc.*, 425 F. Supp. 3d 959, 970 (S.D. Ohio 2019) (plaintiff must allege "at least a showing of a continuous business relationship between the trafficker and [defendant]").

But any allegation of either a "direct association" or a "continuous business relationship" is critically lacking here. The FAC does not allege any facts to demonstrate either a "direct association" or "continuous business relationship" between the third-party user who allegedly committed the criminal acts against C.H. and Omegle that would support the existence of a "venture." Plaintiffs simply make conclusory statements based on a recitation of the statutory language of Section 1591 (Dkt. 48 ¶¶ 77-81), which are insufficient to state a plausible claim. *See Iqbal*, 556 U.S. at 678 ("Threadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice."). Nor could they allege any such direct association or ongoing relationship between Omegle and the third-party user that would permit the reasonable inference of a tacit agreement between them because Omegle does not require users to register or log in to use the website (Dkt. 48 ¶¶ 36-37). Therefore, there can be no plausible allegation that Omegle had any knowledge of C.H., the third-party user, or that user's actions towards C.H. prior to this case.

The court in *J.B.* found generalized allegations like Plaintiffs'—such as that craigslist knew its erotic services section was well known "as a place to easily locate victims"—were not sufficient to establish that "Craigslist tacitly agreed to the sex trafficking of Plaintiff or others." *J.B.*, 2020 U.S. Dist. LEXIS 151213 at *26-

27. To conclude otherwise would result in the implausible suggestion "that Craigslist enters into tacit agreements with all traffickers (or even all posters) that use its website." *Id.* at 27. Thus, "[b]ecause Craigslist cannot be deemed to have participated in all ventures arising out of each post on its site, Plaintiff must [but did not] allege facts supporting the inference that craigslist made a tacit agreement with the sex traffickers who victimized Plaintiff." *Id.* at 28. Plaintiffs' allegations are even weaker here given the lack of any relationship between Omegle and its users.

Section 1591 also requires a "causal relationship between affirmative conduct furthering the sex-trafficking venture and receipt of a benefit, with . . . knowledge of that causal relationship." *Geiss v. Weinstein Co. Holdings LLC*, 383 F. Supp. 3d 156, 169 (S.D.N.Y. 2019). But Plaintiffs fail to allege a single fact to demonstrate Omegle's receipt of a benefit causally related to any affirmative conduct that furthered the alleged venture. To the contrary, Plaintiffs again simply repeat the statutory language, stating without factual support that Omegle "knowingly benefitted" from the alleged sex trafficking venture perpetrated by the third-party user. (Dkt. 48 ¶¶ 79-80, 83.) Such conclusory statements that merely parrot the statutory language are insufficient to state a claim for relief. *Jabaal v. Lombardi*, No. 1:14CV89-HSO-RHW, 2015 U.S. Dist. LEXIS 178762, *11 (S.D. Miss. Jan. 30, 2015) (finding that plaintiff's "conclusory allegation[] that 'Defendants knowingly benefitted financially' [was a] mere recitation of the elements of the cause of action" and insufficient to state a claim).

Thus, even if CDA 230 did not bar Plaintiffs' claim, it would fail on its own

16

merit—or lack thereof—as a matter of law.

## III.    Plaintiffs' Other Claims Also Fail As a Matter of Law

### A.    Plaintiffs' VPPA claim is fatally and irreparably deficient

The Video Privacy Protection Act, 18 U.S.C. § 2710 ("VPPA"), was enacted with the narrow purpose of "preserv[ing] personal privacy with respect to the rental, purchase, or delivery of video tapes or similar audio visual materials[.]" *Ellis v. Cartoon Network, Inc.*, 803 F.3d 1251, 1253 (11th Cir. 2015) (internal quotation marks omitted). Plaintiffs fail to state a VPPA claim for at least three independent reasons: (1) Omegle is not a "video tape service provider" ("VTSP"); (2) C.H. is not a "consumer"; and (3) Omegle did not disclose C.H.'s "personally identifiable information" ("PII") to a third party.

