# UNITED STATES DISTRICT COURT
# MIDDLE DISTRICT OF FLORIDA
# TAMPA DIVISION

M.H. and J.H., on behalf of their
minor child C.H.,

                          Plaintiffs,

       v.

OMEGLE.COM, LLC.,

                          Defendant.

Civil Action No. 21-cv-00814

## PLAINTIFFS' OPPOSITION TO DEFENDANT OMEGLE.COM, LCC'S MOTION TO DISMISS PLAINTIFFS' COMPLAINT

# **TABLE OF CONTENTS**

MEMORANDUM OF LAW IN OPPOSITION ............................................................ 6

RELEVANT FACTS ...................................................................................................... 6

ARGUMENT .................................................................................................................. 9

   I.   PLAINTIFFS' ALLEGATIONS WITHSTAND THE MOTION TO
       DISMISS STANDARD ...................................................................................... 9

   II.  OMEGLE IS NOT ENTITLED TO CDA 230 IMMUNITY AND
       PLAINTIFFS ARE ENTITLED TO DISCOVERY ......................................... 10

      a.   Omegle Knowingly Violated 18 U.S.C. 2252A and 1591 ......................... 10

      b.   Omegle is Liable Under 18 U.S.C. 2255 and 1595 ................................... 11

   III. PLAINTIFFS PROPERLY PLEADED CLAIMS UNDER 18 U.S.C. 2255
       ("MASHA'S LAW") .......................................................................................... 11

      a.   Masha's Law Provides C.H. With A Civil Remedy Against Omegle ..... 12

      b.   Omegle Knowingly Possessed Child Pornography in Violation of 18
          U.S.C. 2252A ......................................................................................... 13

      c.   Omegle Played a Causal Role in C.H.'s Losses ...................................... 14

      d.   Omegle Caused C.H. to Suffer Personal Injury ...................................... 17

   IV. PLAINTIFF PROPERLY PLEADED CLAIMS UNDER 18 U.S.C. 1595
       ("FOSTA") ........................................................................................................ 18

      a.   Omegle Knowingly Enticed and Harbored Child Pornography Crimes
          on its Platform. ...................................................................................... 18

      b.   Omegle Knowingly Benefitted from an Online Sex Trafficking Venture
          Involving C.H. ....................................................................................... 19

      c. Omegle is Liable for Knowingly Benefitting From "Cappers" on its
          Platform. ................................................................................................ 20

   V.   PLAINTIFFS CLEARLY PLEADED VPPA VIOLATIONS ......................... 22

      a.   C.H. properly alleged that Omegle is a "Video Service Provider" ......... 22

      b.   C.H. Pleaded She Was An Omegle Subscriber ....................................... 22

      c.   Plaintiffs Pleaded That Omegle Disclosed C.H.'s PII ............................ 23

   VI. PLAINTIFFS PROPERLY ALLEGED SUFFICIENT COMMON LAW
       CLAIMS AGAINST OMEGLE ...................................................................... 25

      a.   Plaintiffs Properly Pleaded Claims For IIED .......................................... 25

      b.   Plaintiffs Properly Pleaded Claims For Intrusion Upon Seclusion ........ 26

      c.   Plaintiffs Properly Pleaded Claims For Negligence ................................ 26

      d.    Plaintiffs Allege Omegle is a Public Nuisance................................................. 27

CONCLUSION..................................................................................................................... 27

# **TABLE OF AUTHORITIES**

## **Cases**

*A.B. v. Hilton Worldwide Holdings Inc.,* 2020 WL 5371459, at *7 (D. Or. Sept. 8, 2020)…………………………………………………………   22

*Ashcroft v. Iqbol*, 556 US 662, 679 (2009)……………………………   9

*Barnes v. Yahoo!, Inc.,* 570 F.3d 1096, 1107 (9th Cir. 2009), as amended (Sept. 28, 2009)………………………………………………   10

*Bell Atl. Corp. v. Twombly,* 550 U.S. 544, 570 (2007) …………….   9

*In re Boland,* 946 F.3d 335, 339 (6th Cir. 2020) ………………………   17

*B.M. v. Wyndham*, 2020 WL 4368214, at *4…………………………   21

*Brooks v. Blue Cross & Blue Shield of Fla. Inc*., 116 F.3d 1364, 1369 (11th Cir. 1997) ……………………………………………………………   9

*Broberg v. Carnival Corp.*, 303 F. Supp. 3d 1313, 1318 (S.D. Fla. 2017)……………………………………………………………………   26

*Doe v. Bates*, No. 5:05-CV-91-DF-CMC, 2006 U.S. Dist. LEXIS 93348 *7-8, 12 (E.D. Tex. Dec. 27, 2006) ……………………………………………   12-3

*Doe v. Hesketh*, 828 F.3d 159 (3rd Cir., 2016) …………………………   14-5

*Doe S.W. v. Lorain-Elyria Motel, Inc.,* No. 2:19-CV-1194, 2020 WL 1244192, at *5 (S.D. Ohio Mar. 16, 2020) ……………………………   22

*Ellis v. Cartoon Network, Inc*., 803 F.3d 1251, 1257 (11th Cir., 2015)……………………………………………………………………   23

