# APPENDIX 1

# IN THE UNITED STATES DISTRICT COURT
## OF THE EASTERN DISTRICT OF TEXAS
### TEXARKANA DIVISION

| | | |
|---|---|---|
| **JOHN AND JANE DOE, as Next Friend** | § | |
| **of JOHNNY DOE, a Minor** | § | |
| | § | |
| **V.** | § | **No. 5:05CV91** |
| | § | |
| **MARK BATES and YAHOO!, INC.** | § | |

## REPORT AND RECOMMENDATION
## OF THE UNITED STATES MAGISTRATE JUDGE

Pursuant to the provisions of 28 U.S.C. § 636(b)(1) and (3) and the Amended Order for the Adoption of Local Rules for Assignment of Duties to United States Magistrate Judges, Defendant Yahoo! Inc.'s Motion to Dismiss All Claims Against Yahoo! (Docket Entry # 17) was referred to the Honorable Caroline M. Craven for the purpose of preparing a report and recommendation. The Court, having reviewed the relevant briefing and hearing arguments of counsel,[1] recommends the motion be **GRANTED**. The Court further recommends Plaintiffs' above-entitled and numbered cause of action be **DISMISSED WITH PREJUDICE**.

## I.

### BACKGROUND

John and Jane Doe, as Next Friend of Johnny Doe, a Minor ("Plaintiffs") filed this lawsuit against Mark Bates, proceeding *pro se*, and Yahoo!, Inc. ("Defendant"). Plaintiffs allege violations of 18 U.S.C. § 2252A, negligence, negligence per se, intentional infliction of emotional distress, invasion of privacy, and civil conspiracy. The First Amended Complaint ("FAC") alleges as follows:

Defendant is a global internet communications, commerce, media, and web content

---

[1] The Court conducted a hearing on Defendant's motion on November 7, 2005.

provider/operator, providing online services to millions of worldwide users daily. FAC at 2, ¶ 6. One of the services offered by Defendant is known as E-groups, a web-based forum for like-minded computer users to connect via a topic-based web page. *Id.* at 3, ¶ 7. E-groups are topic-specific, which allow, encourage, and facilitate E-group members to engage in discussions, share photographs and files, plan events, exchange ideas and information, and nurture interests and activities. *Id.* E-groups have moderators, and the E-group web sites are hosted and operated by Defendant on its computers. *Id.* at 3, ¶ 9.

One of Defendant's E-groups was called Candyman. *Id.* Candyman, like Defendant's other E-groups, was hosted and operated by Defendant on its computers. *Id.* Defendant Bates was the Candyman web site moderator. *Id.* The purpose of the Candyman E-group was to provide a forum for sharing, posting, emailing, and transmitting hard-core, illegal child pornography. *Id.*

Defendant knew about Candyman because Defendant Bates had to obtain Defendant's consent and authorization to moderate the group. *Id.* at 3, ¶ 11. Moreover, Defendant knew or had reason to know about the illegal nature of Candyman's content because (1) the site was in an adult entertainment subcategory, (2) its introductory web page expressly stated that the group was for people who "love kids," and (3) any type of message, picture, or video could be posted on the site. *Id.* at 3, ¶ 10.

Soon after Candyman was established, it attracted thousands of members who, via Defendant's servers, posted, stored, viewed, and exchanged thousands of illegal, hard-core child pornographic photographs and video clips of illegal sex acts with children. *Id.* at 4, ¶ 11. Candyman members participated in live chat discussions and were even polled by Bates as to (1) whether they preferred hard-core child pornography or so-called "soft-pics," and (2) the preferred age of the

2

children featured on the site.  *Id.* at 4, ¶¶ 11-12.  It is undisputed that Candyman's content included illegal child pornography.

Defendant Bates and others were arrested and prosecuted as a result of a nationwide child pornography sting operation in 2000 and 2001.  Bates pled guilty to violating 18 U.S.C. § 2252A, which makes interstate distribution of child pornography a federal felony.  Bates is currently serving a thirty year sentence in a federal prison in California.  *See* Defendant's mot. at 3.

Despite knowledge of the E-group's content, Defendant did nothing to prevent, remove, or block the illegal child pornographic material from being stored on its web site or its servers, or to remove it once it was stored there.  FAC at 5, ¶ 16.   Defendant generated substantial advertising revenue from the site's high traffic volume.  *Id.*  Until Defendant shut down the E-group on February 6, 2001, *see* Defendant's mot. at 5, Defendant profited by hosting Candyman's illegal child pornography. FAC at 5, ¶ 16.

Among the pornographic images uploaded onto Candyman were sexually explicit photographs of the Does' minor son, Johnny Doe.  The photographs were illegal child pornography and were taken by a neighbor of the Does who was a member of the Candyman E-group. FAC at 4, ¶ 15.  According to Defendant's motion, the neighbor was also caught in the government's "Operation Candyman" sting operation, pled guilty to violating 18 U.S.C. § 2252A, and is currently serving a twelve year sentence in federal prison.  *See* Defendant's mot. at 4.

After the photographs were uploaded by the neighbor, Defendant stored them on its computers, knowingly permitted and allowed them to be available for accessing by Candyman members and others, and distributed them to pedophiles all over the world who subscribed to Defendant's service and opted to take advantage of Defendant's automatic email service.  FAC at

4-5, ¶ 15.  Defendant not only created, hosted, and maintained the portal through which thousands of pedophiles prospered and hundreds of children, including Johnny Doe, were victimized, but Defendant also profited from its actions.  *Id.* at 5, ¶ 16.

## II.

### DEFENDANT'S MOTION

#### A.    Defendant's arguments, generally

Defendant moves, pursuant to Federal Rule of Civil Procedure 12(b)(6), for dismissal with prejudice all claims asserted against it in Plaintiffs' FAC.  According to Defendant, the Communications Decency Act, 47 U.S.C. § 230 ("Section 230"), immunizes interactive service providers such as Defendant from this type of litigation.  Defendant refers to numerous cases, asserting courts around the country have held that "Section 230 broadly prohibits the imposition of civil liability on interactive service providers for harms caused by the dissemination of content created and developed by third parties."[2]  Defendant asserts Section 230 immunity from liability applies with full force here because Plaintiffs have not, and could not, allege that Defendant participated in the creation or development of the allegedly unlawful photographs of Johnny Doe.

#### B.    Plaintiffs' response, generally

In response, Plaintiffs first assert the motion should be denied as procedurally improper and premature.  In this regard, Plaintiffs contend Defendant's claim is an affirmative defense to Plaintiffs' allegations, and affirmative defenses may not be used to dismiss a plaintiff's complaint under Rule 12(b)(6).  Plaintiffs request Defendant's immunity from civil liability be determined only after discovery is completed and after Plaintiffs have had an opportunity to further amend the FAC.

