# UNITED STATES DISTRICT COURT
## MIDDLE DISTRICT OF FLORIDA
## TAMPA DIVISION

| | |
|---|---|
| M.H. and J.H., on behalf of their minor child C.H., | Case No. 8:21-cv-00814-VMC-TGW |
| Plaintiffs, | |
| v. | |
| OMEGLE.COM, LLC, | |
| Defendant. | |

## DEFENDANT OMEGLE.COM, LLC'S MOTION TO DISMISS THE SECOND AMENDED COMPLAINT PURSUANT TO FED. R. CIV. P. 12(b)(6)

# TABLE OF CONTENTS

FACTUAL ALLEGATIONS...................................................................................1

DISCUSSION.......................................................................................................2

I.      Plaintiffs' SAC Cannot Withstand Rule 12(b)(6) Scrutiny...............................2

II.     Omegle is Entitled to Immunity Under CDA 230 .............................................3

      A.      Omegle is an interactive computer service provider ...........................4

      B.      The claims seek to treat Omegle as the publisher of content from another information content provider.............................................4

III.    No CDA 230 Exceptions Apply to Plaintiffs' Claims Under the Federal Child Pornography and Sex Trafficking Criminal Statutes ..............7

      A.      Plaintiffs' claim for alleged violation of 18 U.S.C. § 2252A is not excluded by CDA 230(e)(1) ..................................................7

      B.      The SAC does not state a plausible claim for violation of 18 U.S.C. § 1591 and thus CDA 230(e)(5)(A)'s exception does not apply........................................................................................9

            1.      To overcome CDA immunity, the SAC must plausibly allege that Omegle violated Section 1591 ...................................9

            2.      The SAC is devoid of allegations that Omegle knowingly engaged in conduct prohibited by Section 1591.......................................................................................13

                  a.      No plausible allegation that Omegle engaged in the alleged sex trafficking of C.H.....................................13

                  b.      No plausible allegation that Omegle knowingly benefited from knowingly participating in a venture ......................................................................14

IV.    Plaintiffs' Other Claims Also Fail As a Matter of Law...................................19

      A.      Plaintiffs' VPPA claim is fatally and irreparably deficient ...............19

      B.      Plaintiffs' IIED claim is properly dismissed .........................................23

C.      The intrusion upon seclusion claim fails to state a plausible claim .......................................................................................25

D.      Plaintiffs fail to state a claim for negligence as a matter of law.........28

E.      The public nuisance claim is implausible and should be dismissed .............................................................................30

F.      There is no cause of action for ratification/vicarious liability...........31

V.     Leave to Amend Should Not Be Granted .........................................................32

CONCLUSION .............................................................................................32

# TABLE OF AUTHORITIES

## <u>Cases</u>

*Action Sec. Serv., Inc. v. Am. Online, Inc.*, No. 6:03-cv-1170-Orl-22DAB,
    2005 U.S. Dist. LEXIS 50842 (M.D. Fla. May 27, 2005)....................................28

*Almeida v. Amazon.com, Inc.*, 456 F.3d 1316, 1321 (11th Cir. 2006)..............................3

*Am. Dental Ass'n v. Cigna Corp.*, 605 F.3d 1283 (11th Cir. 2010) ................................3

*Ashcroft v. Iqbal*, 556 U.S. 662 (2009) .....................................................................2, 3, 17

*Austin-Spearman v. AMC Network Entm't LLC*, 98 F. Supp. 3d 662
    (S.D.N.Y. 2015) ............................................................................................21, 22

*Bell Atl. Corp. v. Twombly*, 550 U.S. 544 (2007) ...........................................................31

*Biglen v. Fla. Power & Light Co.*, 910 So. 2d 405 (Fla. Dist. Ct. App. 2005)..............29

*Buckley v. Trenton Sav. Fund Soc'y*, 544 A.2d 857 (N.J. 1988)....................................24

*Carvalho v. Toll Bros. & Developers*, 675 A.2d 209 (N.J. 1996)...................................28

*Ceithami v. Celebrity Cruises, Inc.*, 207 F. Supp. 3d 1345 (S.D. Fla. 2016).................32

*Coventry First, LLC v. McCarty*, 605 F.3d 865 (11th Cir. 2010)...................................32

*Dart v. craigslist*, 665 F. Supp. 2d 961 (N.D. Ill. 2009)....................................................3

*DiMeo v. Max*, 248 F. App'x 280 (3d Cir. 2007) ..............................................................3

*Doe v. Bates*, No. 5:05-CV-91-DF-CMC, 2006 U.S. Dist. LEXIS 93348
    (E.D. Tex. Dec. 27, 2006).........................................................................................8

*Doe v. Kik Interactive, Inc.*, 482 F. Supp. 3d 1242 (S.D. Fla. 2020) .................... passim

*Doe v. Mindgeek USA Inc.*, No. SACV 21-00338-CJC (ADSx),
    2021 U.S. Dist. LEXIS 176833 (C.D. Cal. Sept. 3, 2021) ...................................11

*Doe v. MySpace Inc.*, 528 F.3d 413 (5th Cir. 2008)..........................................................5

*Doe v. Reddit, Inc.*, No. SACV 21-768 JVS (KESx) (C.D. Cal. Oct. 7, 2021)...... passim

*Doe v. Rickey Patel, LLC*, No. 0:20-60683-WPD-CIV-DIMITROULEAS,
    2020 U.S. Dist. LEXIS 195811 (S.D. Fla. Sept. 30, 2020)...................................16

*Doe v. Twitter, Inc.*, No. 21-cv-00485-JCS,
    2021 U.S. Dist. LEXIS 157158 (N.D. Cal. Aug. 19, 2021)....................11, 12, 18

*Doe No. 14 v. Internet Brands, Inc.*, No. CV 12-3626-JFW (PJWx),
    2016 U.S. Dist. LEXIS 192144 (C.D. Cal. Nov. 14, 2016) ................................30

*Dyroff v. Ultimate Software Group, Inc.*, No. 17-cv-05359-LB,
    2017 U.S. Dist. LEXIS 194524 (N.D. Cal. Nov. 26, 2017)...........................29, 30

*Dyroff v. Ultimate Software Group, Inc.*, 934 F.3d 1093 (9th Cir. 2019)..................6, 30

*Ellis v. Cartoon Network, Inc.*, 803 F.3d 1251 (11th Cir. 2015)...............................19, 21

*Estate of Desir ex rel. Estiverne v. Vertus*, 69 A.3d 1247 (N.J. 2013) ...........................28

*Estate of Miller v. Thrifty Rent-A-Car Sys., Inc.*, 609 F. Supp. 2d 1235
    (M.D. Fla. 2009) ........................................................................................................23

*Force v. Facebook, Inc.*, 934 F.3d 53 (2d Cir. 2019) ...........................................................8

*Friedman v. Martinez*, 231 A.3d 719 (N.J. 2020) .....................................................25, 26

*Geiss v. Weinstein Co. Holdings LLC*, 383 F. Supp. 3d 156 (S.D.N.Y. 2019)..............18

*Green v. Am. Online*, 318 F.3d 465 (3d Cir. 2003)............................................................4

*Griffin v. Tops Appliance City, Inc.*, 766 A.2d 292
    (N.J. Super. Ct. App. Div. 2001)............................................................................25

*Hendricks v. Rambosk*, No. 2:10-cv-526-FtM-29DNF, 2011 U.S. Dist. LEXIS
    40608 (M.D. Fla. Apr. 14, 2011)............................................................................24

*Herrick v. Grindr, LLC*, 306 F. Supp. 3d 579 (S.D.N.Y. 2018) ..................................5, 6

*Hubbard v. Google LLC*, No. 19-cv-07016-BLF,
    2020 U.S. Dist. LEXIS 239936 (N.D. Cal. Dec. 21, 2020)..................................20

*In re Hulu Privacy Litig.*, 86 F. Supp. 3d 1090 (N.D. Cal. 2015) ..................................23

*In re Lead Paint Litig.*, 924 A.2d 484 (N.J. 2007) ...........................................................31

*In re Nickelodeon Consumer Privacy Litig.*, 827 F.3d 262 (3d Cir. 2016) .........22, 23, 27

*Jabagat v. Lombardi*, No. 1:14CV89-HSO-RHW,
    2015 U.S. Dist. LEXIS 178762 (S.D. Miss. Jan. 30, 2015)...................................19

*J.B. v. G6 Hosp., LLC*, No. 19-cv-07848-HSG,
    2020 U.S. Dist. LEXIS 151213 (N.D. Cal. Aug. 20, 2020)................................17

*J.B. v. G6 Hosp., LLC*, No. 19-cv-07848-HSG,
    2021 U.S. Dist. LEXIS 170338 (N.D. Cal. Sept. 8, 2021)......................... passim

*Jersey Cent. Power & Light Co. v. Melcar Util. Co.*, 59 A.3d 561 (N.J. 2013)..............28

*Klayman v. Zuckerberg*, 753 F.3d 1354 (D.C. Cir. 2014) ...................................6