#### 1.    *Omegle is not a "video tape service provider"*

A threshold requirement for Plaintiffs' VPPA claim is that Omegle must be a VTSP, which is narrowly defined as "any person, engaged in the business . . . of rental, sale, or delivery of **prerecorded video cassette tapes or similar audio visual materials**[.]" 18 U.S.C. § 2710(a)(4) (emphasis added). The FAC is devoid of any facts showing that Omegle falls within this narrow definition. Plaintiffs simply quote the statutory definition and then assert, in conclusory fashion, that Omegle "deliver[s] videos recorded on its website." (Dkt. 48 ¶ 87.) But Plaintiffs do not and cannot allege that Omegle is a VTSP as it does not offer "prerecorded" videos of any kind. As Plaintiffs' own allegations show, the Omegle website permits users to engage in *real-time* chats with one another using text or their webcams. (Id. ¶¶ 33, 36.) Enabling users to use their webcams to

17

essentially engage in a video "call" in no way equates with offering video content for viewing. Thus, Plaintiffs have not alleged and cannot allege that Omegle is a VTSP and their VPPA claim fails on that ground alone.

### 2.   *C.H. is not a "consumer" as defined by the VPPA*

Plaintiffs' VPPA claim also fails for the independent reason that C.H. is not a "consumer," which is defined as "any renter, purchaser, or subscriber of goods or services from a [VTSP]." 18 U.S.C. § 2710(a)(1). C.H. does not claim to be a "renter" or "purchaser," therefore, only the "subscriber" option remains. The FAC alleges only that "[a]s a user of the [Omegle] website, C.H. is a consumer". (Dkt. 48 ¶ 88.) But a "user" of a website does not equal a "subscriber."

Courts have held that "something more" than merely visiting a website or downloading an app and viewing videos is required to be a "subscriber" under the VPPA. In *Ellis v. Cartoon Network, Inc.*, the Eleventh Circuit, relying in part on dictionary definitions of "subscriber," found that the "common thread" of the definitions was that "'subscription' involves some type of commitment, relationship, or association (financial or otherwise) between a person and an entity." 803 F.3d at 1256. The court found that the plaintiff—who had simply downloaded the free Cartoon Network app and viewed free content on it—did not satisfy the definition. *Id.* at 1257; *see also Perry v. CNN, Inc.*, 854 F.3d 1336, 1343-44 (11th Cir. 2017) (finding that merely downloading an app was insufficient to be a "subscriber"). Similarly, in *Austin-Spearman v. AMC Network Entm't LLC*, the plaintiff viewed video clips on AMC's website for free without any required login. 98 F. Supp. 3d 662, 664 (S.D.N.Y. 2015). Like *Ellis*, the court

18

required evidence of a more "durable" and "ongoing" relationship for the plaintiff to be a "subscriber." *Id.* at 669. *Compare Yershov v. Gannett Satellite Info. Network, Inc.*, 820 F.3d 482, 489 (1st Cir. 2016) (distinguishing the insufficient allegations in *Ellis* and finding that the plaintiff in the case before the court had alleged the required "something more"); *In re Hulu Privacy Litig.*, No. C 11-03764 LB, 2012 U.S. Dist. LEXIS 112916, *22-23 (N.D. Cal. Aug. 10, 2012) (finding that plaintiffs had adequately alleged that they were "subscribers" where they "signed up for a Hulu account, became registered users, received a Hulu ID, established Hulu profiles, and used Hulu's video streaming services").

Plaintiffs fail to plausibly allege the "something more" required for C.H. to be a "subscriber" of Omegle's real-time chat service. C.H. admits to being a one-time "user" of the website where no payment, registration or log in is required. (Dkt. 48 ¶¶ 36, 57, 88.) But "[s]uch casual consumption of web content, without any attempt to affiliate with or connect to the provider, exhibits none of the critical characteristics of 'subscription' and therefore does not suffice to render [C.H.] a 'subscriber'." *Austin-Spearman*, 98 F. Supp. 3d at 669. And finding that a one-time "user" of a website is a "subscriber" would read out any limiting force that term has in the VPPA's definition of "consumer." Thus, because C.H. is not a "consumer," the VPPA claim should be dismissed on this independent ground.

### 3.   *Omegle did not disclose PII as defined by the VPPA*

Plaintiffs' VPPA claim should be dismissed on the independent ground that they have not alleged that Omegle disclosed PII, which the VPPA defines as "information which identifies a person as having requested or obtained specific

19

video materials or services from a [VTSP]." 18 U.S.C. § 2710(a)(3).