F*lo-Sun, Inc. v. Kirk,* 783 So. 2d 1029 (Fla. 2001) …………………   27

H.H. v. G6 Hosp., LLC, 2019 WL 6682152, at *2 (S.D. Ohio Dec. 6, 2019) …………………………………………………………………………   22

*J.C. v. Choice Hotels Int'l, Inc., No.* 20-CV-00155-WHO, 2020 WL 6318707, at *4 (N.D. Cal. Oct. 28, 2020) ……………………………   21

*Kirk v. U.S. Sugar Corp.*, 726 So. 2d 822, 824 (Fla. Dist. Ct. App. 1999).............................................................................. 27

*Lemmon v. Snap, Inc.,* No. 20-55295 (9th Cir. 2021)................ 11

*New York v. Ferber*, 458 U.S. 747, 102 S.Ct. 3348, 73 L. Ed.2d 1113 (1982)............................................................................. 16

*In re Nickelodeon Consumer Privacy Litigation,* 827 F.3d 262, 284 (3d Cir. 2016) ............................................................................. 24

*Paroline v. United States*, 572 U.S. 434, 134 C. Ct. 1710, 188 L. Ed. 2d 714 (2014) ......................................................................... 16-17

*Sacco v. Eagle Finance Corp. of North Miami Beach*, 234 So.2d 406, 407–08 (Fla. 3d DCA 1970) ...................................................... 26

*Smith v. United States,* 508 U.S. 223, 228 (1993) .................. 19

*S. Y. v. Naples Hotel Co.,* 2020 WL 4504976, at *3 (M.D. Fla. Aug. 5, 2020) ............................................................................. 21

*Tilton v. Playboy Entm't Group, Inc.,* 554 F.3d 1371, 1378 (11th Cir.2009).............................................................................. 14

*United States v. Flanders,* 752 F.3d 1317, 1330 (11th Cir. 2014)............................................................................... 20

*United States v. Hristov*, 466 F.3d 949, 952 (11th Cir.2006)... 14

*United States v. Jones,* 565 U.S. 400, 412 (2012) ................. 24

*United States v. Thomas*, 893 F.2d 1066, 1070 (CA9) ............... 13

*United States v. Tollefson*, 367 F. Supp. 3d 865, 878-880 (E.D. Wis. 2019).............................................................................. 22

*Vanlandingham v. City of Abbeville, Alabama*, 483 F. Supp. 3d 1174, 1179–80 (M.D. Ala. 2020) ................................................... 21

*Yershov v. Gannett Satellite Information Network, Inc.*, 820 F.3d 482 (1st Cir., 2016) ...................................................................... 23

## Statutes and Rules

| | |
|---|---|
| 16 U.S.C. 6501-6505………………………………………………… | 23 |
| 18 U.S.C 1591(a)…………………………………………………… | 19-21 |
| 18 U.S.C. 1595…………………………………………………….. | 19-22 |
| 18 U.S.C. 2252A………………………………………………….. | 27 |
| 18 U.S.C. 2255…………………………………………………….. | 10-18 |
| 18 U.S.C. 2710(a)(4)……………………………………………… | 24 |
| 47 U.S.C. 230……………………………………………………… | 10 |
| Fed. R. Civ. P. 12(b)(6)………………………………………….. | 6, 9 |
| Fed. R. Civ. P. 8(a)(2) ………………………………………….. | 9 |

## Secondary Sources

| | |
|---|---|
| Cong. Rec. S14195 (12-20-05)…………………………………… | 15 |
| Claire Finkelstein, *Is Risk a Harm?,* 151 U. PA. L. REV. 963, 964 (2003)………………………………………………………………… | 18 |
| JOSHUA DRESSLER, UNDERSTANDING CRIMINAL LAW 122 (4th ed. 2006)………………………………………………………………… | 17 |

## MEMORANDUM OF LAW IN OPPOSITION

Plaintiffs respond to Omegle.com, LLC's ("Omegle's") Motion to Dismiss the Amended Complaint (Dkt. 48) pursuant to Fed. R. Civ. P. 12(b)(6). In support, Plaintiffs incorporate the following Memorandum of Law. Omegle continues to deny responsibility for its' actions and liability to Plaintiffs, although the law clearly permits Plaintiffs' suit. This court is empowered to grant the relief Plaintiffs seek. Plaintiff's Amended Complaint states plausible claims for relief under 18 U.S.C. 2255, and 1595, and common law. Particularly at this early stage, without the benefit of discovery, and given that much of the relevant evidence is primarily if not exclusively in the hands of the defendants, dismissal of the complaint would be wholly improper, unfair, and premature.

WHEREFORE, for the reasons stated herein, Plaintiffs respectfully request that the Court Deny Defendant Omegle's Motion to Dismiss the Amended complaint in its entirety, with prejudice.

## RELEVANT FACTS

Omegle promotes, markets, and advertises itself as a place to "Talk to strangers!" (Dkt. 48 ¶43). Omegle maintains itself as a match making service to connect people who access their platform with another stranger via video. (Dkt. 48 ¶44). Omegle pairs users randomly and in some cases Omegle matches users according to similarities in conversations and

subjects. (Dkt. 48 ¶34). Omegle.com does not require any age verification or authentication. (Dkt. 48 ¶37). Omegle fails to prevent minors under the age of thirteen from accessing Omegle. (Dkt. 48 ¶38). Since 2016, the use of Omegle's website by predators has become known to the public and to Omegle. (Dkt. 48 ¶39). Activists recorded videos of themselves on Omegle attempting to catch these predators in the act. (Dkt. 48 ¶40-41). Omegle has full knowledge of the extent to which its website is used to sexually target, groom, exploit, and abuse children like C.H. (Dkt. 48 ¶43). Omegle manufactured a product which caters to child predators and receives value for the intended use of Omegle.com. (Dkt. 48 ¶46).