---

[2] Defendant's mot. at 2.

4

In addition, Plaintiffs' Opposition makes three basic arguments against application of Section 230. First, Plaintiffs assert Section 230(c)(1) does not apply because it is not an immunity provision, but instead is merely "definitional" in nature. Second, Plaintiffs claim the elements of Section 230(c)(1) immunity are not met here because Defendant may have had some input into the Candyman group, and one or more of their claims do not treat Defendant as the "publisher or speaker" of the harmful content. Third, even if Section 230 applies, Plaintiffs argue that their federal claim falls within Section 230's exception for "enforcement" of a "federal criminal statute."

**III.**

**APPLICABLE STANDARD**

FED. R. CIV. P. 12(b)(6) authorizes a dismissal of a complaint for "failure to state a claim upon which relief can be granted." A 12(b)(6) motion should be granted only if it appears beyond doubt that the plaintiff could prove no set of facts in support of his claim that would entitle him to relief. *See Conley v. Gibson*, 355 U.S. 41, 45-46 (1957). Before dismissal is granted, the court must accept all well-pleaded facts as true and view them in the light most favorable to the nonmovant. *Capital Parks, Inc. v. Southeastern Advertising and Sales Sys., Inc.*, 30 F.3d 627, 629 (5th Cir.1994). A court need not, however, accept as true allegations that are conclusory in nature. *Kaiser Aluminum & Chem. Sales, Inc. v. Avondale Shipyards, Inc.*, 677 F.2d 1045, 1050 (5th Cir.1982).

**IV.**

**WHETHER DEFENDANT'S MOTION IS
PROCEDURALLY IMPROPER OR PREMATURE**

**A.     Plaintiffs' arguments**

As an initial matter, Plaintiffs assert Defendant's motion is procedurally improper and

5

premature. Specifically, Plaintiffs rely on *Doe v. GTE Corp.*, 347 F.3d 655, 657 (7th Cir. 2003) and *Novak v. Overture Services, Inc.*, 309 F.Supp.2d 446, 452 (E.D. N.Y. 2004), wherein the courts stated affirmative defenses generally do not justify dismissal under Federal Rule of Civil Procedure 12(b)(6). In both cases, the plaintiffs did not oppose resolution of the defendants' Section 230 immunity defenses on motions to dismiss under Rule 12(b)(6). Because the plaintiffs (1) did not insist upon the proper procedure, raising the defense in a Rule 12(c) motion to dismiss as opposed to a Rule 12(b)(6) motion to dismiss, (2) did not seek better notice of the defense, and (3) did not seek discovery, both courts declined to "fuss[] over procedural niceties to which the parties are indifferent." *Doe v. GTE Corp.*, 347 F.3d at 657; *Novak*, 309 F.Supp.2d at 452. The courts then considered the merits of the defendants' Section 230 immunity defense arguments.

Here, Plaintiffs insist they are not indifferent to the proper procedure and do not consent to resolution of Defendant's Section 230 immunity defense on a motion to dismiss under Rule 12(b)(6). Plaintiffs also request that the immunity issue be determined only after discovery is completed and they have had an opportunity to further amend the FAC. Plaintiffs agree with Defendant that the FAC does not allege that Defendant had a specific role in the "creation and development" of Candyman's child pornography. However, Plaintiffs state this is so because they do not know exactly what Defendant did, or did not do, with respect to the site. Plaintiffs contend they have alleged that Defendant placed advertising on the site, and there is reason to believe that Defendant may have done something more.

## B.    Defendant's response

On the other hand, Defendant asserts its Section 230 immunity defense relies entirely on the allegations on the face of the FAC, and therefore the defense is properly asserted in a Rule 12(b)(6)

6

motion to dismiss. Defendant maintains Plaintiffs ignore the Fifth Circuit precedent and point to a few cases from other jurisdictions in which courts suggested, in dicta, that an affirmative defense could not be brought on a Rule 12(b)(6) motion to dismiss. Defendant asserts it is clear that in the Fifth Circuit (as elsewhere) dismissal is appropriate "if [the] affirmative defense . . . appears on the face of the complaint." *Garrett v. Commonwealth Mortgage Corp. of Am.*, 938 F.2d 591, 594 (5th Cir. 1991); *see also Neel v. Rehberg*, 577 F.2d 262, 264 (5th Cir. 1978) ("[A]n affirmative defense . . . may be raised by a motion to dismiss for failure to state a claim upon which relief can be granted pursuant to Fed. R. Civ. P. 12(b)(6).").

Moreover, according to Defendant, Plaintiffs overlook the fact that courts routinely have granted motions to dismiss based on Section 230 immunity in situations such as this – where the defendant's entitlement to immunity was apparent on the face of the complaint. Defendant argues that permitting it to assert Section 230 immunity only after discovery is completed would defeat one of the fundamental purposes of the immunity, namely to insulate service providers not only from liability, but also from the burdens of litigation, including those associated with discovery. Defendant points to the language of the statute which specifically states both that "no liability may be imposed" and that "[*n*]*o cause of action may be brought*" based on state law that is inconsistent with Section 230. 47 U.S.C. § 230(e)(3)(emphasis added). In sum, Defendant contends Section 230 immunity clearly may be asserted on a Rule 12(b)(6) motion to dismiss where its elements are apparent from the face of the complaint.

## C. Discussion

Plaintiffs present the Court with cases indicating a Rule 12(b)(6) motion to dismiss is a procedurally improper method for determining the applicability of an affirmative defense provided

7

by Section 230. Not only are the cases from other jurisdictions, but the *Doe* decision, relied upon by the court in *Novak*, also indicates the Court may recast its decision as a judgment on the pleadings under Rule 12(c). *Doe v. GTE Corp.*, 347 F.3d at 657.

In addition, Fifth Circuit cases indicate a Rule 12(b)(6) motion, properly raised before the service of a responsive pleading (as was done in this case), may be used to raise an affirmative defense. *See Puckett v. United States*, 82 F.Supp.2d 660 (S.D. Tex. 1999). In *Puckett*, the defendant files its Rule 12(b)(6) motion after filing its answer to the plaintiffs' complaint. *Id.* at 663. The *Puckett* court initially noted that (1) courts do not mechanically deny any motion made after a responsive pleading as untimely; (2) if the defendant has previously included in the answer the defense raised in the Rule 12(b)(6) motion, thereby giving notice, then courts generally allow Rule 12(b)(6) motions filed after the answer; and (3) the courts consider Rule 12(b)(6) motions to dismiss filed after a responsive pleading, not as a Rule 12(b)(6) motion, but as a Rule 12(c) motion for judgment on the pleadings. *Id.*

Because the defendant had previously raised *res judicata* as an affirmative defense in its answer to the plaintiffs' original complaint, the *Puckett* court treated the defendant's Rule 12(b)(6) motion as a Rule 12(c) motion for judgment on the pleadings. *Id.* The court then noted that the standard applicable to a Rule 12(c) motion is the same as that applicable to a Rule 12(b)(6) motion to dismiss for failure to state a claim. *Id. See also Johnson v. Johnson*, 385 F.3d 503, 529 (5th Cir. 2004).