*La'Tiejira v. Facebook, Inc.*, 272 F. Supp. 3d 981 (S.D. Tex. 2017) ...............................5

*Lemmon v. Snap, Inc.*, 995 F.3d 1085 (9th Cir. 2021) ......................................6

*M.A. v. Wyndham Hotels & Resorts, Inc.*, 425 F. Supp. 3d 959
    (S.D. Ohio 2019) ..................................................................16

*Manigault-Johnson v. Google, LLC*, No. 2:18-cv-1032-BHH, 2019 U.S. Dist.
    LEXIS 59892 (D.S.C. Mar. 31, 2019)...................................................27

*Marfione v. Kai U.S.A., Ltd.*, No. 17-70, 2018 U.S. Dist. LEXIS 51066
    (W.D. Pa. Mar. 27, 2018) ...........................................................7

*Mezey v. Twitter, Inc.*, No. 1:18-cv-21069-KMM, 2018 U.S. Dist. LEXIS
    121775 (S.D. Fla. July 19, 2018)...............................................4

*M.L. v. craigslist Inc.*, No. C19-6153 BHS-TLF, 2020 U.S. Dist. LEXIS 166334
    (W.D. Wash. Sept. 11, 2020) ..............................................10

*Neely v. Wells Fargo Fin., Inc.*, No. 8:12-cv-542-T-33AEP, 2012 U.S. Dist.
    LEXIS 168669 (M.D. Fla. Nov. 28, 2012) ..........................................25

*Obado v. Magedson*, No. 13-2382 (JAP), 2014 U.S. Dist. LEXIS 104575
    (D.N.J. July 31, 2014) ............................................................8

*Parker v. Google, Inc.*, 422 F. Supp. 2d 492 (E.D. Pa. 2006) ..........................................3

*Perry v. CNN, Inc.*, No. 1:14-CV-02926-ELR, 2016 U.S. Dist. LEXIS 179395
    (N.D. Ga. Apr. 20, 2016)...........................................................23

*Perry v. CNN, Inc.*, 854 F.3d 1336 (11th Cir. 2017) ......................................21

*Popa v. Harriet Carter Gifts, Inc.*, 426 F. Supp. 3d 108 (W.D. Pa. 2019) ....................27

*Roca Labs, Inc. v. Consumer Opinion Corp.*, 140 F. Supp. 3d 1311
(M.D. Fla. 2015) ........................................................................................4

*Saponaro v. Grindr, LLC*, 93 F. Supp. 3d 319 (D.N.J. 2015) ...............................5, 6, 32

*Stasiak v. Kingswood Co-op, Inc.*, No. 8:11-cv-1828-T-33MAP,
2012 U.S. Dist. LEXIS 20609 (M.D. Fla. Feb. 17, 2012) ...........................25, 26

*State Farm Mut. Auto. Ins. Co. v. Novotny*, 657 So. 2d 1210
(Fla. Dist. Ct. App. 1995) ........................................................................24

*Stone v. Wall*, 135 F.3d 1438 (11th Cir. 1998) ........................................................23

*Universal Commc'n Sys., Inc. v. Lycos, Inc.*, 478 F.3d 413 (1st Cir. 2007) ...................5

*Virgilio v. Ryland Group, Inc.*, 680 F.3d 1329 (11th Cir. 2012) ..................................28

*Williams v. Verizon N.J., Inc.*, No. 2:19-09350-KM-MAH, 2020 U.S. Dist.
LEXIS 43528 (D.N.J. Mar. 12, 2020) ....................................................32

*Yershov v. Gannett Satellite Info. Network, Inc.*, 820 F.3d 482 (1st Cir. 2016) .............21

## Statutes and Rules

18 U.S.C. § 1591 ........................................................................................ passim

18 U.S.C. § 1591(a)(1)........................................................................................13, 14

18 U.S.C. § 1591(a)(2)........................................................................................ passim

18 U.S.C. § 1591(e)(4)........................................................................................15

18 U.S.C. § 1591(e)(6)........................................................................................15

18 U.S.C. § 1595 ........................................................................................7, 9, 16

18 U.S.C. § 2251 *et seq.* ........................................................................................8

18 U.S.C. § 2252A ........................................................................................7, 8, 9

18 U.S.C. § 2710 ........................................................................................19

18 U.S.C. § 2710(a)(1)........................................................................................21

18 U.S.C. § 2710(a)(3)........................................................................................22

18 U.S.C. § 2710(a)(4) .............................................................................................20

47 U.S.C. § 230 ............................................................................................... passim

47 U.S.C. § 230(c)(1) ..................................................................................................3

47 U.S.C. § 230(e)(1) ..................................................................................................8

47 U.S.C. § 230(e)(3) ..................................................................................................3

47 U.S.C. § 230(e)(5)(A) .................................................................................. passim

47 U.S.C. § 230(f)(2) ..................................................................................................4

FED. R. CIV. P. 8(a)(2) ................................................................................................2

FED. R. CIV. P. 12(b)(6) ..............................................................................................1

## <u>Other Authority</u>

RESTATEMENT (SECOND) OF TORTS § 46, cmt. g ........................................................24

RESTATEMENT (SECOND) OF TORTS § 821B...............................................................31

RESTATEMENT (SECOND) OF TORTS § 821B, cmt. g....................................................31

Defendant Omegle.com, LLC ("Omegle") moves pursuant to FED. R. CIV. P. 12(b)(6) to dismiss Plaintiffs' Second Amended Complaint (Dkt. 75) ("SAC"). In support of this Motion, Omegle incorporates the following Memorandum of Law. WHEREFORE, for the reasons stated herein, Omegle respectfully requests that the Court dismiss the SAC in its entirety, with prejudice.

## MEMORANDUM OF LAW IN SUPPORT

Despite having the opportunity to twice amend the complaint, Plaintiffs' SAC is still fatally flawed and subject to dismissal with prejudice. Specifically, Plaintiffs seek to hold Omegle liable as the publisher or speaker of third-party content on its website contrary to the immunity provided by Section 230 of the Communications Decency Act ("CDA 230"). Therefore, for the reasons stated herein, the SAC should be dismissed with prejudice.

## FACTUAL ALLEGATIONS

The SAC alleges that M.H. and J.H. are the parents of 11-year-old C.H. and reside in Morris County, New Jersey. (Dkt. 75 at ¶¶ 8-10.) In 2009, Omegle launched its free online real-time chat service, through which users can meet and chat in real time with new people by text or video via its website. (Id. ¶¶ 13, 33.) There is no registration or log in requirement to chat with other users. (Id. ¶ 36.)

As Plaintiffs acknowledged in their original complaint, the Omegle website clearly prohibits users under 13 years of age from using the real-time chat service and prohibits users under 18 years of age from using the service without a parent's or guardian's permission. (Dkt. 1 ¶ 32; *see also* Dkt. 10-2 ¶ 3, Ex. 1.) Despite this prohibition, the SAC alleges 11-year-old C.H. visited the

Omegle website in March 2020, apparently without parental permission. (Dkt. 75 ¶ 57.) C.H. had never used the Omegle website before. C.H. elected to be randomly paired with another user via the video chat option at least twice. The first random pairing was with a group of older minors. She elected to end that chat and start a second video chat. (Id.) In the second chat, C.H. allegedly observed a black screen on which text began appearing. (Id. ¶ 58.) The SAC alleges that the other user in the chat said "he knew where C.H. lived" and provided her "geolocation." The SAC does not explain what is meant by "geolocation." (Id. ¶ 59.) The SAC alleges that the third-party user instructed C.H. to remove her clothing and touch herself in front of the camera on her computer. She complied with the user's instructions. The user allegedly captured screenshots or videos of C.H.'s actions. (Id. ¶¶ 61-62.)

## DISCUSSION

I.   **Plaintiffs' SAC Cannot Withstand Rule 12(b)(6) Scrutiny**

Although FED. R. CIV. P. 8(a)(2) only requires that a pleading provide a "short and plain statement of the claim showing that the pleader is entitled to relief," that standard requires "more than an unadorned, the-defendant-unlawfully-harmed-me accusation" or "naked assertion[s] devoid of further factual enhancement." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (internal quotation marks omitted). To survive a motion to dismiss, "a complaint must contain sufficient factual matter, accepted as true, to state a claim to relief that is plausible on its face." *Id.* (internal quotation marks omitted). A complaint has facial plausibility only "when the plaintiff pleads factual content that allows the

court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Id.*; *see also Am. Dental Ass'n v. Cigna Corp.*, 605 F.3d 1283, 1289 (11th Cir. 2010) ("*ADA*"). "When there are well-pleaded factual allegations, a court should assume their veracity and then determine whether they plausibly give rise to an entitlement to relief." *Iqbal*, 556 U.S. at 679. But no such assumption of veracity applies to legal conclusions or "unwarranted deduction[s] of fact." *Id.* at 678; *ADA*, 605 F.3d at 1290, 1294.