Courts have recognized the narrow purpose of, and the correspondingly narrow definition of PII in, the VPPA. *See In re Nickelodeon Consumer Privacy Litig.*, 827 F.3d 262, 284 (3d Cir. 2016) (the VPPA's purpose "was quite narrow: to prevent disclosures of information that would, with little or no extra effort, permit an ordinary recipient to identify a particular person's video-watching habits"). Additionally, courts have rejected attempts—like that which Plaintiffs make here—to import the definition of PII in the Children's Online Privacy Protection Act to expand the definition of that term in the VPPA. *Id.* at 286-88. Doing so would be contrary to basic statutory interpretation rules that statutory language cannot be simply read out of a statute. *See, e.g., United States v. Ballinger*, 395 F.3d 1218, 1237 (11th Cir. 2005) (stating that words in a statute "must be read to have a purpose, and from their purpose they cannot be delinked").

Thus, consistent with the act's limited purpose, courts have held that the VPPA "protects [PII] that identifies a specific person and ties that person to particular videos that the person watched." *In re Nickelodeon*, 827 F.3d at 285 (internal quotation marks omitted); *see also Perry v. CNN*, No. 1:14-CV-02926-ELR, 2016 U.S. Dist. LEXIS 179395, *9 (N.D. Ga. Apr. 20, 2016) (concluding that PII is information "which, in its own right, without more, links an actual person to actual video materials") (internal quotation marks omitted). Thus, a VPPA plaintiff must establish the VTSP knew it was disclosing: "1) a user's identity; 2) the identity of the video material; and 3) the connection between the two—*i.e.*, that the given user had 'requested or obtained' the given video material." *In re*

20

*Hulu Privacy Litig.*, 86 F. Supp. 3d 1090, 1097 (N.D. Cal. 2015).

Plaintiffs' VPPA claim fails to plausibly allege any of these requirements for PII. The only information Plaintiffs appear to allege is PII is the "geolocation" disclosed by the third-party user and C.H.'s "viewing data", neither of which are described in the FAC. (*See* Dkt. 48 ¶¶ 11, 59, 66-69.) But the FAC does not, and cannot, allege that this information is capable, by itself, of (1) identifying her, (2) identifying video material, and (3) identifying the connection between the two (e.g., that she requested or obtained that specifically-identified video material). Even assuming it was alleged that the "geolocation" actually identified C.H., there are no allegations that any information identified specific videos or tied those specific videos as having been requested or obtained by C.H.

For any or all of these reasons, Plaintiffs' VPPA claim should be dismissed with prejudice as a matter of law.

### B.    Plaintiffs' IIED claim is properly dismissed

To state a claim for intentional infliction of emotion distress ("IIED") under Florida law,[5] Plaintiffs must establish that: (1) defendant's conduct was "intentional or reckless, *i.e.*, he intended his behavior when he knew or should have known that emotional distress would likely result;" (2) the conduct was "outrageous, *i.e.*, beyond all bounds of decency, atrocious and utterly intolerable

---

[5] The substantive law of the forum state, Florida, applies to Plaintiffs' state law claims absent an actual conflict of law. *See, e.g., Stone v. Wall*, 135 F.3d 1438, 1441 (11th Cir. 1998). There only appears to be a false conflict between the law of Florida and the law of New Jersey (Plaintiffs' state of residence) with respect to the state law claims alleged in the FAC, at least for purposes of the limited issues addressed in this Motion. *See Estate of Miller v. Thrifty Rent-A-Car Sys., Inc.*, 609 F. Supp. 2d 1235, 1244 (M.D. Fla. 2009) (a false conflict exists where, among other situations, the laws of the states are the same or different but would produce the same outcome).