During the COVID-19 pandemic, C.H. attended school remotely and as such her school provided her with a Chromebook. (Dkt. 48 ¶54). At this time, Omegle knew that child predators or "cappers"[1] used Omegle.com to exploit children to create child sex abuse material and other illicit and illegal content—including through screen-captured videos—and that this content was later shared on Omegle and other internet platforms. (Dkt. 48 ¶¶39, 40, 43, 44, 55). Omegle knowingly received value for the use of their product as a tool for child exploitation, child pornography, and child sex abuse. (Dkt. 48 ¶56).

---

[1] A "capper" is an individual who tricks kids into committing a sexual act over live stream while screen capturing or recording a video. *See* New Sextortion Tactics Reported to Cybertip.ca. (April 1, 2020). Retrieved May 17, 2021 from https://www.cybertip.ca/app/en/ctipalerts.

On or about March 31, 2020, C.H. accessed Omegle.com. (Dkt. 48 ¶57). C.H. used Omegle for the first time and Omegle paired her to chat with a group of minors who appeared to be older. (Dkt. 48 ¶57). Upon entering a second chat, C.H. encountered a black screen. Shortly thereafter, C.H. saw text being typed on the black screen. (Dkt. 48 ¶58). This unknown user ("John") provided C.H. with her geolocation. John also threatened to hack the cell phones and computers in C.H.'s house. (Dkt. 48 ¶59). C.H. pleaded with John to leave her alone. (Dkt. 48 ¶60).

John then instructed C.H. to remove all her clothing—including her underwear—and to touch, fondle, and masturbate her naked genitals in front of the camera. (Dkt. 48 ¶61). C.H. pleaded with John and offered gift cards to him in lieu of complying with his demands. *Id.* John became more forceful with C.H. and demanded that she remove her clothing and display her genitals. *Id.* Eventually, C.H. complied with John's demands, removed all her clothing, and touched herself in a sexually explicit manner. *Id.* John recorded C.H.'s actions, forever memorializing her child sex abuse performance. (Dkt. 48 ¶62).

Omegle knew of and collected profits, in the form of increased web traffic and advertising revenue, from fact that child predators like John—who are known to Omegle as "cappers"—took explicit screen grabs of children like C.H. and shared them online. (Dkt. 48 ¶63). In early 2020,

"cappers" such as John flocked to Omegle to take advantage of the unprecedented increase in opportunities to engage with unsupervised children online. (Dkt. 48 ¶65). Immediately after this incident, C.H. notified her parents about what occurred and M.H. and J.H. reported the incident to law enforcement. (Dkt. 48 ¶66).

## ARGUMENT

## I.   PLAINTIFFS' ALLEGATIONS WITHSTAND THE MOTION TO DISMISS STANDARD

A Fed. R. Civ. P. 12(b)(6) motion to dismiss tests whether the complaint provides: "a short and plain statement of the claim showing that the pleader is entitled to relief." Fed. R. Civ. P. 8(a)(2). *See Vanlandingham v. City of Abbeville, Alabama*, 483 F. Supp. 3d 1174, 1179–80 (M.D. Ala. 2020). This "does not require 'detailed factual allegations.'" *Bell Atl. Corp. v. Twombly,* 550 U.S. 544, 570 (2007). The reviewing court is "to draw on its judicial experience and common sense." *See Ashcroft v. Iqbol*, 556 US 662, 679 (2009). A complaint should not be dismissed for failure to state claim unless no set of facts would entitle the Plaintiff to relief. *See Twombly*, 550 U.S. at 570 (emphasis added). Plaintiffs amply pleaded their claims. Plaintiffs are entitled to the presumption that they alleged true facts and Plaintiffs are entitled to reasonable inferences in their favor. *Brooks v. Blue Cross & Blue Shield of*

*Fla. Inc.*, 116 F.3d 1364, 1369 (11th Cir. 1997). However, even if this Court has any question as to the sufficiency of Plaintiffs' allegations, dismissal is nonetheless improper. All evidence is in the primary—if not exclusive—control of Omegle. Plaintiffs are entitled to an opportunity to obtain that evidence. Omegle's motion fails as a matter of law.