Another district court in the Fifth Circuit has considered the same affirmative defense asserted in this case – that all of the plaintiff's claims are barred by Section 230 immunity. *See MCW, Inc. v. Badbusinessbureau.com LLC*, 2004 WL 833595, *2 (N.D. Tex. 2004)(unpub.). The

defendants in *MCW* raised the Section 230 immunity defense in the context of a Rule 12(b)(6) motion. *Id.* The court stated that the Communications Decency Act ("CDA"), "if applicable, is an appropriate ground for dismissal of the complaint under Rule 12(b)(6) because the Act would preclude [the plaintiff] from establishing a set of facts that would entitle it to relief." *Id.* at * 7, *citing Schneider v. Amazon.com, Inc.*, 108 Wash.App. 454, 31 P.3d 37 (Wash.Ct.App. 2001)(affirming the trial court's decision to dismiss a cause of action, pursuant to a Rule 12(b)(6) motion, where immunity was extended to Amazon.com through the CDA).

Here, Defendant raised the Section 230 immunity defense in a Rule 12(b)(6) motion, which was filed properly, prior to the service of a responsive pleading. The Court in its research located only one case within the Fifth Circuit having addressed the Section 230 immunity defense, and it specifically endorsed the use of a Rule 12(b)(6) motion to raise the defense. *MCW, Inc. v. Badbusinessbureau.com LLC*, 2004 WL 833595 (N.D. Tex. 2004)(unpub.). The case is unpublished, but the Court still finds the decision persuasive in this context. Moreover, even if the Court were to determine Defendant had not utilized the proper motion, the Court could properly treat it as a Rule 12(c) motion for judgment on the pleadings. For these reasons, the Court finds Defendant's motion is procedurally proper.

Turning to the issue of whether Defendant's motion is premature, Plaintiffs indicate they want more discovery before the Court rules on the Section 230 immunity defense. As discussed in detail in Section VII(D)(2) below, based on Plaintiffs' current allegations and the applicable case law, no amount of discovery would establish a set of facts that would entitle Plaintiffs to relief. Additionally, Plaintiffs filed this cause of action in early May of 2005 and were able to conduct discovery until the Court's October 19, 2005 Order staying discovery pending the ruling on

Defendant's current motion. Plaintiffs have also had the opportunity to file an amended complaint in this case.

Moreover, Defendant properly raised the immunity defense in its motion to dismiss filed July 22, 2005. Not only has the immunity issue been fully briefed by the parties, but the Court has also conducted a hearing on Defendant's motion. The motion is ripe for consideration, and the Court agrees with Defendant that further delay in ruling on its motion will defeat one of the fundamental purposes of the immunity, namely to insulate service providers not only from liability, but also from the burdens of litigation, including those associated with discovery. In sum, the Court finds Defendant's motion is not premature.

After delineating the applicable law on the Section 230 immunity defense, the Court will consider Plaintiff's additional arguments that (1) Section 230(c)(1) does not apply because it is not an immunity provision, but instead is merely "definitional" in nature; (2) the elements of Section 230(c)(1) immunity are not met here because Defendant may have had some input into the Candyman group, and one or more of their claims do not treat Defendant as the "publisher or speaker" of the harmful content; and (3) even if Section 230 applies, Defendant's federal claim falls within Section 230's exception for "enforcement" of a "federal criminal statute."

## V.

## APPLICABLE LAW

### A.  The Communications Decency Act, 47 U.S.C. § 230

The Communications Decency Act, 47 U.S.C. § 230, provides that:

(c) Protection for 'Good Samaritan' blocking and screening of offensive material.

(1) Treatment of publisher or speaker. No provider or user of an interactive computer

service shall be treated as the publisher or speaker of any information provided by another information content provider.

(2) No provider or user of an interactive computer service shall be held liable on account of – (A) any action voluntarily taken in good faith to restrict access to or availability of material that the provider or user considers to be obscene, lewd, lascivious, filthy, excessively violent, harassing, or otherwise objectionable, whether or not such material is constitutionally protected; or (B) any action taken to enable or make available to information content providers or others the technical means to restrict access to material described in paragraph (1).

47 U.S.C. § 230(c).  Defendant is relying solely on the Section 230(c)(1) immunity.

The term "interactive computer service" is defined as "an information service, system, or access software provider that provides or enables computer access by multiple users to a computer server, including specifically a service or system that provides access to the Internet and such systems operated or services offered by libraries or educational institutions."  *Id.* § 230(f)(2).  The term "information content provider" is defined as "any person or entity that is responsible, in whole or in part, for the creation or development of information provided through the Internet or any other interactive computer service."  *Id.* § 230(f)(3).

## B.    Case Law

Section 230 generally immunizes interactive service providers from liability for harm caused by the dissemination of third-party information.  *Barnes v. Yahoo! Inc.*, 2005 WL 3005602, *2 (D. Or. Nov. 8, 2005).  The *Barnes* court provides the following legislative history for Section 230:

The legislative history surrounding Congress's creation of § 230 represented the desire to protect online intermediaries from liability for unlawful third-party content. Congress reasoned that any liability would threaten development of the online industry as a medium for new forms of mass communication and simultaneously create disincentives to self regulate such content by service providers.  Congress therefore determined that liability should rest with the actual wrongdoers - the originators of the illegal and harmful content - and not intermediary servers whose systems are sometimes abused by wrongdoers.

11

*Id.*

Section 230 does not immunize an interactive computer service if it also functions as an information content provider for the portion of the statement or publication at issue. *Carafano v. Metrosplash.com,* 339 F.3d 1119, 1125 (9th Cir. 2003); *see also Blumenthal v. Drudge,* 992 F.Supp. 44, 50 (D.D.C. 1998)(acknowledging that Section 230(c)(1) would not immunize AOL with respect to any information developed or created entirely by itself and that joint liability would be possible if AOL "had any role in creating or developing any of the information" in the posted material). "The distinction between merely publishing information provided by a third-party as an interactive computer service and actually creating or developing any of the information posted as an information content provider is critical." *MCW, Inc. v. Badbusinessbureau.com LLC*, 2004 WL 833595, *8 (N.D. Tex. 2004)(unpub.), *citing Carafano v. Metrosplash.com, Inc.*, 207 F.Supp.2d 1055, 1067 (C.D.Cal 2002), *aff'd on other grounds*, 339 F.3d 1119 (9th Cir. 2003)(rejecting the trial court's conclusion that Matchmaker.com was an information content provider).