## II.    Omegle is Entitled to Immunity Under CDA 230

CDA 230 states that "[n]o provider or user of an interactive computer service shall be treated as the publisher or speaker of any information provided by another information content provider." 47 U.S.C. § 230(c)(1). It preempts any contrary state law, 47 U.S.C. § 230(e)(3), and creates "broad federal immunity to any cause of action that would make service providers liable for information originating with a third-party user of the service," *Almeida v. Amazon.com, Inc.*, 456 F.3d 1316, 1321 (11th Cir. 2006) (internal quotation marks omitted). CDA 230 provides immunity to a wide range of state and federal law claims, including the claims Plaintiffs assert. *See, e.g.*, *DiMeo v. Max*, 248 F. App'x 280, 281-83 (3d Cir. 2007) (IIED and defamation claims); *Dart v. craigslist*, 665 F. Supp. 2d 961, 963, 969 (N.D. Ill. 2009) (public nuisance claim); *Parker v. Google, Inc.*, 422 F. Supp. 2d 492, 500-01 (E.D. Pa. 2006) (defamation, invasion of privacy, and negligence claims), *aff'd*, 242 F. App'x 833 (3d Cir. 2007).

A defendant is immune under CDA 230 if: (1) it is the provider of an "interactive computer service" ("ICS"); (2) the asserted claims treat it as the

publisher or speaker of the information; and (3) the information is provided by another information content provider. *Roca Labs, Inc. v. Consumer Opinion Corp.*, 140 F. Supp. 3d 1311, 1319 (M.D. Fla. 2015).

### A.   Omegle is an interactive computer service provider

The SAC alleges that Omegle is a website "that enables individuals to communicate with random individuals across the world anonymously via text and video." (Dkt. 75 ¶ 33.) Thus, Omegle fits squarely within the ICS definition[1] because it is a website "that allow[s] third parties" to provide content to other users "regardless of whether [that content] is made anonymously or under a pseudonym." *Roca*, 140 F. Supp. 3d at 1318; *see also Mezey v. Twitter, Inc.*, No. 1:18-cv-21069-KMM, 2018 U.S. Dist. LEXIS 121775, *3 (S.D. Fla. July 19, 2018).

### B.   The claims seek to treat Omegle as the publisher of content from another information content provider

As to the second and third elements, the claims seek to treat Omegle as the publisher or speaker of content, specifically video and / or text communications of another information content provider. Courts have held that the second element is satisfied where a plaintiff alleges that an ICS published offending content that it should have filtered. *See, e.g.*, *Green v. Am. Online*, 318 F.3d 465, 471 (3d Cir. 2003) (element satisfied where plaintiff "attempt[ed] to hold [defendant] liable for decisions relating to the monitoring, screening, and deletion of content"). Courts have also found this element satisfied where a plaintiff's claims

---

[1] An ICS is "any information service, system, or access software provider that provides or enables computer access by multiple users to a computer server[.]" 47 U.S.C. § 230(f)(2).

are based on an offending interaction which occurs through the site, which are ultimately based on content posted by third parties, and an alleged failure to monitor or supervise the site. *See, e.g., Saponaro v. Grindr, LLC*, 93 F. Supp. 3d 319, 323 (D.N.J. 2015) (claim of failure to monitor and supervise site users was an attempt to treat defendant as a publisher of information provided by a third party); *see also Herrick v. Grindr, LLC*, 306 F. Supp. 3d 579, 590 (S.D.N.Y. 2018) (claim that defendant failed to "incorporate adequate protections against impersonating or fake accounts is just another way of asserting that [defendant] is liable because it fails to police and remove" content), *aff'd*, 765 F. App'x 586 (2d Cir. 2019), *cert. denied*, 140 S. Ct. 221 (2019). Nor does an allegation that the ICS received notice of the alleged unlawful nature of the content negate CDA 230 immunity. *See, e.g., Universal Commc'n Sys., Inc. v. Lycos, Inc.*, 478 F.3d 413, 420 (1st Cir. 2007); *La'Tiejira v. Facebook, Inc.*, 272 F. Supp. 3d 981, 994 (S.D. Tex. 2017).

At its core, the SAC alleges that Omegle failed to adequately monitor or screen the content or interactions of its users. (Dkt. 75 ¶¶ 120-121, 123, 132, 136, 142-145.) The Fifth Circuit's conclusion in a factually similar case is on point. In *Doe v. MySpace Inc.*, the mother of a 13-year-old girl sued MySpace for allowing her daughter to use the site and meet a 19 year old, who communicated with her via the site to arrange a meeting and assault her. 528 F.3d 413, 416 (5th Cir. 2008). Similar to the allegations here, the mother argued the site was liable for failing to implement proper safeguards. The court rejected the argument, concluding that the "allegations are merely another way of claiming that MySpace was liable for publishing the communications" between the users. *Id.* at 420.

The SAC makes vague allegations directed at Omegle's website design (*see* Dkt. 75 ¶¶ 45-47, 107, 120, 148), but courts have rejected this type of a claim where neutral tools that "are not intrinsically offensive or unlawful" are used by a third party to harass another user. *Herrick*, 306 F. Supp. 3d at 589-90; *see also Saponaro*, 93 F. Supp. 3d at 324. Here, the SAC fails to state—in a manner consistent with the plausibility standard—any claims regarding the allegedly defective design that would overcome CDA immunity. Nor could it make any such plausible allegation as Omegle's service—a means for users to communicate with one another via text or video—is the type of neutral tool that courts routinely find are covered by CDA 230 immunity.[2] *See, e.g., Dyroff v. Ultimate Software Group, Inc.*, 934 F.3d 1093, 1098 (9th Cir. 2019) (rejecting attempt to equate "content" with the website's offering of "tools meant to facilitate the communication and content of others"), *cert. denied*, 140 S. Ct. 2761 (2020); *Klayman v. Zuckerberg*, 753 F.3d 1354, 1358 (D.C. Cir. 2014).

Additionally, the SAC alleges that the allegedly offending communication originated from a third-party user as did the screenshots or video allegedly captured by that user. (*See, e.g.*, Dkt. 75 ¶¶ 59, 61-62.) The SAC is bereft of any allegation that Omegle "created or authored" the allegedly offensive communications or content. A plaintiff who claims a defendant "created or

---

[2] The decision in *Lemmon v. Snap, Inc.*, 995 F.3d 1085 (9th Cir. 2021), is of no assistance to Plaintiffs. The court concluded that plaintiffs alleged a product liability claim targeted at the interplay between the Snap "speed filter" and Snap's alleged incentive system, both of which Snap created and which plaintiffs alleged "encouraged users to drive at dangerous speeds." But the court reiterated that ICS providers are not liable for "neutral tools" when plaintiff's claims "blame them for the content that third parties generate with those tools." *Id.* at 1093-94. That is precisely the case here where Plaintiffs' claims arise from C.H.'s interaction with the other user.

developed" allegedly offensive content must do so based on "well-pleaded facts [that] permit the court to infer more than the mere possibility" of such creation and development. *Marfione v. Kai U.S.A., Ltd.*, No. 17-70, 2018 U.S. Dist. LEXIS 51066, *18-19 (W.D. Pa. Mar. 27, 2018). Plaintiffs have not satisfied that standard.

As a result, CDA 230 bars Plaintiffs' claims against Omegle.

## III.   No CDA 230 Exceptions Apply to Plaintiffs' Claims Under the Federal Child Pornography and Sex Trafficking Criminal Statutes

CDA 230 immunity is not absolute. It contains two exclusions potentially implicated by the claims alleging violations of (1) 18 U.S.C. § 2252A and (2) 18 U.S.C. §§ 1591 and 1595. First, CDA 230(e)(1) provides that CDA 230 is not intended to "impair the enforcement of [any] Federal criminal statute," including Section 2252A, the criminal statute upon which the first cause of action is based. Second, CDA 230(e)(5)(A) is a new exclusion added by the Fight Online Sex Trafficking Act ("FOSTA") that is targeted at – and limited to – alleged violations of the federal sex trafficking criminal statute, 18 U.S.C. § 1591. Both exclusions are narrow in scope and neither divest Omegle of CDA 230 immunity.

### A.   Plaintiffs' claim for alleged violation of 18 U.S.C. § 2252A is not excluded by CDA 230(e)(1)

In the first cause of action, the SAC alleges that Omegle violated 18 U.S.C. § 2252A, which makes it a crime for any person to knowingly possess or access with intent to view material that contains an image of child pornography. But this claim—which is based on the child pornography allegedly created by the other user with whom C.H. interacted—is also barred by CDA 230.