in a civilized community;" and (3) the conduct caused severe emotional distress. *State Farm Mut. Auto. Ins. Co. v. Novotny*, 657 So. 2d 1210, 1212 (Fla. Dist. Ct. App. 1995); *see also Buckley v. Trenton Sav. Fund Soc'y*, 544 A.2d 857, 863 (N.J. 1988). But an IIED claim "will lie only where the defendant's conduct is so outrageous in character and so extreme in degree as to go beyond the bounds of decency and to be deemed utterly intolerable in a civilized society." *State Farm*, 657 So. 2d at 1212; *see also Buckley*, 544 A.2d at 863. Whether Plaintiffs have met this exceedingly high standard is for the Court to decide as a matter of law. *Hendricks v. Rambosk*, No. 2:10-cv-526-FtM-29DNF, 2011 U.S. Dist. LEXIS 40608, *11 (M.D. Fla. Apr. 14, 2011); *Buckley*, 544 A.2d at 864. Here, Plaintiffs allege that the "outrageous conduct" of Omegle was its alleged failure to prevent children from using its website and to monitor the site "to ensure that its users were not being sexually abused, mistreated, or exploited[.]" (Dkt. 48 ¶ 116.) But this general allegation fails to state a plausible IIED claim.

First, there is no IIED claim where a party "does no more than pursue his legal rights in a permissible way, even if he knows his conduct will cause emotional distress to the plaintiff." *State Farm*, 657 So. 2d at 1212; *see also* RESTATEMENT (SECOND) OF TORTS § 46 cmt. g. But, as discussed above, Omegle has no obligation to monitor or police third-party users of its site. Stated differently, Omegle has the legal right to make decisions about monitoring its site and therefore its exercise of that right cannot give rise to an IIED claim.

Second, this alleged conduct does not rise to the "extremely high" level of outrageous conduct necessary for an IIED claim. Demonstrating the extreme

conduct necessary for an IIED claim, Florida courts have found insufficiently outrageous "even offensive and harmful conduct[] such as accusing someone of committing a felony or making explicit racial slurs." *Neely v. Wells Fargo Fin., Inc.*, No. 8:12-cv-542-T-33AEP, 2012 U.S. Dist. LEXIS 168669, *8 (M.D. Fla. Nov. 28, 2012); *see also Griffin v. Tops Appliance City, Inc.*, 766 A.2d 292, 296-97 (N.J. Super. Ct. App. Div. 2001) (New Jersey courts have found the "elevated threshold" for outrageous conduct "only in extreme cases"). The alleged conduct by Omegle is no different in kind than any other social networking website or app that offers users the means to communicate with one another in real time, including Facebook, Twitter, Discord, WhatsApp, Zoom, Microsoft Teams and many others. Therefore, Omegle's alleged conduct is not out of the norm and cannot be considered so "outrageous" or "extreme" as to permit liability for IIED.

Therefore, Plaintiffs fail to state a claim for IIED as a matter of law.

## C.   The intrusion upon seclusion claim fails to state a plausible claim

An intrusion upon seclusion claim requires three elements: (1) "a private quarter"; (2) "some physical or electronic intrusion into that private quarter"; and (3) "the intrusion must be highly offensive to a reasonable person." *Stasiak v. Kingswood Co-op, Inc.*, No. 8:11-cv-1828-T-33MAP, 2012 U.S. Dist. LEXIS 20609, *5 (M.D. Fla. Feb. 17, 2012); *see also Friedman v. Martinez*, 231 A.3d 719, 722 (N.J. 2020). As to the third element, Florida courts have incorporated the outrageousness standard of IIED claims. *Stasiak*, 2012 U.S. Dist. LEXIS 20609 at *6; *compare Friedman*, 231 A.3d at 729 (New Jersey courts require the intrusion to be "highly offensive"). Here, the FAC vaguely alleges that C.H.'s "[PII] and

23

viewing data" were "surreptitious[ly] collect[ed] and track[ed]," and that Omegle purportedly engaged in "surreptitious highly-refined tracking of its website's users through video." (Dkt. 48 ¶¶ 96-97.) But these vague allegations, which omit any actual facts, do not state a plausible claim for intrusion.

First, Plaintiffs' intrusion claim cannot be based simply on C.H.'s use of her webcam in the real-time chat with her fellow users. Although Plaintiffs attempt to paint this as a case of Omegle being a "voyeur" surreptitiously commandeering C.H.'s webcam to observe her without her knowledge (*see* Dkt. 48 ¶ 95), that is manifestly not the case. C.H. elected to engage in video chats with other users, which necessarily required use of a webcam.