## II.   OMEGLE IS NOT ENTITLED TO CDA 230 IMMUNITY AND PLAINTIFFS ARE ENTITLED TO DISCOVERY

### a.  Omegle Knowingly Violated 18 U.S.C. 2252A and 1591

Omegle's conduct falls outside the bounds of what is protected by the Communications Decency Act. 47 U.S.C. 230. Section 230 has an exemption which eliminates immunity for civil claims "brought under section 1595 of title 18, if the conduct underlying the claim constitutes a violation of section 1591[.]" 47 U.S.C. 230 (e)(5)(A). The same exemption applies to 18. U.S.C. 2255. The liability limitation in CDA 230 is not premised exclusively upon whether the content in question originated with a third party. Rather "subsection 230(c)(1) precludes liability when the duty the plaintiff alleges the defendant violated derives from the defendant's status or conduct as a publisher or speaker." *Barnes v. Yahoo!, Inc.,* 570 F.3d 1096, 1107 (9th Cir. 2009), as amended (Sept. 28, 2009). Plaintiffs do not treat Omegle's illicit conduct as if it were a publisher or speaker of third party communications. As

Plaintiffs allege, C.H. ultimately published and created the content in question and C.H. is a minor. (Dkt. 48 ¶61). Omegle's motion should be denied because, especially with internet crimes involving sex trafficking, these civil remedies are necessary for the enforcement of the criminal code, including 18 U.S.C. 2252A, 18 U.S.C. 1591, and 47 U.S.C. 110.

### b. Omegle is Liable Under 18 U.S.C. 2255 and 1595

Plaintiffs focus on Omegle's knowing acts of participating in trafficking of Child Pornography. Plaintiffs' also focus on Omegle's knowing receipt of financial gain from the ongoing circulation of C.H.'s child pornography online. (Dkt. 48 ¶¶39, 40, 43, 44, 55). Omegle has an independent duty to comply with the law, and its own terms of service. Additionally, Plaintiff's product defect claims are not premised on Omegle's status as a speaker or publisher but as the producer, developer, maintainer, designer, and creator of a tool that Omegle knew or should have known posed a danger to children like C.H. Omegle's duty to design a reasonably safe product remains fully independent of Omegle's role in monitoring or publishing third-party content. *See Lemmon v. Snap, Inc.,* No. 20-55295 (9th Cir. 2021). Furthermore, Omegle knew that "cappers" used its website to sexually abuse children and memorialize that abuse online for eternity. (Dkt. 48 ¶65).

### III.   PLAINTIFFS PROPERLY PLEADED CLAIMS UNDER

## 18 U.S.C. 2255 ("MASHA'S LAW")

Plaintiffs properly pleaded claims under 18 U.S.C. 2255 for violations of 18 U.S.C. 2252A, and are entitled to relief. Plaintiffs bring this suit on behalf of their minor child, C.H., who is a victim of child pornography offenses.

### a. Masha's Law Provides C.H. With A Civil Remedy Against Omegle

C.H. suffered personal injury because Omegle knowingly possessed her child pornography. The latest version of Masha's Law states:

> Any person who, while a minor, was a victim of a violation of section 1589, 1590, 1591, 2241(c), 2242, 2243, 2251, 2251A, 2252, 2252A, 2260, 2421, 2422, or 2423 of this title and who suffers personal injury as a result of such violation, regardless of whether the injury occurred while such person was a minor, may sue in any appropriate United States District Court…

18 U.S.C. 2255 (Pub. L. 115–126, title I, 102, Feb. 14, 2018, 132 Stat. 319).

Omegle fails to cite any cases holding that U.S.C. 230(e)(1) does not apply to 18 U.S.C. 2255. Omegle then argues that only criminals can be liable for all child pornography offenses, without any supporting authority. (Dkt. 61, p.9). Omegle attempts to shield itself under Section 230 but no such protections exist. Section 230(e)(1)'s removal of civil immunity is not limited to criminal prosecutions—as evidenced by decades of developments in the law, including the passage of 18 U.S.C. 2255—the

statute under which Plaintiffs file suit. *See Doe v. Bates*, No. 5:05-CV-91-DF-CMC, 2006 U.S. Dist. LEXIS 93348 *7-8, 12 (E.D. Tex. Dec. 27, 2006) (holding that Yahoo! was not liable for unprosecuted violations of 18 U.S.C. 2252A under a prior statutory scheme). Omegle vastly overextends the holding in *Bates* beyond the confines of 18 U.S.C. 2252A, a criminal statute, and *Bates* be easily distinguished from the case at bar for those reasons. *Id.* As Plaintiffs pleaded, 18 U.S.C. 2255 operates as a civil remedy when an actor knowingly violates any of the enumerated predicate offenses in the statue, including 18 U.S.C. 2252A.

## b. Omegle Knowingly Possessed Child Pornography in Violation of 18 U.S.C. 2252A

Plaintiffs properly alleged that Omegle "knowingly' violated 18 U.S.C. 2252A. In *United States v. Thomas*, 893 F.2d 1066, 1070 (CA9), cert. denied, 498 U.S. 826, 111 S.Ct. 80, 112 L.Ed.2d 53 (1990), the "knowingly" standard in the criminal context of child pornography crimes did not require knowledge of either the fact that the visual depiction portrayed sexually explicit conduct, nor the fact that a participant in that conduct was a minor. In their motion to dismiss, Omegle argued that Plaintiffs were required to prove that Omegle had actual knowledge that Omegle was in violation of the statute, or that Omegle was specifically hosting sexually explicit

images of C.H. while she was a minor at the time of the violation. This argument fails because it superimposes an artificial *mens rea* standard on Child Pornography crimes, which is much higher than that required of such offenses in the criminal context. Particularly in the context of this civil action, Plaintiffs sufficiently plead facts that would reveal Omegle's knowledge about "cappers." (Dkt. 48, ¶55). Omegle fails to recognize that Child Pornography crimes are not specific intent crimes requiring scienter. Such knowledge is sufficient but not required to trigger liability for Child Pornography crimes. (Dkt. 61, p.9). Furthermore, Omegle had knowledge that they possessed sexually explicit or pornographic images of C.H. and other minors, because they had reason to suspect that they would and had matched minors such as Plaintiff with users such as "Doe." (Dkt. 48, ¶41-43). "Knowledge through deliberate indifference occurs where a party acts with an awareness of the high probability of the existence of the fact in question[.]" *See Tilton v. Playboy Entm't Group, Inc.,* 554 F.3d 1371, 1378 (11th Cir.2009) (*quoting United States v. Hristov*, 466 F.3d 949, 952 (11th Cir.2006)).