In the seminal case *Zeran v. America Online, Inc.*, 129 F.3d 327 (4th Cir. 1997), *cert. denied*, 524 U.S. 937 (1998), the plaintiff argued that AOL unreasonably delayed in removing defamatory messages posted by an unidentified third party, refused to post retractions of those messages, and failed to screen for similar postings thereafter. *Id.* at 328. Specifically, the plaintiff alleged that when he contacted AOL to demand the internet postings be removed, he was allegedly assured that the postings would be removed. *Id.* at 329. When the internet postings were not removed, the plaintiff filed suit against AOL for negligently failing to act quickly enough and in preventing further similar postings.

The Fourth Circuit rejected the plaintiff's claims, holding that because he was seeking to hold

12

the service provider liable based on injuries allegedly resulting from the dissemination of third-party content, his claims necessarily sought to treat the service provider as "publisher" of that content, regardless of the particular label attached to the plaintiff's claims. *Id.* at 332-33. The court found AOL was immune from suit. *Id.*

Three other federal courts of appeals have also held that Section 230 immunizes computer service providers from liability for information that originates with third parties. *See Carafano*, 339 F.3d at 1123 (9th Cir. 2003)(noting that the Ninth Circuit in *Batzel v. Smith*, 333 F.3d 1018 (9th Cir. 2003) had "joined the consensus developing across other courts of appeals that § 230(c) provides broad immunity for publishing content provided primarily by third parties"); *see also Green v. America Online*, 318 F.3d 465, 471 (3d Cir. 2003)(upholding immunity for the transmission of defamatory messages and a program designed to disrupt the recipient's computer); *Ben Ezra, Weinstein, & Co. v. America Online, Inc.*, 206 F.3d 980, 985-86 (10th Cir. 2000)(upholding immunity for the on-line provision of stock information even though AOL communicated frequently with the stock quote providers and had occasionally deleted stock symbols and other information from its database in an effort to correct errors).

## VI.

## WHETHER SECTION 230(c)(1) IS MERELY A "DEFINITIONAL" PROVISION

### A.     Plaintiffs' arguments

According to Plaintiffs, Section 230(c)(2) provides the substantive "protection for blocking and screening of offensive material" by immunizing Internet service providers from civil liability for either taking steps to restrict access to or availability of material that is considered objectionable,

or enabling others to do so.  *See* 42 U.S.C. § 230(c)(2).  Absent these activities, Plaintiffs assert it is not inconsistent to hold the internet providers liable under state causes of action.  In other words, Plaintiffs contend that if an Internet service provider such as Defendant takes affirmative steps to block or screen objectionable material, such as child pornography, then it has no liability to the censored customer.  Using their interpretation, Plaintiffs state that under Section 230(c)(2), Defendant's steps to shut down Candyman after it became aware of the investigation by the F.B.I. protects Defendant from liability to the censored customers for that action.[3]

However, Plaintiffs disagree with Defendant's claim pursuant to Section 230(c)(1) that it is protected from liability to the victims of Candyman's child pornography for failing to censor the site. Plaintiffs rely on *Doe v. GTE Corp.*, 347 F.3d 655 (7th Cir. 2003), asserting Section 230(c)(1) does not apply because it is not an immunity provision, but instead is merely "definitional" in nature.

**B.**     ***Doe v. GTE Corp.***

In *GTE*, after the district court had dismissed the plaintiffs' claims based on Section 230, a panel of the Seventh Circuit affirmed on state law grounds and therefore did not decide whether Section 230 applied. *Id.* at 660-61. The appellate court nevertheless mused about potential interpretations of Section 230 that differed from the interpretation that all other courts had adopted. In particular, it hypothesized, and Plaintiffs here assert, that Section 230(c)(1) may not be a prohibition on liability at all, but instead may be merely a "definitional" provision that delineates the scope of persons who are entitled to the protection of the separate immunity set forth in Section 230(c)(2). *Id.* at 660.

---

[3] The Court notes that Defendant is not seeking immunity pursuant to Section 230(c)(2) but rather pursuant to Section 230(c)(1).

14

Section 230(c)(2), as the *GTE* court noted, protects a "provider or user" of an interactive computer service from liability for efforts to *remove or restrict* content that the defendant in good faith determines to be harmful or objectionable. *Id.* at 659. Under the "definitional" reading of Section 230(c)(1) offered in *GTE*, "an entity would remain 'a provider or user' — and thus be eligible for the immunity under § 230(c)(2) — as long as the information came from someone else; but it would become a 'publisher or speaker' and lose the benefit of § 230(c)(2) if it created the objectionable information." *Id.* at 660.

## C.    Discussion

This "definitional" reading of the statute is untenable for at least four reasons offered by Defendant in this case. First, Section 230 has its own, separately designated "definitions" section that explicitly defines terms used elsewhere in the statute, including terms used in Section 230(c). *See* 47 U.S.C. § 230(f). As a structural matter, therefore, it makes little sense to suggest that Section 230(c)(1) is also intended to be nothing more than definitional.

Second, on its face, Section 230(c)(1) does not purport to be a "definition" of anything; it states that "[n]o provider or user of an interactive computer service shall be treated as the publisher or speaker of any information provided by another information content provider." 47 U.S.C. § 230(c)(1). While the *GTE* dictum hypothesizes that Section 230(c)(1) might define the term "provider or user," that section functions not to attribute a particular meaning to that term, but rather as a substantive prohibition on how "provider[s] and user[s]" may be "treated." *Id.*

Third, according to the *GTE* definitional dictum, a provider or user may become a "publisher or speaker" if it creates the objectionable information and thereby "lose the benefit of § 230(c)(2)." *Doe v. GTE Corp.*, 347 F.3d at 660. But nothing in Section 230(c)(2) suggests that its applicability

15

depends on whether the defendant is or is not a "publisher or speaker." Indeed, Section 230(c)(2) does not even use those terms. The plain meaning of Section 230(c)(2) is that a provider or user is immune for removing or restricting content as long as it believes in "good faith" that the content is unlawful or objectionable — nothing in Section 230(c)(2) implies that being the publisher or speaker of the content in question makes any difference.