CDA 230(e)(1) states, in relevant part, that nothing in CDA 230 shall

"impair the enforcement of . . . chapter . . . 110 (relating to sexual exploitation of children) of [18 U.S.C. § 2251 *et seq.*], or any other Federal criminal statute." 47 U.S.C. § 230(e)(1). But courts have consistently construed this exception to apply only to "government prosecutions, not to civil private rights of action under [statutes] with criminal aspects." *Obado v. Magedson*, No. 13-2382 (JAP), 2014 U.S. Dist. LEXIS 104575, *27 (D.N.J. July 31, 2014), *aff'd*, 612 F. App'x 90 (3d Cir. 2015); *see also Force v. Facebook, Inc.*, 934 F.3d 53, 72 (2d Cir. 2019) ("[CDA] 230(e)(1) is quite clearly . . . limited to criminal prosecutions") (internal quotation marks omitted), *cert. denied*, 140 S. Ct. 2761 (2020). Courts have reached that conclusion with respect to the same criminal statute on which Plaintiffs' first claim is based – 18 U.S.C. § 2252A. *Doe v. Bates*, No. 5:05-CV-91-DF-CMC, 2006 U.S. Dist. LEXIS 93348, *7-8, 12 (E.D. Tex. Dec. 27, 2006) (holding – in case alleging that Yahoo! was civilly liable under Section 2252A for knowingly hosting child pornography – that CDA 230(e)(1) did not apply to such private civil suits); *see also Doe v. Reddit, Inc.*, No. SACV 21-768 JVS (KESx) at p. 10 (C.D. Cal. Oct. 7, 2021) (hereinafter, "*Reddit*, Appendix A")[3] (CDA 230 "provides immunity for interactive computer services in civil suits under § 2252A"). FOSTA did not change CDA 230(e)(1). Therefore, CDA 230 also bars Plaintiffs' civil claim based on alleged violation of Section 2252A.

Moreover, even if CDA 230 was not a bar, the SAC fails to state a plausible claim that Omegle violated Section 2252A. The SAC simply quotes the statutory

---

[3] The *Reddit* decision does not appear to be available on Lexis, therefore, for the Court's convenience, a copy obtained from PACER is attached hereto in Appendix A.

language but offers no *facts* that Omegle ever "knowingly" possessed or accessed any "image of child pornography" of C.H. that was allegedly created by the other user. (Dkt. 75 ¶ 74.) Although the SAC adds references to prior allegations in the complaint with respect to this claim (id. ¶¶ 70-72), those assertions have no apparent connection to a claim that Omegle knowingly possessed or accessed – with the intent to view – any child pornography of C.H. Rather they simply state – in conclusory fashion – "that Omegle.com knowingly possessed child pornography of C.H. that was produced" on the website. (Id. ¶ 72.) Nor can Plaintiffs plead such knowing possession or access by Omegle because there is no allegation that it had any knowledge of C.H. or her interaction with the other user before the filing of this case. To find that Omegle could be liable under such circumstances would improperly read the knowledge element out of the statute.

Thus, the Section 2252A claim (1) is barred by CDA 230 and (2) fails to state any plausible claim for relief, either of which ground warrants dismissal.

**B.    The SAC does not state a plausible claim for violation of 18 U.S.C. § 1591 and thus CDA 230(e)(5)(A)'s exception does not apply**

**1.    To overcome CDA immunity, the SAC must plausibly allege that Omegle violated Section 1591**

As relevant to the second cause of action, FOSTA removed CDA immunity for sex trafficking claims only where the ICS provider's conduct constitutes a violation of 18 U.S.C. § 1591, which imposes an actual knowledge standard. *See* 47 U.S.C. § 230(e)(5)(A) (exempting a claim under Section 1595 but only "if the conduct underlying the claim constitutes a violation of section 1591").

The growing weight of authority – relying on CDA 230(e)(5)(A)'s plain

meaning, contextual analysis, and legislative history – holds that "the most straightforward reading" is that FOSTA "provides an exemption from CDA immunity for a section 1595 claim if the civil defendant's conduct amounts to a violation of section 1591." *J.B. v. G6 Hosp., LLC*, No. 19-cv-07848-HSG, 2021 U.S. Dist. LEXIS 170338, *18 (N.D. Cal. Sept. 8, 2021). Notably, the *J.B.* court reversed its prior decision that reached a contrary conclusion. The court, "[h]aving closely reexamined the issue," concluded that the plain language of CDA 230(e)(5)(A) "withdraws immunity only for claims asserting that the defendant's own conduct amounts to a violation of section 1591." *Id.* at *14.

The *J.B.* court's conclusion is consistent with that reached by the Southern District of Florida in the earlier *Doe v. Kik Interactive, Inc.* case where it similarly held that the "plain language of the statute removes [CDA 230] immunity only for conduct that violates 18 U.S.C. § 1591." 482 F. Supp. 3d 1242, 1249 (S.D. Fla. 2020). The Central District of California also recently agreed with both the *J.B.* and *Kik* courts that the civil defendant's conduct must constitute a violation of Section 1591 to fall within CDA 230(e)(5)(A)'s narrow exception to immunity. *Reddit*, Appendix A at p. 11; *see also M.L. v. craigslist Inc.*, No. C 19-6153 BHS-TLF, 2020 U.S. Dist. LEXIS 166334, *12-14 (W.D. Wash. Sept. 11, 2020) (agreeing that "FOSTA does not create an exemption for all § 1595 claims" but concluding that CDA immunity may not apply as well-pleaded allegations indicated that craigslist may have materially contributed to the ads that trafficked plaintiff).

In reaching its conclusion, the *J.B.* court examined FOSTA's legislative history and found nothing that ran counter to the plain language reading:

> Ultimately, Congress passed a bill incorporating the provision that . . . presented a narrowed federal civil carve-out that is subject to a heightened pleading standard. Notwithstanding the well-understood challenges inherent in showing a website's knowledge, it thus appears that Congress reached a compromise by including a narrowed federal civil sex trafficking carve-out that requires plaintiffs to show the civil defendant's knowing assistance, support or facilitation[.]

2021 U.S. Dist. LEXIS 170338 at *37 (internal quotation marks and citation omitted); *see also Reddit*, Appendix A at p. 12 (stating that the "legislative history comports with the [c]ourt's reading of the plain text"). The *Kik* court likewise looked to the language of CDA 230(e)(5)(A) and FOSTA's legislative history and reached the conclusion that the *J.B.* court would later agree with:

> By its terms, FOSTA did not abrogate CDA immunity for all claims arising from sex trafficking; FOSTA permits civil liability for websites only "if the conduct underlying the claim constitutes a violation of section 1591." And section 1591 requires knowing and active participation in sex trafficking by the defendants.

*Kik*, 482 F. Supp. 3d at 1251.

The only other decision of which Omegle is aware that reached the opposite conclusion to *Kik*, *J.B.*, and *Reddit* with any significant analysis is the Northern District of California in *Doe v. Twitter, Inc.*, No. 21-cv-00485-JCS, 2021 U.S. Dist. LEXIS 157158 (N.D. Cal. Aug. 19, 2021).[4] But, although the *Twitter* court engaged in *some* analysis in concluding that the plaintiffs' claim against Twitter "based on alleged violation of Section 1591(a)(2) is not subject to the more stringent requirements that apply to criminal violations of that provision," 2021

---

[4] The Central District of California issued a decision agreeing with the *Twitter* court's conclusion but did not engage in its own analysis. *See Doe v. Mindgeek USA Inc.*, No. SACV 21-00338-CJC (ADSx), 2021 U.S. Dist. LEXIS 176833, *14 (C.D. Cal. Sept. 3, 2021). Notably, the *Mindgeek* court also relied on the earlier decision by the *J.B.* court, which that court has since reconsidered and reached the opposite conclusion. *See id.*

U.S. Dist. LEXIS 157158 at *72, little of the analysis was relevant to interpreting CDA 230(e)(5)(A) and the little that was relevant was conclusory.

For example, the court spent considerable time discussing a line of cases involving sex trafficking claims against hotel defendants. *Twitter*, 2021 U.S. Dist. LEXIS 157158 at *58-65. But, as the court itself recognized, because those cases did not involve ICS providers and therefore did not implicate CDA 230, they did not answer the question before the court. *Id.* at *65. The court then discussed the *Kik* decision but simply stated that it disagreed with that court's analysis, apparently largely relying on the principle that FOSTA is a remedial statute. *Id.* at 65-69. Purporting to rely on the "natural reading" of CDA 230(e)(5)(A), the *Twitter* court then concluded that this exception to immunity does not require proof that the ICS defendant's conduct violated Section 1591. *Id.* at *70-72. The court's alleged plain language reading was based on the premise that FOSTA intended ICS defendants to be treated no differently than other defendants to whom CDA 230 did not apply. *See id.* at *70-71. But that premise is faulty as Congress recognized the distinct circumstances and challenges presented by ICS defendants, as the *J.B.* court acknowledged in its extensive discussion of FOSTA's legislative history. 2021 U.S. Dist. LEXIS 170338 at *23-39. As a result, the *Twitter* court's alleged plain language reading is fatally undermined by its faulty premise that FOSTA – despite all evidence to the contrary – intended to treat ICS defendants no different than, for example, the hotel defendants in the cases that the court had recognized did not answer the question before it. Additionally, the remedial nature of FOSTA cannot "overcome the plain

language of the statute, especially given that section 230 as a whole is designed to provide immunity to [ICS] providers." *Reddit*, Appendix A at p. 12.