Second, the FAC's vague allegations fail to either establish an objectively reasonable expectation of privacy or demonstrate that the alleged intrusion would be highly offensive or outrageous to a reasonable person. The FAC fails to allege that Omegle collected any information that in fact identified C.H. or her "viewing data." It also fails to allege any facts to explain how Omegle "tracked" C.H. "through video." (Dkt. 48 ¶ 97.) And to the extent Plaintiffs contend the intrusion was any screenshots or video captured by the third-party user, that alleged intrusion was committed by the user, not Omegle. Finally, to the extent Plaintiffs rely on the alleged collection of C.H.'s "geolocation," such collection is not sufficiently offensive to support an intrusion claim.

Courts have rejected such intrusion claims alleging the collection of much more specific information than the unspecified "geolocation" or "viewing data" Plaintiffs allege. For example, in *In re Nickelodeon*, the plaintiffs alleged an

intrusion claim against Viacom and Google for the use of cookies placed on the computers of users who visit their websites. Plaintiffs alleged that the cookies collected information about their children and tracked their web browsing and video viewing activities. *In re Nickelodeon*, 827 F.3d at 269. As to Google, the court found that the use of tracking cookies was not "sufficiently offensive, standing alone, to survive a motion to dismiss."[6] *Id.* at 294-95. Similarly, in *Manigault-Johnson v. Google, LLC*, the court rejected an intrusion claim based on the alleged collection of children's PII. No. 2:18-cv-1032-BHH, 2019 U.S. Dist. LEXIS 59892 (D.S.C. Mar. 31, 2019). Defendants had collected PII from children under 13 who viewed videos on their apps and websites without parental notice and consent. *Id.* at *14. The court concluded that this was not "sufficiently offensive conduct" to state an intrusion claim. *Id.* at *15-18; *see also Popa v. Harriet Carter Gifts, Inc.*, 426 F. Supp. 3d 108, 112, 122-23 (W.D. Pa. 2019) (website's collection of user's name, residential and email addresses, keystrokes and mouse clicks, not sufficiently outrageous conduct to state an intrusion claim).

Similarly, here, Plaintiffs' allegation that Omegle collected C.H.'s "geolocation" or "viewing data" fails to allege the type of highly offensive conduct required for an intrusion claim. Thus, this claim should be dismissed.

### D.   Plaintiffs fail to state a claim for negligence as a matter of law

The elements of a negligence claim are familiar: "1) the existence of a duty recognized by law; 2) failure to perform that duty; and 3) injury or damage to the

---

[6] As to Viacom, the court reached a different conclusion because of the "duplicitous tactics" it used in collecting the information. *Id.* at 295.

plaintiff proximately caused by such failure." *Action Sec. Serv., Inc. v. Am. Online, Inc.*, No. 6:03-cv-1170-Orl-22DAB, 2005 U.S. Dist. LEXIS 50842, *20 (M.D. Fla. May 27, 2005); *see also Jersey Cent. Power & Light Co. v. Melcar Util. Co.*, 59 A.3d 561, 571 (N.J. 2013). The existence of a duty is a threshold legal requirement and a question of law for the court. *Virgilio v. Ryland Group, Inc.*, 680 F.3d 1329, 1339 (11th Cir. 2012); *see also Carvalho v. Toll Bros. & Developers*, 675 A.2d 209, 212 (N.J. 1996). Here, Plaintiffs allege variously that Omegle owed "C.H. and the general public" (1) "a duty to use ordinary care in designing, maintaining, and distributing its products and services to children", (2) "a duty of care to provide a safe online community," and (3) "an ongoing, non-delegable duty to continue to monitor, supervise, inspect, and assess the use of service and application [sic] to prevent the mistreatment of its users." (Dkt. 48 ¶¶ 104, 106, 108.)

Although foreseeability is an important component of the determination whether a duty exists, public policy considerations can also play a role. *See e.g.*, *Estate of Desir ex rel. Estiverne v. Vertus*, 69 A.3d 1247, 1256 (N.J. 2013) (noting that "because imposing a duty based on foreseeability alone could result in virtually unbounded liability," New Jersey courts have "been careful to require that the analysis be tempered by broader considerations of fairness and public policy"); *Biglen v. Fla. Power & Light Co.*, 910 So. 2d 405, 409 (Fla. Dist. Ct. App. 2005) ("Finding that a legal duty exists in a negligence case involves the public policy decision that a defendant should bear a given loss, as opposed to distributing the loss among the general public.") (internal quotation marks omitted).