### c.  Omegle Played a Causal Role In C.H.'s Losses

In *Doe v. Hesketh*, 828 F.3d 159 (3rd Cir., 2016), the Court analyzed the text of 18 U. S.C. 2255 and the statutory remedies available for child victims

of sex crimes. In looking at the propriety of allowing a civil claim to a victim, the court examined the legislative history, observing that allowing such a claim ". . . is consistent with Congress's remedial scheme for child victims of sex crimes." *Doe v. Hesketh, supra* at 168. The court further noted:

> The law's general purpose is to provide […] compensation to child pornography victims[.] *See* 152 Cong. Rec. H5705-01 (daily ed. July 25, 2006) (statement of Rep. Gingrey) ("Currently, a person who illegally downloads music faces penalties in civil court that are three times as harsh as a person who downloads child pornography. This horrible inequity was the inspiration behind the introduction of Masha's Law …" ); *see also* 151 Cong. Rec. S14187-03 (daily ed. Dec. 20, 2005) (statement of Sen. Kerry) (" This legislation increases the civil penalties recoverable by victims of child sexual exploitation, including internet child pornography" ).

*Doe v. Hekseth, supra* at 171.

In looking further at the legislative history, we see that the bill which became Masha's Law was introduced "to provide meaningful civil remedies for victims of the sexual exploitation of children...." Cong. Rec. S14195 (12-20-05). At the outset, Senator Kerry, one of the two sponsors of the bill, explained that the purpose of the legislation was "to increase civil penalties for child exploitation." He went on to state, "Our legislation is a small piece of a larger battle that we believe will stop would-be child predators and protect our children." *Id*. He noted that child pornography had become a "multi-billion dollar internet business." As to Masha, "The damage has been done and will continue until people stop downloading pictures of her off the internet." *Id*.

15

Courts have recognized that victims of child pornography offenses suffer profound personal injury, and that the victims continue to suffer harms as a result of the trafficking in their images long after the initial abuse ended. Over thirty-five years ago, in *New York v. Ferber*, 458 U.S. 747, 102 S.Ct. 3348, 73 L. Ed.2d 1113 (1982) the Supreme Court considered the harms suffered by victims of child pornography. The court wrote that the harm from trafficking abuse images of a child "poses an even greater threat to the child victim than does sexual abuse or prostitution," because the victim must "go through life knowing that the recording is circulating within the mass distribution system for child pornography." *New York v. Ferber, supra* 458 U.S. at 759.

In *Osborne v. Ohio*, 495 U.S. 103, 110 S. Ct. 1691, 109 L.Ed. 2d 98 (1990) the Supreme Court recognized that "such materials […] may be used by pedophiles to seduce other children." *Osborne* at 103-104. More recently, in *Paroline v. United States*, 572 U.S. 434, 134 C. Ct. 1710, 188 L. Ed. 2d 714 (2014), the court eloquently describes the injury flowing to the victim from a child pornography offense.

> [C]hild pornography is " a permanent record" of the depicted child's abuse, and " the harm to the child is exacerbated by [its] circulation." *Id.*, at 759, 102 S.Ct. 3348.

*Paroline, supra* at 572 U.S. 439-440, 441.

*Paroline, supra,* involved a remedial scheme available to a victim of child pornography known as "Amy." In *Paroline*, the Plaintiff Amy sought

restitution under 18 U.S.C. 2259. The Supreme Court ultimately analyzed at length the concept of proximate cause in the context of injuries caused by the conduct spreading child pornography online.

> Recognizing that losses cannot be substantiated under a but-for approach where the defendant is an anonymous possessor of images in wide circulation on the Internet […] courts have departed from the but-for standard where circumstances warrant, especially where the combined conduct of multiple wrongdoers produces a bad outcome.

*Paroline, supra* 572 U. S. at 451. In *Paroline*, the court noted that multiple actors play "a part in sustaining and aggravating this tragedy. And there can be no doubt Congress wanted victims to receive restitution for harms like this." *Paroline*, 134 S.Ct. at 1715. The *Paroline* decision makes it clear that Congress intended victims of child pornography be compensated." *Paroline*, at 1726-1727. So, too, Masha's Law is further indication of Congressional intent to enable victims of child pornography to recover for their damages.