Fourth, the meaning that the *GTE* dictum would attribute to Section 230(c)(1) would serve no purpose. According to Plaintiffs, the immunity under Section 230(c)(2) is intended to ensure that, if a provider or user removes particular content, "it has no liability to the censored customer" whose content has been removed. The *GTE* court's hypothesis presumes that the purpose of Section 230(c)(1) is to make clear that Section 230(c)(2) immunity does not apply where the provider itself created the content in question — that is, where the provider itself would be the "censored" party. But a provider is not going to sue *itself* for removing its own content, and thus the elimination of the immunity in that context would be meaningless. As a result, the interpretation of Section 230(c)(1) advocated by Plaintiffs would render that provision a practical nullity.

The only rationale the *GTE* court and Plaintiffs offer for their "definitional" reading of Section 230(c)(1) is the claim that it is the only way to square the meaning of the statute with its title — "Protection for 'Good Samaritan' blocking and screening of offensive material." *Doe v. GTE Corp.*, 347 F.3d at 660. As an initial matter, where the heading or title of a statute conflicts with its actual text, the text must prevail. *See, e.g.*, *Trainmen v. Baltimore & Ohio R.R.*, 331 U.S. 519, 528-29 (1947). In any event, the conflict that Plaintiffs posit between the statute's title and the interpretation of Section 230(c)(1) adopted by the courts is illusory. Section 230(c)(1) immunity serves an important policy goal that corresponds with the meaning of the statute's title: By

eliminating the risk of liability for third-party content, Section 230(c)(1) frees service providers to monitor and screen their services and take actions to block harmful content without risk that such monitoring would provide the notice or knowledge that could be the basis for liability. It promotes self-regulation.

Finally, the Court notes that every court that has made a ruling under Section 230(c)(1), including four federal courts of appeals, has agreed that Section 230(c)(1) is an independent source of immunity for harm caused by third-party content. No court has embraced the *GTE* dicta cited by Plaintiffs. This Court rejects it as well.

## VII.

## WHETHER THE ELEMENTS OF
## SECTION 230(c)(1) IMMUNITY ARE MET

### A.    The elements of Section 230(c)(1) immunity

Three elements are required for Section 230 immunity. *Schneider v. Amazon.com, Inc.*, 108 Wash.App. 454, 31 P.3d 37 (Wash.Ct.App. 2001). The defendant must be a provider or user of an "interactive computer service." The asserted claims must treat the defendant as a publisher or speaker of information. The information must be provided by another "information content provider." *Id.* at 39; *see also* 47 U.S.C. § 230(c)(1).

### B.    Plaintiffs' arguments

Plaintiffs argue the elements of Section 230(c)(1) immunity are not met here because Defendant may have had some input into the Candyman group, and one or more of their claims do not treat Defendant as the "publisher or speaker" of the harmful content. Plaintiffs assert Defendant may have put advertisements on the E-group pages or provided format or organization for the pages.

Plaintiffs do not know what Defendant did with the website when the information was stored; Defendant possibly modified or enlarged the pictures. In any event, Plaintiffs contend this is different from the traditional case, and their pleadings allege what they need to hold Defendant liable.

## C.    Defendants' response

Defendant contends each of the three necessary elements for application of Section 230(c)(1) immunity is apparent from the face of the FAC. As for Plaintiffs' point that Defendant may have put advertisements on the E-group pages or provided format or organization for the pages, Defendant contends this position has been rejected by numerous courts. *See Carafano v. Metrosplash.com, Inc.*, 339 F.3d 1119 (9th Cir. 2003); *Ben Ezra, Weinstein, and Co., Inc. v. America Online Inc.*, 206 F.3d 980 (10th Cir. 2000); *Blumenthal v. Drudge,* 992 F.Supp. 44 (D.D.C. 1998). According to Defendant, the only issue is whether Defendant somehow helped in creating the photographs. Again, Defendant maintains Plaintiffs have not, and could not, allege that Defendant participated in the creation or development of the allegedly unlawful photographs of Johnny Doe.

## D.    Discussion

## 1.    The first element - whether Defendant is a provider of an "interactive computer service"

The FAC describes Defendant as a "global internet communications, commerce, media, and web content provider/operator" and the service at issue as a "web-based forum" allowing "like-minded computer users to interact via a topic-based web page." FAC at ¶¶ 6-7. The term "interactive computer service" is defined as "an information service, system, or access software provider that provides or enables computer access by multiple users to a computer server, including

specifically a service or system that provides access to the Internet and such systems operated or services offered by libraries or educational institutions." *Id.* § 230(f)(2). Based on the allegations contained in the FAC, the Court finds Defendant is a provider of an "interactive computer service" and therefore falls within the class of entities entitled to the protections of Section 230.

## 2. The second element - whether the pornographic photographs are "information provided by another information content provider"

The term "information content provider" is defined as "any person or entity that is responsible, in whole or in part, for the creation or development of information provided through the Internet or any other interactive computer service." *Id.* § 230(f)(3). Plaintiffs allege Defendant "not only created, hosted and maintained the *portal through which* thousands of pedophiles prospered and hundreds of children, including Johnny Doe, were victimized, but [Defendant] profited from it." FAC at 5, ¶ 16 (emphasis added). Plaintiffs further allege Defendant was an active participant in that it had the child pornography stored on its servers and placed advertisements on its E-group web pages. *Id.* at 12, ¶ 67. Finally, in this regard, Plaintiffs allege Defendant "created and maintained the *facility* for posting and distributing pornographic images of Johnny Doe being sexually violated." *Id.* at 13, ¶ 80 (emphasis added).

Plaintiffs' allegations, taken as true, establish that Defendant created, hosted, and maintained the Candyman E-group and placed advertisements on the E-group web pages. The allegations do not establish, as they must to survive Section 230(c)(1) immunity, that Defendant is responsible, in whole or in part, for the creation or development of the information provided through the Candyman E-group.

As pointed out by Defendant, Plaintiffs allege the photographs were taken and uploaded by

19

the Does' neighbor. FAC at 4, ¶ 15. Plaintiffs further allege Defendant "breached its duty of reasonable care to Johnny Doe by permitting the Candyman web site to serve as a platform for the uploading, downloading and large-scale distribution of hard-core child pornography through its *servers without oversight or intervention* because it was profitable to do so." *Id.* at 7, ¶ 32 (emphasis added). Plaintiffs' claims are necessarily based on "information provided by *another* information content provider." 47 U.S.C. § 230(c)(1)(emphasis added).