In contrast, each of the *Kik*, *J.B.*, and *Reddit* courts correctly recognized FOSTA's limited carve out to CDA immunity in concluding that the carve out applies "**if, but only if,** the defendant's conduct amounts to a violation of section 1591." *J.B.*, 2021 U.S. Dist. LEXIS 170338 at *39 (emphasis added); *see also Reddit*, Appendix A at p. 11; *Kik*, 482 F. Supp. 3d at 1250-51.

## 2.   The SAC is devoid of allegations that Omegle knowingly engaged in conduct prohibited by Section 1591

Thus, to overcome CDA immunity, the SAC must, but does not, plausibly allege that Omegle's conduct constitutes a violation of Section 1591. The SAC is devoid of facts showing that Omegle either (1) directly engaged in the alleged sex trafficking of C.H., *see* 18 U.S.C. § 1591(a)(1),[5] or (2) **knowingly** "benefit[ed], financially or by receiving anything of value, from participation in a venture" which engaged in the alleged sex trafficking of C.H., *see* 18 U.S.C. § 1591(a)(2).

### a.   *No plausible allegation that Omegle engaged in the alleged sex trafficking of C.H.*

As to any claim that Omegle itself engaged in the alleged sex trafficking of C.H., there are no allegations to support such a claim. To the contrary, the SAC

---

[5] As relevant here, Section 1591(a)(1) criminalizes the following conduct:
(a) Whoever **knowingly** –
      (1) . . . recruits, entices, harbors, transports, provides, obtains, advertises, maintains, patronizes, or solicits by any means a person . . .
. . .
knowing, or . . . in reckless disregard of the fact, . . . that the person has not attained the age of 18 years and will be caused to engage in a commercial sex act[.]
18 U.S.C. § 1591(a)(1) (emphasis added).

contains no facts showing that Omegle had any knowledge whatsoever of C.H. or her interaction with the other user, much less that Omegle knowingly recruited, obtained, provided or maintained C.H. knowing that she was under 18 and would be caused to engage in a commercial sex act. Instead, the SAC asserts generally that some users have used the Omegle website to engage in unlawful activities and exploit children "like C.H." (*See, e.g.*, Dkt. 75 ¶¶ 78-79.) Even the conclusory "assertion" that Omegle "knowingly paired C.H. with a stranger knowing that C.H. was a minor child at risk of becoming a victim" only cites to general allegations about other alleged incidents or C.H.'s interaction with the other user. (Id. ¶ 80.) But neither type of allegation contains any facts showing that *Omegle* knowingly engaged in the alleged sex trafficking of C.H. *See Kik*, 482 F. Supp. 3d at 1251 (rejecting general allegation that Kik knew of other sex trafficking incidents occurring on its platform as "section 1591 requires knowing and active participation in sex trafficking by the defendants"). The SAC, therefore, fails to plausibly allege a claim against Omegle for a primary sex trafficking violation under Section 1591(a)(1).

> **b.    *No plausible allegation that Omegle knowingly benefited from knowingly participating in a venture***

Plaintiffs' claim that Omegle knowingly benefited from knowingly participating in the alleged sex trafficking venture of C.H. under Section 1591(a)(2) is similarly deficient. To state a claim under that section, the SAC must allege that Omegle "**knowingly** . . . benefit[ed], financially or by receiving anything of value, from participation in a venture" that engaged in the

alleged sex trafficking of C.H. 18 U.S.C. § 1591(a)(2) (emphasis added). "Participation in a venture" is defined as "**knowingly** assisting, supporting, or facilitating a violation of subsection (a)(1)." 18 U.S.C. § 1591(e)(4) (emphasis added). A "venture" is defined as "any group of two or more individuals associated in fact, whether or not a legal entity." 18 U.S.C. § 1591(e)(6). The SAC fails to plausibly allege that there was a venture of any kind between Omegle and the other user, much less that Omegle knowingly assisted, supported or facilitated that user's alleged sex trafficking venture involving C.H.

First, Plaintiffs' theory of beneficiary liability under Section 1591(a)(2) is defective for the same reason that their claim for a direct violation under subsection (a)(1) is fatally flawed. Specifically, the SAC does not allege any facts that Omegle *knowingly* benefited from *knowingly* participating in the alleged sex trafficking venture of C.H. with the other user. At its core, Plaintiffs' claim is that some individuals have used Omegle's real-time chat service to exploit children and that Omegle is aware such incidents have occurred based on news reports or law enforcement inquiries. (*See, e.g.*, Dkt. 75 ¶ 79 (citing, in part, ¶¶ 41-43).) But such general awareness of alleged past incidents unrelated to C.H. does not – and cannot – establish that Omegle "knowingly" participated in and "knowingly" benefited from the alleged sex trafficking venture of C.H. To conclude otherwise would improperly sever the actual knowledge standard from Section 1591. As in *Kik*, Plaintiffs' allegation that Omegle allegedly "knew that other sex trafficking incidents occurred" on its real-time chat platform fails to "plausibly establish that [Omegle] knowingly participated in the sex trafficking

15

venture involving [C.H.]." 482 F. Supp. 3d at 1251.

Second, even under courts' interpretation of "participation in a venture" under Section 1595 – which has a lower *mens rea* standard than that applicable here under Section 1591 – the SAC fails to plausibly allege a sex trafficking venture between Omegle and the other user involving C.H.[6] A plaintiff must either allege a "direct association" between the defendant and the trafficker or "facts from which the [c]ourt could reasonably infer [defendant] could be said to have a tacit agreement with the trafficker." *Doe v. Rickey Patel, LLC*, No. 0:20-60683-WPD-CIV-DIMITROULEAS, 2020 U.S. Dist. LEXIS 195811, *13-14 (S.D. Fla. Sept. 30, 2020) (internal quotation marks omitted); *see also Reddit*, Appendix A at p. 12 (same). This requires "at least a showing of a continuous business relationship between the trafficker and [defendant]". *M.A. v. Wyndham Hotels & Resorts, Inc.*, 425 F. Supp. 3d 959, 970 (S.D. Ohio 2019).

But any such allegation is critically lacking here. The SAC fails to allege a single fact showing either a "direct association" or "continuous business relationship" between the user who allegedly engaged in the sex trafficking of C.H. and Omegle that would support the existence of a "venture." The SAC simply makes conclusory statements based on a recitation of the language of Section 1591 and references prior allegations that fail to establish any relationship between Omegle and the other user (Dkt. 75 ¶¶ 78-87), which are insufficient to

---

[6] Therefore, even in the absence of CDA immunity, Plaintiffs' claim for violation of Sections 1591 and 1595 would fail as the SAC fails to plausibly allege that Omegle participated in a "venture" under either section.

state a plausible claim. *See Iqbal*, 556 U.S. at 678 ("Threadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice."). Nor could Plaintiffs allege any such direct association or ongoing relationship between Omegle and the other user that would permit the reasonable inference of a tacit agreement between them because Omegle does not require users to register or log in to use the website (Dkt. 75 ¶¶ 36-37). Therefore, there can be no plausible allegation that Omegle had any knowledge of C.H., the other user, or that user's actions towards C.H. prior to this case, much less that Omegle had any prior or ongoing relationship with the other user.

The *J.B.* court found generalized allegations like Plaintiffs'—such as that craigslist knew its erotic services section was well known "as a place to easily locate victims"—were insufficient to establish that "Craigslist tacitly agreed to the sex trafficking of Plaintiff or others." *J.B. v. G6 Hosp., LLC*, No. 19-cv-07848-HSG, 2020 U.S. Dist. LEXIS 151213, *26-27 (N.D. Cal. Aug. 20, 2020). To conclude otherwise would result in the implausible suggestion "that Craigslist enters into tacit agreements with all traffickers (or even all posters) that use its website." *Id.* at 27. Thus, "[b]ecause Craigslist cannot be deemed to have participated in all ventures arising out of each post on its site, Plaintiff must [but did not] allege facts supporting the inference that Craigslist made a tacit agreement with the sex traffickers who victimized Plaintiff." *Id.* at 28. The *Reddit* court – agreeing with the *J.B.* court's analysis on the same question – similarly found that allegations that "Reddit has 'affiliations with sex traffickers by enabling the posting of child pornography on its websites'" and by "'making it easier to connect traffickers

17

with those who want to view'" such content were "not sufficient to show 'a continuous business relationship between' Reddit and traffickers." *Reddit*, Appendix A at p. 13. The SAC's allegations are even weaker than those in *J.B.* and *Reddit* given the lack of any prior or ongoing relationship between Omegle and the other user, much less any relationship involving the alleged sex trafficking of C.H. Even the *Twitter* decision is distinguishable on its facts. That court agreed with the "continuous business relationship" standard but found it was satisfied in part because of allegations that Twitter was notified on several occasions of the nature of the content at issue but either refused or failed to take action. *Twitter*, 2021 U.S. Dist. LEXIS 157158 at *73-77. No such allegation of any relationship between Omegle and the alleged perpetrator has been nor could be made here that could plausibly support a tacit agreement between Omegle and the other user with respect to the alleged sex trafficking of C.H.