Here, even assuming Plaintiffs could establish the foreseeability of harm,

other considerations weigh heavily against imposing a duty of care upon Omegle
to be the guarantor of the safety of the users of its website against harm
perpetrated by their fellow users. For example, the relationship between Omegle
and C.H. is at best fleeting—C.H. used the Omegle website only a single time,
she was not required to register in order to use the site, nor was she required to
make any payment to Omegle. In short, C.H.'s "relationship" with Omegle was
no more substantial than her "relationship" with any other website she may visit.
Fairness and public policy counsel against imposing a duty of care under these
circumstances. A number of cases have declined to impose such a duty on
websites that facilitate users' communications. For example, in *Dyroff v. Ultimate
Software Group, Inc.*, the plaintiff alleged that a website had a duty to warn her
son who died from an overdose of fentanyl-laced heroin purchased from a dealer
he met on the website. No. 17-cv-05359-LB, 2017 U.S. Dist. LEXIS 194524, *1, 30
(N.D. Cal. Nov. 26, 2017). The district court found that there was no special
relationship between a website and its users that would support imposing a duty
to warn and no other ground to impose an ordinary duty of care. *Id.* at *36-40.
The Ninth Circuit affirmed that decision, noting that "[n]o website could
function if a duty of care was created when a website facilitates communication,
in a content-neutral fashion, of its users' content." *Dyroff*, 934 F.3d at 1101.

Similarly, in *Doe No. 14 v. Internet Brands, Inc.*, the defendant offered a
website on which aspiring models could post profiles. No. CV 12-3626-JFW
(PJWx), 2016 U.S. Dist. LEXIS 192144, *1-2 (C.D. Cal. Nov. 14, 2016). Two
individuals used the website to identify targets for a scheme under which they

would pose as talent scouts and lure the models to a fake audition where they were drugged and assaulted. *Id.* at *2. Defendant learned that these individuals were using the website to identify targets and the plaintiff subsequently became a victim of it. *Id.* at *2, 4. Plaintiff sued the site alleging a negligent failure to warn. But the court dismissed the claim, finding that the site had no duty to warn either the plaintiff or its users generally about the risk of the perpetrators' scheme. *Id.* at *13-14 (finding "no exceptional reason to depart from the general common law rule that one owes no duty to control the conduct of another, nor to warn those endangered by such conduct") (internal quotation marks omitted).

Imposing a duty of care on Omegle—much less the impossible duty of guaranteeing website users' safety—would be both ineffectual and unjust. No website that facilitates the communications of its users—including all social networking sites—could function if such a duty were imposed. Thus, because no duty of care exists, Plaintiffs' negligence claim fails as a matter of law.

### E.   The public nuisance claim is implausible and should be dismissed

In two paragraphs containing no factual allegations, Plaintiffs claim that "Omegle created and developed a public nuisance Omegle.com which violates public rights, and subverts public order, decency, and morals [and] inconveniences and damages the general public, including Plaintiff [sic]." (Dkt. 48 ¶¶ 129-30.) But such statements are nothing more than "naked assertion[s] devoid of further factual enhancement" that are insufficient to plausibly state any claim. *Iqbal*, 556 U.S. at 678.

"[T]he tort of public nuisance fundamentally involves the vindication of a

right common to the public." *In re Lead Paint Litig.*, 924 A.2d 484, 496 (N.J. 2007) (citing RESTATEMENT § 821B). Critical to such a claim is "some interference with a public right", which is a right "common to all members of the general public." RESTATEMENT § 821B, cmt. g ("It is collective in nature and not like the individual right that everyone has not to be assaulted or defamed or defrauded or negligently injured."). But Plaintiffs fail to plausibly allege that Omegle's online chat service implicates a "public right" that is "common to all members of the general public." Their conclusory statements do not "raise a right to relief above the speculative level" and are insufficient to state a claim for relief. *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007).