### d. Omegle Caused C.H. to Suffer Personal Injury

Plaintiffs are the parents of a minor victim of child pornography who suffered lasting personal injury as a result of Omegle's causal role in her losses. *Paroline v. United States*, 572 U.S. 434 (2014). "There is a legal presumption of injury." *In re Boland*, 946 F.3d 335, 339 (6th Cir. 2020) (*quoting* 18 U.S.C. 2255(a) (2006) (amended 2018). Placing a child in jeopardy of harm, creates "victim" status. *See* JOSHUA DRESSLER,

UNDERSTANDING CRIMINAL LAW 122 (4th ed. 2006) (discussing example of a sleeping, attempted murder "victim)." At a minimum, Plaintiffs suffer from an invasion of C.H.'s rights to her personal security, thereby suffering harm. *See Id.* at 122 ("'[S]ocial harm' may be defined as the negation, endangering, or destruction of an individual, group, or state interest which was deemed socially valuable. Thus, the ... attempted murderer of the sleeping party [has] endangered the interests of others and [has] caused 'social harm' under this definition") (internal quotation omitted). "[A] risk of harm on another damages that interest, thus lowering the victim's baseline welfare." Claire Finkelstein, *Is Risk a Harm?,* 151 U. PA. L. REV. 963, 964 (2003) (answering "yes" to the question posed in the title of the article). Thus, Omegle exposed C.H. to the distinct harm of her images being circulated online, and the increased the risk of further distribution of those child pornography images. Omegle caused C.H. to lack of control of the distribution of her images. Thus, Omegle can be held liable to C.H. without a predicate criminal prosecution, and the overriding purpose of 18 U.S.C. 2255, which operates as a civil cause of action, is to compensate victims of child pornography for their losses outside of criminal convictions.

## IV.   PLAINTIFF PROPERLY PLEADED CLAIMS UNDER 18 U.S.C. 1595 ("FOSTA")

### a. Omegle Knowingly Enticed and Harbored Child

**Pornography Crimes on its Platform.**

Plaintiffs claims under the Fight Online Sex Trafficking Act

("FOSTA"), 18 U.S.C. 1595, are properly pled and state a proper claim for

relief. Section 1591(a)(1) provides for liability against an entity who

"knowingly . . . in or affecting interstate or foreign commerce, […]

recruits, entices, harbors, transports, provides, obtains, advertises,

maintains, patronizes, or solicits by any means a person," while "knowing,

or . . . in reckless disregard of the fact . . . that the person has not attained

the age of 18 years and will be caused to engage in a commercial sex

act[.]" 18 U.S.C. 1591(a) (emphasis added). These terms should be

construed by their "ordinary or natural" meanings. *Smith v. United

States,* 508 U.S. 223, 228 (1993) (internal citation omitted). Plaintiffs

allege that Omegle knowingly benefitted from and participated in the

activities of "cappers" on their platform. (Dkt. 48 ¶¶39, 40, 43, 44, 55).

## b. Omegle Knowingly Benefitted from an Online Sex Trafficking Venture Involving C.H.

Section 1591(a)(2) provides for liability against those who

"knowingly . . . benefits financially or by receiving anything of value,

from participation in a venture which has engaged in an act described in

violation of paragraph (1) . . . knowing, or . . . in reckless disregard of the

fact . . . that the person has not attained the age of 18 years and will be

19

caused to engage in a commercial sex act[.]" 18 U.S.C. 1591(a).

Commercial sex act "means any sex act, on account of which anything of

value is given to or received by any person[.]" 18 U.S.C. 1591(e)(3).

"Participation in a venture" is "knowingly assisting, supporting, or

facilitating a violation of subsection (a)(1)." 18 U.S.C. 1591(e)(4).

Similarly, section 1595(a) allows sex trafficking victims to sue those

who benefit financially from the damages caused by the sex trafficking

venture: "An individual who is a victim . . . may bring a civil action

against the perpetrator (or whoever knowingly benefits, financially or by

receiving anything of value from participation in a venture which that

person knew or should have known has engaged in an act in violation of

this chapter)." 18 U.S.C. 1595(a). C.H. is minor victim of child

pornography produced using Omegle at the instruction of "cappers."

### c. Omegle is Liable for Knowingly Benefitting From "Cappers" on its Platform.

Plaintiffs allege that Omegle knowingly received value for their

participation in a venture which Omegle knew Plaintiff's daughter C.H.

would be forced to engage in commercial sexual acts while under the age

of 18 years old, and knowingly recruited, enticed, harbored, obtained,

advertised, maintained, patronized, and/or solicited that venture. Such

action can be the basis for a 18 U.S.C. 1591 claim. *See, e.g., United States*

20

*v. Flanders,* 752 F.3d 1317, 1330 (11th Cir. 2014); *United States v. Tollefson*, 367 F. Supp. 3d 865, 878-880 (E.D. Wis. 2019) (denying dismissal even though a 13-year-old created pornography of herself over an app and was the primary actor in creating the material).

Section 1595 serves as a civil remedy for criminal action under 1591. Section 1591(a)(2) and 1595 nevertheless contain the same language as to the financial benefit element of the standard. *Compare* 18 U.S.C. 1591(a) ("Whoever knowingly . . . benefits, financially or by receiving anything of value[.]") with 18 U.S.C. 1595(a)("[W]hoever knowingly benefits, financially or by receiving anything of value[.]").

In *B.M.,* Defendant Wyndham Hotels argued that the financial benefit "must derive directly from, and be knowingly received in exchange for, participation in a sex trafficking venture." 2020 WL 4368214, at *4 (internal citations omitted). This district disagreed, finding that 1595 claims could not be subjected to the same knowledge standard as 1591 without undermining the "should have known" language, and concluded that it was sufficient to allege that the hotels had knowingly received revenue from room rentals. *B.M. v. Wyndham*, 2020 WL 4368214, at *4 (internal citations omitted) (finding that hotel's revenues from room rental to sex trafficker meets financial benefit element).