In particular, Plaintiffs' case revolves around the harm that allegedly has arisen from the dissemination of "child pornographic pictures of Johnny Doe." (FAC ¶¶ 15, 20-23). Because it has not been alleged Defendant played any role in the "creation or development" of those images, it follows the images were provided by "another information content provider." *See* 47 U.S.C. § 230(f)(3). This critical fact is readily apparent on the face of the FAC, which affirmatively alleges the pornographic images of Johnny Doe were created and uploaded by the Does' neighbor rather than Defendant. The FAC explicitly asserts it was the Does' neighbor who "took illegal child-pornographic photographs of [Johnny Doe] and uploaded them onto the Yahoo Candyman E-group site." (FAC at 4 ¶ 15; *see also id.* ¶ 21 ("Yahoo *received* these child pornographic photographs of Johnny Doe when they were uploaded onto Yahoo's Candyman website and stored on Yahoo's computers.")(emphasis added).

The allegations contained in the FAC do not warrant additional discovery. No amount of discovery into the issues of whether Defendant placed advertising onto the website or even modified or enlarged the photographs could change the allegations contained in Plaintiffs' FAC that specifically acknowledge the images were provided by "another information content provider." In addition, no amount of discovery into whether Defendant enlarged or even modified the photographs

would establish a set of facts that would entitle Plaintiffs to relief. This is so because, based on the allegations contained in the live pleading before the Court and based on the case law detailed below, additional discovery would not provided a set of facts for Plaintiffs to allege Defendant played a significant role in the "creation or development" of the specific content alleged to have injured Plaintiffs. The Court elaborates as follows.

Contrary to Plaintiffs' suggestion, the plain language of Section 230 dictates an analysis that focuses on whether the particular injurious "information" giving rise to the claims was provided by the service provider or by "another information content provider." And that in turn depends on whether the service provider was "responsible, in whole or in part, for the *creation or development*" of that particular information. 47 U.S.C. § 230(f)(3)(emphasis added). In this case, the content for which Plaintiffs seek to hold Defendant liable are the pornographic pictures of Johnny Doe. Thus, the question is whether Defendant was responsible for the creation or development of those images. According to the allegations contained in the FAC, the "information" at issue was not provided by Defendant but was "provided by another information content provider."

The case law confirms that the immunity analysis turns on who was responsible for the specific harmful material at issue, not on whether the service provider was responsible for the general features and mechanisms of the service or other content (such as advertisements) that might also have appeared on the service. For example, in *Carafano v. Metrosplash.com,* 339 F.3d 1119 (9th Cir. 2003), the plaintiff asserted that the defendant Matchmaker.com ("Matchmaker"), the operator of an online dating service, was liable for a false, unauthorized, and sexually explicit profile of the plaintiff that an unidentified user had posted to the service. The plaintiff argued that Matchmaker was an "information content provider" with respect to all the profiles on the service, and therefore

was not entitled to the protection of Section 230, because Matchmaker had provided the basic forms that were used to generate the profiles and had shaped the content of the profiles through the use of multiple choice questions whose answers were sometimes sexually suggestive. *Id.* at 1123-24.

The Ninth Circuit Court of Appeals rejected the plaintiff's argument, stating that even though Matchmaker had contributed both "structure and content" to its online profile service, it could not be held liable for profiles generated through that service except to the extent it "created or developed *the particular information at issue*" in the case. *Id.* at 1125 (emphasis added). Because it was undisputed that the unidentified user, not Matchmaker, had supplied the answers to the multiple choice questions and the identifying information that in combination made the profile a false and defamatory depiction of the plaintiff, the "particular information at issue" was "provided by another content provider." The court held "Matchmaker did not play a significant role in creating, developing or 'transforming' the relevant information" and found it immune from suit. *Id.* at 1125.

Many other courts have similarly confirmed the critical question is not whether the service provider played a role in shaping the forum or service through which the allegedly harmful information was conveyed, but rather whether the service provider contributed to the creation or development of the specific content that is alleged to have injured the plaintiff. In *Ben Ezra, Weinstein & Co. v. America Online, Inc.*, 206 F.3d 980, 985-86 (10th Cir. 2000), the Tenth Circuit held that AOL was immune from liability for injuries resulting from faulty stock quotes that had appeared on its service after it was shown that the vendor who supplied the stock quote data was the source of the particular erroneous data at issue. It mattered not that AOL had designed and promoted the "personal finance channel" on which the stock quote data appeared or even that AOL had "deleted some stock symbols or other information . . . in an effort to correct the errors." *Id.*

Similarly, in *Blumenthal v. Drudge*, 992 F. Supp. 44, 51-52 (D.D.C. 1998), the court held AOL immune from defamation claims based on a particular false assertion that the gossip columnist Matt Drudge had authored for his Drudge Report. The court so held notwithstanding (1) AOL's otherwise active role in making the Drudge Report available to its subscribers, including its hiring of Drudge as an independent contractor; (2) its "affirmative[] promot[ion]" of him as a "runaway gossip success;" (3) its express retention of "certain editorial rights with respect to the content" of the Drudge Report; and (4) its payment to Drudge of a royalty that was his sole source of income at the time. *See also Gentry v. eBay, Inc.*, 99 Cal. App. 4th at 833 n.11 (service provider's involvement with content of website "*is* irrelevant if [the service provider] did not itself create or develop the content for which [the plaintiffs] seek to hold it liable"). In sum, because the FAC affirmatively asserts that someone other than Defendant created and developed the particular unlawful and injurious photographs at issue in this case, those photographs as a matter of law constitute "information provided by another information content provider."

**3. The third element - whether Plaintiffs' claims seek to treat Defendant as the "publisher or speaker" of the third-party content.**

Defendant asserts the third element for immunity is satisfied because imposing liability on Defendant would, in at least three different respects, "treat" Defendant as "the publisher or speaker" of the unlawful content that the Does' neighbor allegedly uploaded onto the Candyman E-group. First, according to Defendant, this lawsuit seeks to impose on Defendant the very same liability that could be visited on the original publisher of the content at issue, the neighbor. Second, Defendant asserts this lawsuit seeks to impose on Defendant the "quintessential" duties of a publisher, such as screening, monitoring, and editing out inappropriate content. Third, Defendant contends the essence

of each of the claims is that Defendant "published" unlawful information pertaining to Johnny Doe and thereby caused him harm.

In response, Plaintiffs make two arguments. First, Plaintiffs rely on a dissenting opinion from the Florida Supreme Court, asserting Section 230 does not prohibit claims that would treat an interactive computer service as a so-called "distributor" rather than a publisher. *See Doe v. America Online, Inc.*, 783 So. 2d 1010, 1018-28 ("*Florida Doe*")(Lewis, J., dissenting). Second, Plaintiffs assert their federal statutory claim does not treat Defendant simply as a "publisher or speaker" of the photographs but also as a receiver and possessor of those photographs. In other words, Plaintiffs contend Defendant violated Section 2252A not only by distributing child pornography but also by receiving and possessing it. The Court will consider the two arguments in turn below.