Third, Section 1591 requires a "causal relationship between affirmative conduct furthering the sex-trafficking venture and receipt of a benefit, with . . . knowledge of that causal relationship." *Geiss v. Weinstein Co. Holdings LLC*, 383 F. Supp. 3d 156, 169 (S.D.N.Y. 2019). But the SAC alleges no facts demonstrating Omegle's receipt of a benefit causally related to any affirmative conduct that furthered the alleged sex trafficking venture of C.H.[7] To the contrary, it simply

---

[7] Notably, in *Geiss*, the court recognized that the "knowingly benefit" language is the same in Sections 1591 and 1595 and therefore "consider[ed] the 'benefits' element to have the same content in both provisions." 383 F. Supp. 3d at 169 n.5. Thus, even in the absence of CDA immunity, Plaintiffs' claim would fail because the SAC fails to plausibly allege that Omegle "knowingly" benefited from participating in the alleged sex trafficking venture involving C.H. as required by both Section 1591 and Section 1595.

repeats the statutory language, stating without factual support that Omegle "knowingly" benefited from the alleged sex trafficking venture perpetrated by the other user. (Dkt. 75 ¶¶ 83-84, 87.) The assertions added to this claim in the SAC do not cure this deficiency. (*See* id. ¶¶ 78-80.) Such conclusory statements that merely parrot the statutory language are insufficient to state a claim for relief. *Jabagat v. Lombardi*, No. 1:14CV89-HSO-RHW, 2015 U.S. Dist. LEXIS 178762, *11 (S.D. Miss. Jan. 30, 2015) (plaintiff's "conclusory allegation[] that 'Defendants knowingly benefitted financially' [was a] mere recitation of the elements of the cause of action" and insufficient to state a claim).

## IV.   Plaintiffs' Other Claims Also Fail As a Matter of Law

As shown above, CDA 230 bars Plaintiffs' claims. But Plaintiffs' other claims discussed below also fail on their own merits as a matter of law.

### A.   Plaintiffs' VPPA claim is fatally and irreparably deficient

The Video Privacy Protection Act, 18 U.S.C. § 2710 ("VPPA"), was enacted with the narrow purpose of "preserv[ing] personal privacy with respect to the rental, purchase, or delivery of video tapes or similar audio visual materials[.]" *Ellis v. Cartoon Network, Inc.*, 803 F.3d 1251, 1253 (11th Cir. 2015) (internal quotation marks omitted). As an initial matter, this claim fails because it is abundantly clear from the SAC that Plaintiffs are attempting to bring a COPPA (Children's Online Privacy Protection Act) claim cloaked awkwardly as a VPPA claim. For example, in the "assertions" added by the SAC, Plaintiffs explicitly reference and implicitly rely on COPPA's prohibitions and definitions. (Dkt. 75 ¶¶ 90-93.) But Plaintiffs cannot use the VPPA – which does not apply to

Omegle's real-time chat service – to bring a COPPA claim when COPPA provides them no private right of action. *See Hubbard v. Google LLC*, No. 19-cv-07016-BLF, 2020 U.S. Dist. LEXIS 239936, *17 (N.D. Cal. Dec. 21, 2020).

Plaintiffs fail to state a VPPA claim for at least three other independent reasons: (1) Omegle is not a "video tape service provider" ("VTSP"); (2) C.H. is not a "consumer"; and (3) Omegle did not disclose C.H.'s "personally identifiable information" ("PII") to a third party.

**Omegle is Not a VTSP.**  The SAC must, but does not, plausibly allege that Omegle is a VTSP, which is narrowly defined as "any person, engaged in the business . . . of rental, sale, or delivery of **prerecorded video cassette tapes or similar audio visual materials**[.]" 18 U.S.C. § 2710(a)(4) (emphasis added). The SAC is devoid of any facts showing that Omegle falls within this definition. The new "assertions" in the SAC only relate to COPPA and are therefore irrelevant to whether Omegle is a VTSP. (Dkt. 75 ¶¶ 90-93.) Instead, Plaintiffs simply quote the VTSP definition and then assert, in conclusory fashion, that Omegle "deliver[s] videos recorded on its website." (Id. ¶ 94.) But that conclusion is false; Plaintiffs do not and cannot allege that Omegle is a VTSP as it does not offer "prerecorded" videos. As Plaintiffs' own allegations show, the Omegle website permits users to engage in *real-time* chats with one another using text or their webcams. (Id. ¶¶ 33, 36.) Offering users a means to essentially engage in a video call in no way equates with offering prerecorded video content for viewing. Even assuming that services that stream prerecorded content are encompassed within the VTSP definition (an issue the Court need not decide), Omegle is not such a

service as it merely provides a means for users to chat with one another in real time. Thus, the SAC does not, and cannot, allege that Omegle is a VTSP.

**C.H. is not a consumer under the VPPA.**  The VPPA claim also fails for the independent reason that C.H. is not a "consumer," defined as "any renter, purchaser, or subscriber of goods or services from a [VTSP]." 18 U.S.C. § 2710(a)(1). C.H. does not claim to be a "renter" or "purchaser," therefore, only the "subscriber" option remains. The SAC alleges only that "[a]s a user of the [Omegle] website, C.H. is a consumer". (Dkt. 75 ¶ 95.) But being a "user" of a website does not make one a "subscriber."

Courts have held that "something more" than visiting a website or downloading an app and viewing videos is required to be a "subscriber" under the VPPA. In *Ellis v. Cartoon Network, Inc.*, the Eleventh Circuit found that the "common thread" of the dictionary definitions was that "'subscription' involves some type of commitment, relationship, or association (financial or otherwise) between a person and an entity." 803 F.3d at 1256. The court found that plaintiff—who downloaded defendant's free app and viewed free content—did not satisfy the definition. *Id.* at 1257; *see also Perry v. CNN, Inc.*, 854 F.3d 1336, 1343-44 (11th Cir. 2017) (merely downloading an app was insufficient to be a "subscriber"). Similarly, in *Austin-Spearman v. AMC Network Entm't LLC*, plaintiff viewed video clips on AMC's website for free without any required login. 98 F. Supp. 3d 662, 664 (S.D.N.Y. 2015). Like *Ellis*, the court required evidence of a more "durable" and "ongoing" relationship for plaintiff to be a "subscriber." *Id.* at 669. *Compare Yershov v. Gannett Satellite Info. Network, Inc.*, 820 F.3d 482, 489 (1st

Cir. 2016) (distinguishing the insufficient allegations in *Ellis* and finding that the plaintiff in the case before the court had alleged the required "something more").

The SAC fails to plausibly allege the "something more" required for C.H. to be a "subscriber" of Omegle's real-time chat service. C.H. admits to being a one-time user of the website where no payment, registration or log in is required. (Dkt. 75 ¶¶ 36, 57, 95.) "Such casual consumption of web content, without any attempt to affiliate with or connect to the provider, exhibits none of the critical characteristics of 'subscription' and therefore does not suffice to render [C.H.] a 'subscriber'." *Austin-Spearman*, 98 F. Supp. 3d at 669. Thus, because C.H. is not a "consumer," the VPPA claim should be dismissed on this independent ground.

**No PII Disclosed as Defined by the VPPA.**  The VPPA claim should be dismissed on the independent ground that the SAC does not allege that Omegle disclosed PII, which the VPPA defines as "information which identifies a person as having requested or obtained specific video materials or services from a [VTSP]." 18 U.S.C. § 2710(a)(3).

Courts have recognized the narrow purpose of, and the correspondingly narrow definition of PII in, the VPPA. *See In re Nickelodeon Consumer Privacy Litig.*, 827 F.3d 262, 284 (3d Cir. 2016) (the VPPA's purpose "was quite narrow: to prevent disclosures of information that would, with little or no extra effort, permit an ordinary recipient to identify a particular person's video-watching habits"). Courts have also rejected attempts—like that which Plaintiffs make here—to import COPPA's definition of PII to expand or replace the VPPA's narrow definition. *Id.* at 286-88. Consistent with its limited purpose, the VPPA

only "protects [PII] that identifies a specific person and ties that person to particular videos that the person watched." *In re Nickelodeon*, 827 F.3d at 285 (internal quotation marks omitted); *see also Perry v. CNN*, No. 1:14-CV-02926-ELR, 2016 U.S. Dist. LEXIS 179395, *9 (N.D. Ga. Apr. 20, 2016). Thus, a VPPA claim must plausibly allege the VTSP knew it was disclosing: "1) a user's identity; 2) the identity of the video material; and 3) the connection between the two—*i.e.*, that the given user had 'requested or obtained' the given video material." *In re Hulu Privacy Litig.*, 86 F. Supp. 3d 1090, 1097 (N.D. Cal. 2015).