## F.      There is no cause of action for ratification/vicarious liability

Plaintiffs add a new claim for "ratification/vicarious liability" in which they allege that the "Omegle defendants [sic] are vicariously liable for the conduct of the 'cappers' because they ratified their conduct, knowingly received the benefits of said conduct [and] created, developed, and maintained a forum to entice, encourage and enable the sharing of such conduct." (Dkt. 48 ¶¶ 125-26.) But "ratification" and "vicarious liability" "are not independent causes of action; instead, they are theories of liability for other claims." *Ceithami v. Celebrity Cruises, Inc.*, 207 F. Supp. 3d 1345, 1349 (S.D. Fla. 2016); *see also Williams v. Verizon N.J., Inc.*, No. 2:19-09350-KM-MAH, 2020 U.S. Dist. LEXIS 43528, *32 (D.N.J. Mar. 12, 2020). Thus, this "claim" should be dismissed.

## IV.   Leave to Amend Should Not Be Granted

Notwithstanding the general liberal standard for pleading amendments,

courts routinely deny leave to amend when CDA 230 bars the claims on the ground that amendment would be futile. *See, e.g.*, *Kik*, 482 F. Supp. 3d at 1251-52 (finding that amendment would be futile as CDA 230 would also bar plaintiff's proposed new claims); *La'Tiejira*, 272 F. Supp. 3d at 984, 994 (dismissing complaint with prejudice based on CDA 230); *Saponaro*, 93 F. Supp. 3d at 322 (dismissing complaint with prejudice based in part on CDA 230). This case is no different. Plaintiffs' claims are largely, if not entirely, barred by CDA 230. And even assuming that the VPPA claim is not barred by CDA 230 (a point Omegle does not concede), any attempt to amend that claim would be manifestly futile as the statute simply does not apply to Omegle. Additionally, most of the deficiencies in Plaintiffs' claims were described in Omegle's motion to dismiss Plaintiffs' original complaint. Despite having the opportunity to address those deficiencies in their FAC, Plaintiffs failed to do so, strongly suggesting that the deficiencies cannot be cured by amendment. As a result, because any proposed amendment would be futile, Plaintiffs' FAC should be dismissed with prejudice in its entirety. *Coventry First, LLC v. McCarty*, 605 F.3d 865, 870 (11th Cir. 2010) (futility of amendment is a proper ground to dismiss a complaint with prejudice); *United States ex rel. Higgins v. HealthSouth Corp.*, No. 8:14-cv-2769-T-33AEP, 2019 U.S. Dist. LEXIS 146351, *15-16 (M.D. Fla. Aug. 28, 2019).

## CONCLUSION

Therefore, for the reasons stated herein, Omegle respectfully requests that Plaintiffs' FAC be dismissed in its entirety and without leave to amend.

## <u>LOCAL RULE 3.01(g) CERTIFICATION</u>

Pursuant to Local Rule 3.01(g), counsel for Defendant Omegle.com, LLC represents that they have conferred with counsel for Plaintiffs. However, the parties were unable to reach agreement with respect to the relief requested in this Motion.

DATED:   June 8, 2021                    Respectfully submitted,

FOCAL PLLC

By:   <u>s/ *Stacia N. Lay*</u>
     Stacia N. Lay, *Pro Hac Vice*
     Venkat Balasubramani, *Pro Hac Vice*
     900 1st Avenue S., Suite 201
     Seattle, Washington 98134
     Telephone: (206) 529-4827
     stacia@focallaw.com
     venkat@focallaw.com

THOMAS & LoCICERO PL

By:   <u>s/ *James J. McGuire*</u>
     James J. McGuire (FBN 187798)
     601 South Boulevard
     Tampa, Florida 33606
     Telephone: (813) 984-3060
     jmcguire@tlolawfirm.com

     Daniela B. Abratt (FBN 118053)
     915 Middle River Drive, Suite 309
     Fort Lauderdale, Florida 33304
     Telephone: (954) 703-3416
     dabratt@tlolawfirm.com

*Attorneys for Defendant*

## <u>CERTIFICATE OF SERVICE</u>

I hereby certify that on June 8, 2021, a true and correct copy of the foregoing will be served electronically through the Clerk of Court's CM/ECF filing system. I further certify that I mailed the foregoing document and the notice of electronic filing by first-class mail, postage prepaid, to any parties that do not participate in the CM/ECF filing system.

<u>s/ *Stacia N. Lay*</u>
Stacia N. Lay