Numerous other courts have taken this approach. *S. Y. v. Naples Hotel Co.,* 2020 WL 4504976, at *3 (M.D. Fla. Aug. 5, 2020); *J.C. v. Choice Hotels Int'l, Inc., No.* 20-CV-00155-WHO, 2020 WL 6318707, at *4 (N.D. Cal. Oct. 28, 2020) (same); H.H. v. G6 Hosp., LLC, 2019 WL 6682152, at *2 (S.D. Ohio Dec. 6, 2019) (same); *Doe S.W. v. Lorain-Elyria Motel, Inc.,* No. 2:19-CV-1194, 2020 WL 1244192, at *5 (S.D. Ohio Mar. 16, 2020) (same); *A.B. v. Hilton Worldwide Holdings Inc.,* 2020 WL 5371459, at *7 (D. Or. Sept. 8, 2020) (same). Applying this same standard to Omegle 's knowledge of the activities underlying Plaintiffs' 1595 claim, Omegle knowingly received a benefit and a thing of value by monetizing, enabling, and participating in the activities of "cappers," as Plaintiffs alleged. (Dkt. 48 ¶¶39, 40, 43, 44, 55).

## V.   PLAINTIFFS CLEARLY PLEADED VPPA VIOLATIONS

### a. C.H. properly alleged that Omegle is a "Video Service Provider"

Omegle denies that it is a "video tape service provider," because Omegle provides live-streaming services, although C.H. plainly alleges what the law requires. The Court must, at this stage of the litigation, accept the competent pleading that Omegle is a "video service provider" within the meaning of the VPPA.

### b. C.H. Pleaded That She Was An Omegle Subscriber

Omegle argues that C.H. was not a "subscriber" of Omegle. However, Omegle overlooks the fact Omegle matched C.H. with subscriber "John" after she matched with peers. C.H. was not a first-time user of Omegle when her injury occurred. (Dkt. 48 ¶39-40). In any event, upon signing in, C.H. had to move through Omegle's long list of disclaimers before she could proceed to any actual contacts. *Id.* at ¶ 32. In other words, she had to do much more than simply download an application, like the plaintiff in *Ellis v. Cartoon Network, Inc.*, 803 F.3d 1251, 1257 (11th Cir., 2015). Courts differ on the meaning of "subscriber." *See Yershov v. Gannett Satellite Information Network, Inc.*, 820 F.3d 482 (1st Cir., 2016). The definition of "subscriber" illustrated in *Yershov* is simply "[a]n agreement to receive or be given access to electronic texts or services." 820 F.3d at 487. Even if the Court were to accept Omegle's unsubstantiated insistence that the law requires "something more" than accessing the site to become a "subscriber," C.H. alleged doing "something more" in that C.H. unwillingly provided her geolocation and child pornography. Much like the plaintiff in *Yershov* who provided his mobile location, Plaintiff operated as an Omegle "subscriber." 820 F.3d at 489.

### c. Plaintiffs Pleaded That Omegle Disclosed C.H.'s PII

As specifically alleged in Plaintiffs' Amended Complaint, the "broad definition" for Personally Identifiable Information ("PII") as codified by

COPPA includes, inter alia, "geolocation (Dkt. 48 ¶21); *See* 16 U.S.C.
6501-6505. Moreover, C.H. alleges that her "geolocation" and child
pornography of her was obtained by her abuser from Omegle and as a
result identified her address and her child pornography. (Dkt. 48 ¶¶22-
23). These allegations thus satisfy the pleading requirement of a cause of
action under the VPPA. Although, "[a]s a practical matter, norms about
what ought to be treated as private information on the Internet are both
constantly in flux and often depend on the novelty of the technology at
issue" – *In re Nickelodeon Consumer Privacy Litigation,* 827 F.3d 262, 284
(3d Cir. 2016) – the particularly sensitive nature of anyone's geolocation
has been specifically recognized by the U.S. Supreme Court. *United States
v. Jones,* 565 U.S. 400, 412 (2012) (tracking an individual's "movements
from one place to another…through electronic means" might constitute
"an unconstitutional invasion of privacy"). What is more, in *Yershov,*
supra, 820 F.3d at 486, the Court specifically held that anything that
tends to identify a party's "home and work addresses" constitutes "[PII]
within the meaning of the VPPA." *See* 18 U.S.C. 2710(a)(4). Since C.H.
alleges that the geolocation and the child pornography collected from her
by Omegle furnished "John" with the information needed to identify
where she lived – and as a consequence to threaten, blackmail and
sexually exploit her – she has certainly alleged a collection of her PII.