### a.    Distributor Liability

According to dissent in the *Florida Doe* case, a claim of "distributor" liability is one in which liability is based on an allegation that a mere distributor of third-party information (such as a bookstore or newsstand), who could not otherwise be liable for unlawful content that it distributes, can be liable if it "knew or should have known" of the particular content at issue and its unlawful nature. *See Florida Doe*, 783 So. 2d at 1021-23. Because such "distributors" may be subject to liability only if this heightened level of "scienter" is established, the argument goes, imposing such liability on them treats them as "distributors" rather than "publishers" and therefore falls outside the ambit of Section 230. *Id.* at 1023-24.

While Plaintiffs assert that "the courts have gone round and round about this distinction,"[4] courts considering Section 230, including the Florida Supreme Court in the *Florida Doe* case, have

---

[4] Plaintiffs' response at 22.

24

consistently rejected this argument. *Florida Doe*, 783 So.2d 1010, 1016-17. The courts have reasoned that "distributor liability" is "merely a subset, or a species, of publisher liability, and is therefore also foreclosed by § 230." *See Zeran*, 129 F.3d at 332; *see also Perfect 10, Inc. v. CCBill, LLC*, 340 F.Supp.2d 1077, 1111 (C.D. Cal. 2004)("[E]ven if the Defendants are considered distributors rather than publishers, the CDA immunities would still apply. . . ."); *Blumenthal*, 992 F.Supp. at 52 (in enacting Section 230, "Congress made no distinction between publishers and distributors in providing immunity from liability").

### b.    Receipt and Possession

Plaintiffs also assert that their federal statutory claim does not "treat" Defendant as a publisher in all respects. Specifically, they assert that their "claim under section 2252A charges [Defendant] with violating the child pornography laws not simply as a 'publisher or speaker' of the illegal photographs of Johnny Doe, but *also* as a receiver and possessor of those photographs. In other words, [Defendant] violated section 2252A not only by distributing child pornography, but also by receiving and possessing" it.[5]

The FAC explicitly defines the damages sought in terms of the publication of the images: "As a proximate cause of the conduct alleged herein [Johnny Doe's] private harm has been *published* to the world causing Doe to suffer sever[e] mental anguish and/or pain and suffering in the past and future. Doe seeks damages for his mental anguish and/or pain and suffering." (FAC at 16, ¶ 100 (emphasis added). Similarly, the injunctive relief Plaintiffs seek is prevention of further publication — that is, "the viewing and distribution of Johnny Doe's photographs from [Defendant's] websites or servers." (*Id.* at 16, ¶ 102).

---

[5] *Id.* at 10-11, 18.

Courts have clearly stated that Section 230 generally "creates a federal immunity to any cause of action that would make service providers liable for information originating with a third-party user of the service" and have applied the immunity to a wide variety of claims regardless of the terms in which they were described. *Zeran*, 129 F.3d at 330. The plaintiff in *Noah v. AOL Time Warner, Inc.*, 261 F.Supp.2d 532, 534 (E.D. Virginia 2003), made an argument similar to that Plaintiffs make here. The plaintiff in *Noah*, a Muslim who used AOL's service, sued AOL under Title II of the Civil Rights Act, which prohibits discrimination in places of public accommodation, based on AOL's alleged failure "to prevent participants in an online chat room from posting or submitting harassing comments that blasphemed and defamed the plaintiff's Islamic religion and his co-religionists." *Id.* at 534. According to the plaintiff, his claim fell outside the scope of Section 230 because it did not "treat" AOL as a publisher or speaker but rather "as the owner of a place of public accommodation" who was subject to Title II and who had engaged in discrimination. *Id.* at 538.

The court granted AOL's motion to dismiss based on Section 230, noting that "[a]n examination of the injury claimed by plaintiff and the remedy he seeks clearly indicates that his Title II claim seeks to 'place' AOL 'in a publisher's role,' in violation of § 230." *Id.* Specifically, because the plaintiff had alleged that AOL was liable "for its refusal to intervene and stop the allegedly" harmful content and had also "request[ed] an injunction requiring AOL to adopt 'affirmative measures' to stop such harassment," the "allegations [made] clear that plaintiff [sought] to hold AOL liable for its failure to exercise 'a publisher's traditional editorial functions.'" *Id.* at 538-39.

The same is true here. The injury claimed by Plaintiffs is grounded in the pornographic photographs having been "published to the world" and the injunction Plaintiffs seek is to prevent such publication. (FAC at 16 ¶¶ 100, 102). Plaintiffs are seeking to hold Defendant liable for its

26

alleged failure to exercise a "publisher's traditional editorial functions," *Zeran*, 129 F.3d at 330, such as blocking, screening, or otherwise preventing the dissemination of the images. (*See* FAC at 6, ¶ 23 (Defendant allegedly "took no action to block or remove" the images in question). Plaintiffs' allegations impermissibly seek to "treat" Defendant as the publisher of those images.

### E.     Conclusion

Taking Plaintiffs' allegations as true and viewing them in the light most favorable to Plaintiffs, each of the three necessary elements for application of Section 230(c)(1) immunity is apparent from the face of the FAC: (1) Defendant is an "interactive computer service"; (2) the pornographic pictures of Johnny Doe are "information provided by another information content provider," namely the neighbor who took the pictures; and (3) Plaintiffs' claims seek to treat Defendant as the "publisher or speaker" of that third-party content. Therefore, unless Plaintiffs' claims fall within Section 230's exception for "enforcement" of a "federal criminal statute" as advocated by Plaintiffs, Defendant is entitled to Section 230(c)(1) immunity.

## VIII.

## WHETHER PLAINTIFFS' CLAIM FALLS
## WITHIN SECTION 230'S EXCEPTION

### A.     Arguments

Finally, even if Section 230 applies, Plaintiffs argue that their federal claim falls within Section 230's exception for "enforcement" of a "federal criminal statute." In their FAC, Plaintiffs added a new claim against Defendant and Bates based on an alleged violation of 18 U.S.C. § 2252A, a federal statute that makes it a crime to knowingly distribute child pornography and that also contains a provision for a private "civil remedy" for anyone aggrieved by a violation of the statute.

27

28 U.S.C. § 2252A(f).

Plaintiffs contend that applying Section 230(c)(1) to bar their civil claim under 18 U.S.C. § 2252A would be contrary to 47 U.S.C. § 230(e)(1), which states that Section 230 is not to be construed to "impair the enforcement of . . . chapter . . . 110 (relating to sexual exploitation of children) of Title 18, [18 USCS §§ 1460 et seq. or §§ 2251 et seq.] or any other Federal criminal statute." 47 U.S.C. § 230(e)(1). Plaintiffs maintain neither Section 230 nor any of its subsections, including Section 230(c), has any effect on Section 2252A. Specifically, Plaintiffs argue the civil remedies provisions of Section 2252A are exempted from the reach of Section 230(c).