The VPPA claim fails to plausibly allege any of these requirements for PII. The only information alleged to be PII under the VPPA is the unspecified "geolocation" allegedly disclosed by the other user. (Dkt. 75 ¶ 92.) But the SAC does not, and cannot, allege that this "geolocation" is capable, by itself, of (1) identifying C.H., (2) identifying video material, and (3) identifying the connection between the two (e.g., that she requested or obtained that specifically-identified video material).

Any of these reasons support dismissing the VPPA claim with prejudice.

## B.    Plaintiffs' IIED claim is properly dismissed

To state a claim for intentional infliction of emotion distress ("IIED") under Florida law,[8] Plaintiffs must establish that: (1) defendant's conduct was

---

[8] The substantive law of the forum state, Florida, applies to the state law claims absent an actual conflict of law. *Stone v. Wall*, 135 F.3d 1438, 1441 (11th Cir. 1998). There only appears to be a false conflict between the law of Florida and the law of New Jersey (Plaintiffs' state of residence) with respect to the state law claims, at least for purposes of the limited issues addressed in this Motion. *Estate of Miller v. Thrifty Rent-A-Car Sys., Inc.*, 609 F. Supp. 2d 1235, 1244 (M.D. Fla. 2009) (a false conflict exists where, among other situations, the laws of the states are the same or different but would produce the same outcome).

"intentional or reckless, *i.e.*, he intended his behavior when he knew or should have known that emotional distress would likely result;" (2) the conduct was "outrageous, *i.e.*, beyond all bounds of decency, atrocious and utterly intolerable in a civilized community;" and (3) the conduct caused severe emotional distress. *State Farm Mut. Auto. Ins. Co. v. Novotny*, 657 So. 2d 1210, 1212 (Fla. Dist. Ct. App. 1995); *see also Buckley v. Trenton Sav. Fund Soc'y*, 544 A.2d 857, 863 (N.J. 1988). But an IIED claim "will lie only where the defendant's conduct is so outrageous in character and so extreme in degree as to go beyond the bounds of decency and to be deemed utterly intolerable in a civilized society." *State Farm*, 657 So. 2d at 1212; *see also Buckley*, 544 A.2d at 863. Whether the SAC meets this exceedingly high standard is for the Court to decide as a matter of law. *Hendricks v. Rambosk*, No. 2:10-cv-526-FtM-29DNF, 2011 U.S. Dist. LEXIS 40608, *11 (M.D. Fla. Apr. 14, 2011); *Buckley*, 544 A.2d at 864. The SAC alleges that Omegle's "outrageous conduct" was its alleged failure to prevent children from using its website and to monitor the site "to ensure that its users were not being sexually abused, mistreated, or exploited[.]" (Dkt. 75 ¶ 132.) But this general allegation fails to state a plausible IIED claim.

First, there is no IIED claim where a party "does no more than pursue his legal rights in a permissible way, even if he knows his conduct will cause emotional distress to the plaintiff." *State Farm*, 657 So. 2d at 1212; *see also* RESTATEMENT (SECOND) OF TORTS § 46 cmt. g. As discussed above, Omegle has no obligation to monitor or police third-party users of its site. Stated differently, Omegle has the legal right to make decisions about monitoring its site and

therefore its exercise of that right cannot give rise to an IIED claim.

Second, this alleged conduct does not rise to the "extremely high" level of outrageous conduct necessary for an IIED claim. Demonstrating the extreme conduct necessary for an IIED claim, Florida courts have found insufficiently outrageous "even offensive and harmful conduct[] such as accusing someone of committing a felony or making explicit racial slurs." *Neely v. Wells Fargo Fin., Inc.*, No. 8:12-cv-542-T-33AEP, 2012 U.S. Dist. LEXIS 168669, *8 (M.D. Fla. Nov. 28, 2012); *see also Griffin v. Tops Appliance City, Inc.*, 766 A.2d 292, 296-97 (N.J. Super. Ct. App. Div. 2001) (New Jersey courts have found the "elevated threshold" for outrageous conduct "only in extreme cases"). The alleged conduct by Omegle is no different in kind than any other social networking website or app that offers users the means to communicate with one another in real time, including Facebook, Twitter, Discord, WhatsApp, Zoom, Microsoft Teams and many others. Therefore, Omegle's alleged conduct is not out of the norm and cannot be considered so "outrageous" or "extreme" as to permit liability for IIED.

Therefore, even setting aside the conclusion that CDA 230 bars this claim, the SAC fails to state a claim for IIED as a matter of law.

**C.     The intrusion upon seclusion claim fails to state a plausible claim**

An intrusion upon seclusion claim requires three elements: (1) "a private quarter"; (2) "some physical or electronic intrusion into that private quarter"; and (3) "the intrusion must be highly offensive to a reasonable person." *Stasiak v. Kingswood Co-op, Inc.*, No. 8:11-cv-1828-T-33MAP, 2012 U.S. Dist. LEXIS 20609, *5 (M.D. Fla. Feb. 17, 2012); *see also Friedman v. Martinez*, 231 A.3d 719, 722 (N.J.

25

2020). As to the third element, Florida courts have incorporated the outrageousness standard of IIED claims. *Stasiak*, 2012 U.S. Dist. LEXIS 20609 at *6; *compare Friedman*, 231 A.3d at 729 (New Jersey courts require a "highly offensive" intrusion). Here, the SAC vaguely alleges that C.H.'s PII and "viewing data" were "surreptitious[ly] collect[ed] and track[ed]," and that Omegle purportedly engaged in "surreptitious highly-refined tracking of its website's users through video." (Dkt. 75 ¶¶ 105-106.) But these vague allegations, which omit any actual facts, do not state a plausible claim for intrusion. Moreover, the "assertions" added to the SAC – regarding alleged exposure of geolocation, age verification for children, and the alleged pairing of C.H. with another user of the real-time chat (id. ¶¶ 101-103) – have no bearing on an intrusion claim.

First, the intrusion claim cannot be based only on C.H.'s use of her webcam in the real-time chat with other users. Although Plaintiffs attempt to paint Omegle as a "voyeur" surreptitiously commandeering the webcam to secretly observe C.H. (*see* id. ¶ 104), that is false. C.H. elected to engage in video chats with other users, which necessarily required use of a webcam.

Second, the SAC's vague allegations fail to either establish an objectively reasonable expectation of privacy or demonstrate that the alleged intrusion would be highly offensive or outrageous to a reasonable person. The SAC fails to allege that Omegle collected any information that in fact identified C.H. or her "viewing data." It also fails to allege any facts to explain how Omegle "tracked" C.H. "through video." (Id. ¶ 106.) And to the extent Plaintiffs contend the intrusion was any screenshots or video captured by the other user, that alleged

intrusion was committed by the user, not Omegle. Finally, to the extent Plaintiffs rely on the alleged collection or exposure of C.H.'s "geolocation," such collection is not sufficiently offensive to support an intrusion claim.

Courts have rejected intrusion claims alleging the collection of much more specific information than the unspecified "geolocation" or "viewing data" alleged here. For example, in one such case, plaintiffs alleged an intrusion claim against Viacom and Google for the use of cookies placed on the computers of visitors to their websites. They alleged that the cookies collected information about their children and tracked their web browsing and video viewing activities. *In re Nickelodeon*, 827 F.3d at 269. As to Google, the court found that the use of tracking cookies was not "sufficiently offensive, standing alone, to survive a motion to dismiss."[9] *Id.* at 294-95. Similarly, in *Manigault-Johnson v. Google, LLC*, the court rejected an intrusion claim based on the alleged collection of children's PII. No. 2:18-cv-1032-BHH, 2019 U.S. Dist. LEXIS 59892 (D.S.C. Mar. 31, 2019). Defendants had collected PII from children under 13 who viewed videos on their apps and websites without parental notice and consent. The court concluded that this was not "sufficiently offensive conduct" to state an intrusion claim. *Id.* at *14-18; *see also Popa v. Harriet Carter Gifts, Inc.*, 426 F. Supp. 3d 108, 112, 122-23 (W.D. Pa. 2019) (website's collection of user's name, residential and email addresses, keystrokes and mouse clicks, not sufficiently outrageous conduct).

Similarly, here, the allegation that Omegle collected C.H.'s "geolocation"

---

[9] As to Viacom, the court reached a different conclusion because of the "duplicitous tactics" it used in collecting the information. *Id.* at 295.

or "viewing data" fails to allege the type of highly offensive conduct required for an intrusion claim. This claim should be dismissed on this independent ground.