24

COPPA specifically prohibits services like Omegle from collecting, let alone disclosing, any PII from a child under the age of 13 without first obtaining her parents' "verifiable consent." (Dkt. 48 ¶22); *see* 16 C.F.R. 312.2. As Plaintiff's allege, Omegle failed to prevent C.H, from using and being fully entangled in its "service" and did not even "require any age verification or authentication." (Dkt. 48 ¶38). Nor did Omegle "provide any guidance to parents looking to monitor their children's use of the website." *Id*. Omegle argues that, even if it did collect and disclose C.H.'s personal information, thus intruding on her privacy and facilitating her victimization, its misconduct is irrelevant because its website contains empty language that prohibits "users under 13 years of age" from using Omegle's real-time chat service. (Dkt. 48 ¶37). A few words on a website cannot substitute for the positive legal obligations unequivocally imposes on Omegle, particularly where the protection of children, who could not be expected to fully anticipate the dangers on Omegle's site. Accordingly, the Defendant's motion must be denied.

## VI.   PLAINTIFFS PROPERLY ALLEGED SUFFICIENT COMMON LAW CLAIMS AGAINST OMEGLE

### a. Plaintiffs Properly Pleaded Claims For IIED

Plaintiff's common law claims are properly pled. Under circumstances which compound trauma, there is potential for behavior

which might otherwise be "insulting, frivolous, or careless" to surpass the bounds of human decency and become outrageous. *See Broberg v. Carnival Corp.*, 303 F. Supp. 3d 1313, 1318 (S.D. Fla. 2017). Here, the ongoing risk of the distribution of C.H.'s child pornography surely compounds the trauma she endured. In *Broberg*, the court declined to dismiss plaintiff's intentional infliction of emotional distress claim in order to allow the parties to further develop the record. *Id.* Omegle's motion should be denied because Plaintiffs are entitled to discovery.

### b. Plaintiffs Properly Pleaded Claims For Intrusion Upon Seclusion

Florida law defines intrusion as "electronic" intrusions into private matters. *See Sacco v. Eagle Finance Corp. of North Miami Beach*, 234 So.2d 406, 407–08 (Fla. 3d DCA 1970). Unlike other privacy torts— publication is not required. *Id.* C.H. properly pleaded claims entitling her to "the right of a private person to be free from public gaze." *Id.*

### c. Plaintiffs Properly Pleaded Claims For Negligence

Omegle attempts to evade accountability for its conduct by arguing that it does not have any special relationship or duty with C.H. This argument misses the mark because it fails to recognize the creation, disclosure, possession, and maintenance of Plaintiff's child pornography as harmful. This suit does not seek to hold Omegle accountable for not

protecting C.H. from third-part conduct—it seeks to hold Omegle accountable for its own conduct. Moreover, the facts of this case show that Omegle has a special relationship with C.H.—and Omegle's contentions to the contrary shows the truly hollow nature of Omegle's terms of service and age requirements.

Multiple legal obligations require Omegle to take action when it knows that children are being harmed on its platform. These include any policies or strategies used by Omegle's to report child pornography and child sex abuse material. This is reinforced by Omegle's own terms of service, which faintly prohibit C.H.'s use of Omegle.

### d. Plaintiffs Allege Omegle is a Public Nuisance

Omegle maintains a public nuisance. Omegle's activities cause damage to children online; cause discomfort, inconvenience, annoyance; and other damage to C.H. and other children's health and well-being. Plaintiffs alleged that Omegle damaged other members of the general public. Plaintiffs maintain that "judicial branch alone has the will, the authority, the power and the independence to abate this ongoing nuisance." *See* F*lo-Sun, Inc. v. Kirk,* 783 So. 2d 1029 (Fla. 2001) *quoting Kirk v. U.S. Sugar Corp.*, 726 So. 2d 822, 824 (Fla. Dist. Ct. App. 1999).

## <u>CONCLUSION</u>

Plaintiffs presented both cognizable legal theories and sufficient

facts in support. Read in the light most favorable to Plaintiffs, the Complaint has properly alleged violations of 18 U.S.C. 2252A and 1591. Therefore, Plaintiffs advanced potentially viable claims under 18 U.S.C. 2255 and 1595. The proximate cause determination in the *Paroline* decision supports Plaintiff's rights to civil claims under 18 U.S.C. 2255. Congress intended to permit victims of child pornography crimes to recover against defendants who possess their childhood sexual abuse images through a civil action under 18 U.S.C. 2255 and 1595. Accordingly, for the reasons stated above, this Court should deny Omegle's motion to dismiss in its entirety.

DATED: New York, New York
            June 28, 2021

**HACH ROSE SCHIRRIPA & CHEVERIE, LLP**

/s/ Hillary Nappi_____
Frank R. Schirripa, Esq. *Pro Hac Vice*
Hillary M. Nappi, Esq. *Pro Hac Vice*
112 Madison Avenue, 10th Floor
New York, New York 10016
(212) 213-8311

**MARSH LAW FIRM PLLC**

By_/s Jennifer Freeman_____
Jennifer Freeman, Esq.,

28

Florida Attorney Registration No. 1014236
*31 Hudson Yards, 11*th Floor
New York, New York 10001
Email: JamesMarsh@marsh.law

By /s Margaret E. Mabie
Margaret E. Mabie, Esq. *Pro Hac Vice*
*31 Hudson Yards, 11*th Floor
New York, New York 10001
Email: MargaretMabie@marsh.law

*Attorneys for Plaintiffs*

## **CERTIFICATE OF SERVICE**

I hereby certify that, on June 28, 2021 I caused a copy of Plaintiffs' Opposition to Defendant's Motion to Dismiss to be served *via* email and upon counsel of record for Defendant.

By /s Margaret E. Mabie