Finally, Plaintiffs argue while Section 230(e)(1) provides a textual basis for saying that some classes of federal statutes are excluded from the reach of Section 230(c) and others are not, there is no basis for saying that parts of a specified federal statute are subject to exception and other parts are not. In this regard, Plaintiffs state there is no textual support for such internal bifurcation.

In response, Defendant asserts the plain text of the statute limits this exception to criminal prosecutions for violations of federal criminal statutes, not private civil suits based on alleged violations of such statutes. Defendant focuses on the definition of the term "criminal" as well as its use in the context of Section 230(e)(1), asserting the use of the term excludes and is distinguished from civil claims. Defendant also contends Congress' use of the word "enforcement" in Section 230(e)(1) again confirms that the exception applies only to criminal prosecutions.

Both parties agree there has not been a previous Section 230(c) immunity case involving Section 2252A. The Court in its research has not located a case considering the applicability of Section 230(e)(1) in a factual scenario such as the one asserted in this case. Therefore, Plaintiffs' argument is one of first impression.

28

B.    **Applicable Law**

Supreme Court precedent makes clear that the statutory text is the requisite starting point for statutory interpretation. *See, e.g.*, *Harris Trust and Sav. Bank v. Solomon Smith Barney, Inc.*, 530 U.S. 238, 254 (2000) ("[I]n any case of statutory construction, . . . analysis begins with the language of the statute."). Courts routinely rely on dictionary definitions as a means of determining the meanings of words used in statutes. *See, e.g.*, *United States v. Vargas-Duran*, 356 F.3d 598, 603 (5th Cir. 2004) (relying on dictionary definitions to ascertain meaning of statutory term).

C.    **Discussion**

Again, Section 230(e)(1) provides as follows:

(e) Effect on other laws

(1) No effect on criminal law

Nothing in this section shall be construed to impair the enforcement of section 223 or 231 of this title, chapter 71 (relating to obscenity) or 110 (relating to sexual exploitation of children) of Title 18, or any other Federal criminal statute.

47 U.S.C. § 230(e)(1).

The plain text of the statute establishes that the 230(e)(1) exception does not encompass private civil claims. As argued by Defendant, the common definition of the term "criminal," as well as its use in the context of Section 230(e)(1), specifically excludes and is distinguished from civil claims. The term "criminal" is defined as "[c]onnected with the administration of penal justice." Black's Law Dictionary 302; *see also* American Heritage Dictionary of the English Language 430 (4th ed. 2000)(defining "criminal" as "[r]elating to the administration of penal law"). The term "civil" is defined as follows: "[o]f or relating to private rights and remedies that are sought by action or suit, *as distinct from criminal proceedings*." Black's Law Dictionary 262 (emphasis added). In

29

addition, Congress' use of the word "enforcement" in Section 230(e)(1) again confirms that the exception refers to governmental action, not civil actions by a private litigant.

Congress did not bifurcate any statutes as asserted by Plaintiffs. Rather, as noted by Defendant, it preserved the ability of law enforcement officials to enforce the federal criminal laws to their fullest extent while at the same time eliminating the ability of private plaintiffs to pursue service-provider defendants. Given the complexity of Title 18 and the availability of civil remedies in statutes throughout the criminal code, Congress achieved its intended result using simple language making it clear that Section 230's limits on civil liability would not affect governmental enforcement of federal criminal laws.

As noted by Defendant, Plaintiffs' invocation of Section 230(e)(1) rests on their generalized policy arguments rather than the text of the statute. Plaintiffs' core argument appears to be that Section 230(e)(1) must exempt civil claims under the child pornography statutes because child pornography is "not to be tolerated" and "[i]f the prospect of civil liability provides a disincentive for engaging in child pornography over and above that provided by the prospect of fines and jail time, then that is a good thing."[6]

Child pornography obviously is intolerable, but civil immunity for interactive service providers does not constitute "tolerance" of child pornography any more than civil immunity from the numerous other forms of harmful content that third parties may create constitutes approval of that content. Section 230 does not limit anyone's ability to bring criminal or civil actions against the actual wrongdoers, the individuals who actually create and consume the child pornography. Here, both the neighbor and the moderator of the Candyman web site have been prosecuted and are serving

---

[6] *Id.* at 13-15.

sentences in federal prison. Further, the section 230(e)(1) exemption permits law enforcement authorities to bring criminal charges against even interactive service providers in the event that they themselves actually violate federal criminal laws.

Regarding civil liability, however, Congress decided not to allow private litigants to bring civil claims based on their own beliefs that a service provider's actions violated the criminal laws. As Defendant explained in its briefing, the reason is evident. If civil liability were possible, the incentive to bring a civil claim for the settlement value could be immense, even if a plaintiff's claim was without merit. Even if it ultimately prevailed, the service provider would face intense public scrutiny and substantial expense. Given the millions of communications that a service provider such as Defendant enables, the service provider could find itself a defendant in numerous such cases. Congress determined that it wanted to eliminate the resulting disincentives to the development of vibrant and diverse services involving third-party communication, while maintaining the ability of criminal prosecutions by the government for violations of federal criminal law. In sum, Congress did intend to treat civil and criminal claims differently and carefully crafted Section 230(e)(1) to achieve exactly that result. Plaintiffs' claim, although novel, is untenable and without merit. Based on the foregoing, it is

**RECOMMENDED** that Defendant Yahoo! Inc.'s Motion to Dismiss All Claims Against Yahoo! (Docket Entry # 17) be **GRANTED**. It is further

**RECOMMENDED** that Plaintiffs' above-entitled and numbered cause of action be **DISMISSED WITH PREJUDICE**.

Within ten (10) days after receipt of the magistrate judge's report, any party may serve and file written objections to the findings and recommendations of the magistrate judge. 28 U.S.C.A.

31

636(b)(1)(C).

Failure to file written objections to the proposed findings and recommendations contained in this report within ten days after service shall bar an aggrieved party from *de novo* review by the district court of the proposed findings and recommendations and from appellate review of factual findings accepted or adopted by the district court except on grounds of plain error or manifest injustice. *Thomas v. Arn*, 474 U.S. 140, 148 (1985); *Rodriguez v. Bowen*, 857 F.2d 275, 276-77 (5th Cir.1988).

**SIGNED this 18th day of January, 2006.**

CAROLINE M. CRAVEN
UNITED STATES MAGISTRATE JUDGE