### D.    Plaintiffs fail to state a claim for negligence as a matter of law

The elements of a negligence claim are familiar: "1) the existence of a duty recognized by law; 2) failure to perform that duty; and 3) injury or damage to the plaintiff proximately caused by such failure." *Action Sec. Serv., Inc. v. Am. Online, Inc.*, No. 6:03-cv-1170-Orl-22DAB, 2005 U.S. Dist. LEXIS 50842, \*20 (M.D. Fla. May 27, 2005); *see also Jersey Cent. Power & Light Co. v. Melcar Util. Co.*, 59 A.3d 561, 571 (N.J. 2013). The existence of a duty is a threshold requirement and a question of law for the court. *Virgilio v. Ryland Group, Inc.*, 680 F.3d 1329, 1339 (11th Cir. 2012); *see also Carvalho v. Toll Bros. & Developers*, 675 A.2d 209, 212 (N.J. 1996). Plaintiffs allege variously that Omegle owed "C.H. and the general public" (1) "a duty to use ordinary care in designing, maintaining, and distributing its products and services to children", (2) "a duty of care to provide a safe online community," and (3) "an ongoing, non-delegable duty to continue to monitor, supervise, inspect, and assess the use of service and application [sic] to prevent the mistreatment of its users." (Dkt. 75 ¶¶ 117, 119, 121.)

Although foreseeability is an important component of the determination whether a duty exists, public policy considerations can also play a role. *See e.g.*, *Estate of Desir ex rel. Estiverne v. Vertus*, 69 A.3d 1247, 1256 (N.J. 2013) (noting that "because imposing a duty based on foreseeability alone could result in virtually unbounded liability," New Jersey courts have "been careful to require that the analysis be tempered by broader considerations of fairness and public policy");

28

*Biglen v. Fla. Power & Light Co.*, 910 So. 2d 405, 409 (Fla. Dist. Ct. App. 2005) ("Finding that a legal duty exists in a negligence case involves the public policy decision that a defendant should bear a given loss, as opposed to distributing the loss among the general public.") (internal quotation marks omitted).

Even assuming the SAC plausibly alleges the foreseeability of harm, other considerations weigh heavily against imposing a duty upon Omegle to be the guarantor of the safety of the users of its website against harm perpetrated by their fellow users. For example, the relationship between Omegle and C.H. is at best fleeting—C.H. had never used the Omegle website before the day the alleged incident occurred, she was not required to register with or log into the website, and she was not required to make any payment to Omegle. In short, C.H.'s "relationship" with Omegle was no more substantial than her "relationship" with any other website she visited. The SAC's vague allegations also do not demonstrate any "special relationship" that would support imposing a duty. Fairness and public policy counsel against imposing a duty of care under these circumstances. A number of cases have declined to impose such a duty on websites that facilitate users' communications.

For example, in *Dyroff v. Ultimate Software Group, Inc.*, plaintiff alleged that a website had a duty to warn her son who died from an overdose of fentanyl-laced heroin purchased from a dealer he met on the website. No. 17-cv-05359-LB, 2017 U.S. Dist. LEXIS 194524, *1, 30 (N.D. Cal. Nov. 26, 2017). The district court found that there was no special relationship between a website and its users that would support imposing a duty to warn and no other ground to impose an

29

ordinary duty of care. *Id.* at \*36-40. The Ninth Circuit affirmed, noting that "[n]o website could function if a duty of care was created when a website facilitates communication, in a content-neutral fashion, of its users' content." *Dyroff*, 934 F.3d at 1101. Similarly, in *Doe No. 14 v. Internet Brands, Inc.*, defendant offered a website on which aspiring models could post profiles. No. CV 12-3626-JFW (PJWx), 2016 U.S. Dist. LEXIS 192144, \*1-2 (C.D. Cal. Nov. 14, 2016). Two individuals used the website to identify targets for a scheme under which they would pose as talent scouts and lure the models to a fake audition where they were drugged and assaulted. Defendant learned that these individuals were using the website to identify targets and plaintiff subsequently became a victim of it. *Id.* at \*2, 4. Plaintiff sued the site alleging a negligent failure to warn. But the court dismissed the claim, finding that the site had no duty to warn either plaintiff or its users generally about the risk of the perpetrators' scheme. *Id.* at \*13-14 (finding "no exceptional reason to depart from the general common law rule that one owes no duty to control the conduct of another, nor to warn those endangered by such conduct") (internal quotation marks omitted).

Imposing a duty of care on Omegle—much less the impossible duty of guaranteeing website users' safety—would be both ineffectual and unjust. No website that facilitates users' communications—including all social networking sites—could function if such a duty were imposed. Thus, because no duty exists, the negligence claim fails (in addition to being barred by CDA 230).

   **E.    The public nuisance claim is implausible and should be dismissed**

The SAC asserts that "Omegle created and developed a public nuisance

Omegle.com which violates public rights, and subverts public order, decency, and morals [and] inconveniences and damages the general public, including Plaintiff [sic]." (Dkt. 75 ¶¶ 148-149.) But "the tort of public nuisance fundamentally involves the vindication of a right common to the public." *In re Lead Paint Litig.*, 924 A.2d 484, 496 (N.J. 2007) (citing RESTATEMENT § 821B). Critical to such a claim is "some interference with a public right", which is a right "common to all members of the general public." RESTATEMENT § 821B, cmt. g ("It is collective in nature and not like the individual right that everyone has not to be assaulted or defamed or defrauded or negligently injured."). But the SAC fails to plausibly allege that Omegle's chat service implicates a "public right" that is "common to all members of the general public." Their conclusory statements do not "raise a right to relief above the speculative level" and are insufficient to state a claim for relief. *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007). Thus, even if CDA 230 did not bar this claim, it would fail on its own merit as a matter of law.

### F.    There is no cause of action for ratification/vicarious liability

The SAC's addition of "assertions" to the cause of action for "ratification/vicarious liability" cannot rescue it because it is not a cognizable cause of action. In that "claim," the SAC alleges that Omegle is "vicariously liable for the conduct of the 'cappers' because they [sic] ratified their conduct, knowingly received the benefits of said conduct [and] created, developed, and maintained a forum to entice, encourage and enable the sharing of such conduct." (Dkt. 75 ¶¶ 143-144.) But "ratification" and "vicarious liability" "are not independent causes of action[,] they are theories of liability for other claims."

31

*Ceithami v. Celebrity Cruises, Inc.*, 207 F. Supp. 3d 1345, 1349 (S.D. Fla. 2016); *see also Williams v. Verizon N.J., Inc.*, No. 2:19-09350-KM-MAH, 2020 U.S. Dist. LEXIS 43528, *32 (D.N.J. Mar. 12, 2020). Thus, this "claim" should be dismissed.

## V.    Leave to Amend Should Not Be Granted

Notwithstanding the general liberal standard for pleading amendments, courts routinely deny leave to amend when CDA 230 bars the claims on the ground that amendment would be futile. *See, e.g.*, *Kik*, 482 F. Supp. 3d at 1251-52 (amendment futile as CDA 230 would also bar plaintiff's proposed new claims); *Saponaro*, 93 F. Supp. 3d at 322 (dismissing complaint with prejudice based in part on CDA 230). This case is no different. Plaintiffs' claims are largely, if not entirely, barred by CDA 230. Even assuming that the VPPA claim is not barred by CDA 230, any attempted amendment to that claim is futile as the statute simply does not apply. Additionally, the deficiencies in Plaintiffs' claims were described in Omegle's prior two motions to dismiss. But despite having the opportunity to twice amend their complaint, Plaintiffs failed to address those deficiencies, strongly suggesting that they cannot be cured by amendment. Thus, because further amendment would be futile, the SAC should be dismissed with prejudice. *Coventry First, LLC v. McCarty*, 605 F.3d 865, 870 (11th Cir. 2010) (futility of amendment is a proper ground to dismiss with prejudice).

## CONCLUSION

Therefore, for the reasons stated herein, Omegle respectfully requests that Plaintiffs' SAC be dismissed in its entirety and without leave to amend.

## LOCAL RULE 3.01(g) CERTIFICATION

Pursuant to Local Rule 3.01(g), counsel for Defendant represents that they have conferred with counsel for Plaintiffs. However, the parties were unable to reach agreement with respect to the relief requested in this Motion.

DATED:    October 13, 2021                    Respectfully submitted,

FOCAL PLLC                                              THOMAS & LoCICERO PL

By:  s/ *Stacia N. Lay*                              By:  s/ *James J. McGuire*
    Stacia N. Lay, *Pro Hac Vice*              James J. McGuire (FBN 187798)
    Venkat Balasubramani, *Pro Hac Vice*      601 South Boulevard
    900 1st Avenue S., Suite 201                Tampa, Florida 33606
    Seattle, Washington 98134                   Telephone: (813) 984-3060
    Telephone: (206) 529-4827                   jmcguire@tlolawfirm.com
    stacia@focallaw.com
    venkat@focallaw.com                         Daniela B. Abratt (FBN 118053)
                                  915 Middle River Dr., Suite 309
                                  Fort Lauderdale, Florida 33304
                                  Telephone: (954) 703-3416
                                  dabratt@tlolawfirm.com

*Attorneys for Defendant Omegle.com, LLC*

## CERTIFICATE OF SERVICE

I hereby certify that on October 13, 2021, a true and correct copy of the foregoing will be served electronically through the Clerk of Court's CM/ECF filing system. I further certify that I mailed the foregoing document and the notice of electronic filing by first-class mail, postage prepaid, to any parties that do not participate in the CM/ECF filing system.

                                s/ *Stacia N. Lay*
                                  Stacia N. Lay