# UNITED STATES DISTRICT COURT
# MIDDLE DISTRICT OF FLORIDA
# TAMPA DIVISION

M.H. and J.H., on behalf of their
minor child C.H.,

                    Plaintiffs,

     v.

OMEGLE.COM, LLC,

                    Defendant.

Civil Action No. 21-cv-00814

## PLAINTIFFS' OPPOSITION TO DEFENDANT OMEGLE.COM, LCC'S MOTION TO DISMISS PLAINTIFFS' COMPLAINT

# **TABLE OF CONTENTS**

TABLE OF CONTENTS ....................................................................................... i

TABLE OF AUTHORITIES ............................................................................... iii

MEMORANDUM OF LAW IN OPPOSITION ................................................... 1

RELEVANT FACTS ........................................................................................... 1

ARGUMENT ....................................................................................................... 4

  I.   THE PLAINTIFFS ALLEGE SUFFICENT FACTS UNDER THE
       MOTION TO DISMISS STANDARD ................................................... 4

  II.  OMEGLE IS NOT ENTITLED TO SECTION 230 IMMUNITY AND
       THE PLAINTIFFS ARE ENTITLED TO DISCOVERY ........................ 5

     A.   Omegle Knowingly Violated 18 U.S.C. §§ 2252A and 1591 ............... 5

     B.   Omegle is Liable Under 18 U.S.C. §§ 2255 and 1595 ........................ 6

  III. THE PLAINTIFFS PROPERLY PLEADED CLAIMS UNDER
       18 U.S.C. § 2255 ("MASHA'S LAW") ........................................... 7

  A.  Masha's Law Provides C.H. with a Civil Remedy Against Omegle ........ 7

     B.   Omegle Knowingly Produced and Possessed Child Pornography in
        Violation of 18 U.S.C. § 2252A ........................................................ 9

     C.   Omegle Played a Causal Role in C.H.'s Actual Losses ..................... 10

     D.   Omegle Caused C.H. to Suffer Personal Injury ............................... 12

  IV. THE PLAINTIFFS PROPERLY PLEADED CLAIMS UNDER
       18 U.S.C. § 1595 ("FOSTA") ...................................................... 13

     A.   Omegle Knowingly Enticed and Harbored Child Pornography
        Crimes on its Platform ...................................................................... 13

     B.   Omegle Knowingly Benefitted from an Online Sex Trafficking
        Venture Involving C.H. ..................................................................... 14

     C.   Omegle is Liable for Knowingly Benefitting from "Cappers" on its
        Platform ............................................................................................ 15

  V.  THE PLAINTIFFS CLEARLY PLEADED VPPA VIOLATIONS ......... 16

     A.   The Plaintiffs Properly Alleged that Omegle is a "Video Service
        Provider" .......................................................................................... 16

     B.   C.H. Properly Pleaded That She Was an Omegle Subscriber .......... 17

C.   The Plaintiffs Properly Pleaded that Omegle Disclosed C.H.'s Personally Identifiable Information .................................................... 17

VI.  THE PLAINTIFFS PROPERLY ALLEGED SUFFICIENT COMMON LAW CLAIMS AGAINST OMEGLE ...................................................... 18

A.   The Plaintiffs Properly Pleaded Claims for Intentional Infliction of Emotional Distress .............................................................. 18

B.   The Plaintiffs Properly Pleaded Claims for Intrusion Upon Seclusion 19

C.   The Plaintiffs Properly Pleaded Claims for Negligence ................... 19

D.   The Plaintiffs Allege Omegle is a Public Nuisance........................... 20

CONCLUSION.............................................................................................. 20

CERTIFICATE OF SERVICE........................................................................ 22

# TABLE OF AUTHORITIES

## Cases

*A.B. v. Hilton Worldwide Holdings Inc.,* 2020 WL 5371459
(D. Or. Sept. 8, 2020) ..................................................................... 16

*Ashcroft v. Iqbol*, 556 US 662 (2009)............................................... 4

*Barnes v. Yahoo!, Inc.,* 570 F.3d 1096 (9th Cir. 2009), as amended
(Sept. 28, 2009) .............................................................................. 6

*Bell Atl. Corp. v. Twombly,* 550 U.S. 544 (2007)........................... 4

*In re Boland,* 946 F.3d 335 (6th Cir. 2020)...................................... 12

*B.M. v. Wyndham*, 2020 WL 4368214 ............................................ 15

*Brooks v. Blue Cross & Blue Shield of Fla. Inc.*, 116 F.3d 1364
(11th Cir. 1997) .............................................................................. 5

*Broberg v. Carnival Corp.*, 303 F. Supp. 3d 1313 (S.D. Fla. 2017) ........... 18

*Doe v. Bates*, No. 5:05-CV-91-DF-CMC, 2006 WL 3813758
(E.D. Tex. Dec. 27, 2006) .............................................................. 9

*Doe v. Hesketh*, 828 F.3d 159 (3rd Cir. 2016) ............................... 10

*Doe v. Twitter, Inc.*, No. 21-CV-00485-JCS, 2021 WL 3675207
(N.D. Cal. Aug. 19, 2021).............................................................. 16

*Doe S.W. v. Lorain-Elyria Motel, Inc.,* No. 2:19-CV-1194, 2020 WL
1244192 (S.D. Ohio Mar. 16, 2020).............................................. 16

*Ellis v. Cartoon Network, Inc.*, 803 F.3d 1251 (11th Cir., 2015) ............ 17

*Flo-Sun, Inc. v. Kirk,* 783 So. 2d 1029 (Fla. 2001) ..................... 20

*H.H. v. G6 Hosp., LLC*, 2019 WL 6682152 (S.D. Ohio Dec. 6, 2019) ........ 16

*J.C. v. Choice Hotels Int'l, Inc., No.* 20-CV-00155-WHO,
2020 WL 6318707 (N.D. Cal. Oct. 28, 2020).............................. 16

*Kirk v. U.S. Sugar Corp.*, 726 So. 2d 822 (Fla. Dist. Ct. App. 1999) ........ 20

*Lemmon v. Snap, Inc.*, 995 F.3d 1085 (9th Cir. 2021) .................................. 7

*New York v. Ferber*, 458 U.S. 747 (1982) ..................................................... 11

*Osborne v. Ohio*, 495 U.S. 103 (1990) .......................................................... 11

*In re Nickelodeon Consumer Privacy Litigation,* 827 F.3d 262
(3d Cir. 2016) ................................................................................................. 17

*Paroline v. United States*, 572 U.S. 434 (2014) ..................................... 11-12

*Sacco v. Eagle Finance Corp. of North Miami Beach*, 234 So.2d 406
(Fla. 3d DCA 1970) ........................................................................................ 19

*Smith v. United States,* 508 U.S. 223 (1993) .............................................. 13

*S. Y. v. Naples Hotel Co.,* 2020 WL 4504976 (M.D. Fla. Aug. 5, 2020)..... 15

*Tilton v. Playboy Entm't Group, Inc.,* 554 F.3d 1371 (11th Cir.2009) ...... 10

*United States v. Flanders,* 752 F.3d 1317 (11th Cir. 2014) ....................... 15

*United States v. Hristov*, 466 F.3d 949 (11th Cir. 2006)............................. 10

*United States v. Jones,* 565 U.S. 400 (2012) .............................................. 18

*United States v. Thomas*, 893 F.2d 1066 (9th Cir. 1990)............................. 9

*United States v. Tollefson*, 367 F. Supp. 3d 865
(E.D. Wis. 2019) ............................................................................................ 15

*Vanlandingham v. City of Abbeville, Alabama*, 483 F. Supp. 3d 1174,
(M.D. Ala. 2020) .............................................................................................. 4

*Yershov v. Gannett Satellite Information Network, Inc.,*
820 F.3d 482 (1st Cir., 2016) ................................................................. 17, 18

## Statutes and Rules

16 U.S.C. § 6501-6505................................................................................. 17

18 U.S.C § 1591(a) ..............................................................................passim

18 U.S.C. § 1595..................................................................................passim

18 U.S.C. § 2252A ................................................................................. 6,7

18 U.S.C. § 2255 .............................................................................. passim

18 U.S.C. § 2710(a)(4) ........................................................................... 18

47 U.S.C. § 230 ....................................................................................... 5

Fed. R. Civ. P. 12(b)(6) ........................................................................... 4

Fed. R. Civ. P. 8(a)(2) ............................................................................. 9

16 C.F.R. 312.2 ..................................................................................... 18

## **Secondary Sources**

Cong. Rec. S14195 (12-20-05) ................................................................ 11

Claire Finkelstein, *Is Risk a Harm?,* 151 U. PA. L. REV. 963, 964
(2003) ................................................................................................ 12

JOSHUA DRESSLER, UNDERSTANDING CRIMINAL LAW 122
(4th ed. 2006) .................................................................................... 12

*United States Department of Justice Manual* (2020) .................................. 8

## <u>MEMORANDUM OF LAW IN OPPOSITION</u>

In their motion to dismiss (Dkt. 78), Defendant Omegle.com, LLC ("Omegle") continues to deny responsibility for its actions and disclaims any liability to Plaintiffs despite the rapidly evolving legal landscape which increasingly holds Internet Service Provider's ("ISP") liable for the harms they facilitate and oftentimes create. Plaintiffs' Second Amended Complaint states plausible claims for relief under 18 U.S.C. §§ 2255 and 1595, and common law. Particularly at this early stage, without the benefit of discovery, and given that much of the relevant evidence is primarily if not exclusively in the hands of the Defendant, dismissal of the complaint would be wholly improper, unfair, and premature.

WHEREFORE, for the reasons stated herein, Plaintiffs respectfully request that the Court deny Defendant Omegle's Motion to Dismiss the Amended complaint.

## <u>RELEVANT FACTS</u>

Omegle promotes, markets, and advertises itself as a place to "Talk to strangers!" (Dkt. 75 ¶43). Omegle maintains itself as a "matchmaking" service to connect people who access their platform with strangers via video. (Dkt.75 ¶44). Omegle pairs users randomly and in some cases matches users according to similarities in conversations and subjects. (Dkt. 75 ¶¶33-34). Omegle does not require any age verification or

authentication. (Dkt. 75 ¶37). Omegle fails to prevent minors under the age of thirteen from accessing its website. (Dkt. 75 ¶¶38, 42). Since at least 2016, the use of Omegle's website by predators was known to the public and to Omegle. (Dkt. 75 ¶41). Activists have recorded videos of themselves on Omegle attempting to catch predators. (Dkt. 75 ¶40-41). Omegle has full knowledge of the extent to which its website is used to sexually target, groom, exploit, and abuse children like the Plaintiff C.H. (Dkt. 75 ¶43). Omegle manufactured a product which caters to child predators and receives value for the intended use of its website and related services. (Dkt. 75 ¶¶45-46).

During the COVID-19 pandemic, C.H. attended school remotely and as such her school provided her with a Chromebook. (Dkt. 75 ¶54). Omegle knew that child predators or "cappers"[1] use its website to exploit children by creating child sex abuse material and other illicit and illegal content—including screen-captured videos—and that this content was being shared on Omegle and other internet platforms. (Dkt. 75 ¶¶39, 40, 43, 44, 55). Omegle knowingly received value, such as through advertisements on their platform, for the use of their product as a tool for

---

[1] A "capper" is a website user who tricks children into committing a sexual act online via live stream while screen capturing or recording the video. *See* New Sextortion Tactics Reported to Cybertip.ca. (April 1, 2020). Retrieved May 17, 2021 from https://www.cybertip.ca/app/en/ctipalerts

child exploitation, child pornography, and child sex abuse. (Dkt. 75 ¶¶ 46, 48, 49, 56, 84).

On or about March 31, 2020, C.H. accessed Omegle's website Omegle.com. (Dkt. 75 ¶57). Omegle initially paired her with a group of minors who appeared to her to be older. (Dkt. 75 ¶57). Upon being paired in a second chat, C.H. encountered a black screen. Shortly thereafter, C.H. saw text being typed on the black screen. (Dkt. 75 ¶58). This unknown user ("John") provided C.H. with her geolocation. John also threatened to hack the cell phones and computers in C.H.'s house. (Dkt. 75 ¶59). C.H. pleaded with John to leave her alone. (Dkt. 75 ¶60).

John then instructed C.H. to remove all her clothing—including her underwear—and to touch, fondle, and masturbate her naked genitals in front of the camera. (Dkt. 75 ¶61). C.H. pleaded with John and offered gift cards to him in lieu of complying with his demands. *Id.* John demanded that she remove her clothing and display her genitals. *Id.* Eventually, C.H. complied with John's demands, removed all her clothing, and touched herself in a sexually explicit manner. *Id.* John recorded C.H.'s actions, forever memorializing her child sex abuse performance. (Dkt. 75 ¶62).

Omegle knew that children like C.H. were at risk of encountering predators like John on its website Omegle.com. Omegle holds itself out to be

a platform that "monitors" user content. (Dkt. 75 ¶¶50-52). Omegle actively matches underage children with adult strangers. *Id.* Omegle also knew that its profits, in the form of increased web traffic and advertising revenue, were increased in part because child predators like John—who are known to Omegle as "cappers"—took explicit recordings of children like C.H. and shared them online. (Dkt. 75 ¶63). In early 2020, "cappers" such as John flocked to omegle.com to take advantage of the unprecedented increase in opportunities to engage with children online. (Dkt. 75 ¶65). Immediately after this incident, C.H. notified her parents about what occurred and M.H. and J.H. reported the incident to law enforcement. (Dkt. 75 ¶66).

## ARGUMENT

## I.   THE PLAINTIFFS ALLEGE SUFFICENT FACTS UNDER THE MOTION TO DISMISS STANDARD

A Fed. R. Civ. P. 12(b)(6) motion to dismiss tests whether the complaint provides: "a short and plain statement of the claim showing that the pleader is entitled to relief." Fed. R. Civ. P. 8(a)(2). *See Vanlandingham v. City of Abbeville, Alabama*, 483 F. Supp. 3d 1174, 1179–80 (M.D. Ala. 2020). This "does not require 'detailed factual allegations.'" *Bell Atl. Corp. v. Twombly,* 550 U.S. 544, 570 (2007). The reviewing court is "to draw on its judicial experience and common sense." *See Ashcroft v. Iqbol*, 556 U.S. 662, 679 (2009). A complaint should not be

dismissed for failure to state claim unless no set of facts would entitle the plaintiff to relief. *See Twombly*, 550 U.S. at 570. In this case, the Plaintiffs amply pleaded their claims. Plaintiffs are entitled to the presumption that they alleged true facts and Plaintiffs are entitled to reasonable inferences in their favor. *Brooks v. Blue Cross & Blue Shield of Fla. Inc.*, 116 F.3d 1364, 1369 (11th Cir. 1997). Even if the Court questions Plaintiffs' claims, dismissal is nonetheless improper. All evidence is in the primary—if not exclusive—control of Omegle. Plaintiffs are entitled to an opportunity to obtain that evidence. Omegle's motion fails as a matter of law.

## II.   OMEGLE IS NOT ENTITLED TO SECTION 230 IMMUNITY AND THE PLAINTIFFS ARE ENTITLED TO DISCOVERY

### A.   Omegle Knowingly Violated 18 U.S.C. §§ 2252A and 1591

Omegle's conduct falls outside the bounds of the Communications Decency Act's ("CDA") protection. 47 U.S.C. § 230. Section 230 ("CDA 230") contains an exemption which eliminates immunity for civil claims "brought under section 1595 of Title 18, if the conduct underlying the claim constitutes a violation of section 1591[.]" 47 U.S.C. § 230 (e)(5)(A). The same exemption applies to 18 U.S.C. § 2255. The liability limitation in CDA 230 is not premised exclusively upon whether the content in question originated with a third party. Rather "subsection 230(c)(1)

precludes liability when the duty the plaintiff alleges the defendant violated derives from the defendant's status or conduct as a publisher or speaker." *Barnes v. Yahoo!, Inc.,* 570 F.3d 1096, 1107 (9th Cir. 2009), as amended (Sept. 28, 2009). The Plaintiffs do not allege that Omegle was a publisher or speaker of third-party communications. The Plaintiffs instead allege, that Omegle knowingly received value by knowingly creating a dangerous forum which connected unsuspecting children to pedophiles and child molesters. (Dkt. 75 ¶61). Omegle's motion should be denied because—especially with internet crimes involving child sex trafficking—the civil remedies in Chapter 110 are a necessary component of the federal law enforcement scheme found at 18 U.S.C. §§ 2252A and 1591.

### B.    Omegle is Liable Under 18 U.S.C. §§ 2255 and 1595

The Plaintiffs' complaint clearly alleges facts that Omegle knowingly participated in trafficking child pornography and knowingly received financial gain from the creation of C.H.'s child pornography. (Dkt. 75 ¶¶39, 40, 43, 44, 55). Omegle has a duty to comply with the law to uphold its own terms of service. The Plaintiff's product defect claims are not premised on Omegle's status as a speaker or publisher but as the designer, creator, developer, producer, and maintainer of a tool that Omegle knew or should have known posed a danger to children like C.H. Omegle's duty to design a safe product is fully independent and separate

6

from Omegle's role in monitoring or publishing third-party content. *See Lemmon v. Snap, Inc.*, 995 F.3d 1085 (9th Cir. 2021). Furthermore, Omegle has long known that "cappers" use its website to sexually abuse children and memorialize that abuse online for eternity. (Dkt. 75 ¶65).

## III.   THE PLAINTIFFS PROPERLY PLEADED CLAIMS UNDER 18 U.S.C. § 2255 ("MASHA'S LAW")

The Plaintiffs properly pleaded claims under 18 U.S.C. § 2255 for violations of 18 U.S.C. § 2252A and are entitled to the relief Congress intended.

### A.   Masha's Law Provides C.H. with a Civil Remedy against Omegle

C.H. suffered personal injury because Omegle knowingly facilitated the production of her child pornography in violation of Masha's Law which states: (Dkt. 75 ¶¶ 72, 74)

> Any person who, while a minor, was a victim of a violation of section 1589, 1590, 1591, 2241(c), 2242, 2243, 2251, 2251A, 2252, 2252A, 2260, 2421, 2422, or 2423 of this title and who suffers personal injury as a result of such violation, regardless of whether the injury occurred while such person was a minor, may sue in any appropriate United States District Court…

18 U.S.C. § 2255 (Pub. L. 115–126, title I, 102, Feb. 14, 2018, 132 Stat. 319).

A plain reading of Section 2255's non-limiting language indicates that it allows plaintiffs to "sue [anyone] in any appropriate United States District Court." Congress did not limit actionable defendants to convicted criminals,

individuals, or entities. As long as a plaintiff can gain jurisdiction over a

party "in any appropriate United States District Court," a plaintiff can sue.

There is nothing unique or unusual about Title 110 offenses which limit

criminal actions to individuals. The United States Department of Justice

Manual ("JM") emphasizes that:

> Corporations should not be treated leniently because of their
> artificial nature nor should they be subject to harsher treatment.
> Vigorous enforcement of the criminal laws against corporate
> wrongdoers, where appropriate, results in great benefits for law
> enforcement and the public…. Indicting corporations for
> wrongdoing enables the government to be a force for positive
> change of corporate culture, and a force to prevent, discover, and
> punish serious crimes.

9-28.000 – Principles of Federal Prosecution of Business Organizations,

*United States Department of Justice* (2020), https://www.justice.gov/jm/jm-9-

28000-principles-federal-prosecution-business-organizations (last visited

Nov. 2, 2021).

Federal prosecutors are encouraged to prosecute "large scale

distributors of obscene material who realize substantial income from their

multi-state operations." (JM, 9-75.000 – Child Sexual Exploitation, Sexual

Abuse, and Obscenity, 2020). In addition, "prosecution of cases involving

relatively small distributors can have a deterrent effect and […] may be

appropriate on a case-by-case basis." *Id*.

Omegle's argument that only individuals can be liable for child pornography offenses is wrong. (Dkt. 78, p.9). Omegle's reliance on an obscure unpublished district court decision from 15 years ago is unpersuasive and irrelevant. *See Doe v. Bates*, No. 5:05-CV-91-DF-CMC, 2006 WL 3813758 (E.D. Tex. Dec. 27, 2006). The Court should disregard *Bates* in its entirety.

## B.   Omegle Knowingly Produced and Possessed Child Pornography in Violation of 18 U.S.C. § 2252A

The Plaintiffs properly allege that Omegle "knowingly' violated 18 U.S.C. § 2252A. In *United States v. Thomas*, 893 F.2d 1066 (9th Cir. 1990), the "knowingly" standard for child pornography crimes was interpreted as not requiring actual knowledge that either the visual depiction portrayed sexually explicit conduct or the fact that a participant in that conduct was a minor. The Plaintiffs are not required to prove that Omegle had actual knowledge that it was specifically producing or possessing C.H.'s sexually explicit images.

The Court should not superimpose an artificial *mens rea* requirement on child pornography crimes. The scienter required for civil liability is not greater than scienter for criminal liability. The Plaintiffs sufficiently pleaded facts that Omegle received a thing of value, promised that they monitor the activity on their website, and were aware of "cappers," or predators on their platform. (Dkt. 75, ¶55). Such knowledge makes them liable. (Dkt. 78, p.9).

Furthermore, Omegle knowingly matched minors like C.H. with predators like "Doe." (Dkt. 75, ¶41-43). "Knowledge through deliberate indifference occurs where a party acts with an awareness of the high probability of the existence of the fact in question[.]" *See Tilton v. Playboy Entm't Group, Inc.*, 554 F.3d 1371, 1378 (11th Cir. 2009) (*quoting United States v. Hristov*, 466 F.3d 949, 952 (11th Cir. 2006)).

## C.  Omegle Played a Causal Role in C.H.'s Actual Losses

In *Doe v. Hesketh*, 828 F.3d 159, 168 (3rd Cir., 2016), a district court evaluated the propriety a civil claim under 18 U.S.C. § 2255. After examining the legislative history, the court observed that allowing such a claim "…is consistent with Congress's remedial scheme for child victims of sex crimes." *Doe v. Hesketh*, *supra* at 168. The court further noted:

> The law's general purpose is to provide […] compensation to child pornography victims[.] *See* 152 Cong. Rec. H5705-01 (daily ed. July 25, 2006) (statement of Rep. Gingrey) ("Currently, a person who illegally downloads music faces penalties in civil court that are three times as harsh as a person who downloads child pornography. This horrible inequity was the inspiration behind the introduction of Masha's Law…"); *see also* 151 Cong. Rec. S14187-03 (daily ed. Dec. 20, 2005) (statement of Sen. Kerry) ("This legislation increases the civil penalties recoverable by victims of child sexual exploitation, including internet child pornography").

*Doe v. Hekseth, supra* at 171.

Masha's Law was intended "to provide meaningful civil remedies for victims of the sexual exploitation of children…." Cong. Rec. S14195 (12-20-05). At the outset, Senator Kerry, one of two sponsors of the bill, explained that the purpose of the legislation was "to increase civil penalties for child exploitation." He noted that child pornography had become a "multi-billion-dollar internet business."

Over thirty-five years ago, in *New York v. Ferber*, 458 U.S. 747, 759 (1982), the Supreme Court held that the harm from trafficking child pornography "poses an even greater threat to the child victim than does sexual abuse or prostitution" because the victim must "go through life knowing that the recording is circulating within the mass distribution system for child pornography."

In *Osborne v. Ohio*, 495 U.S. 103, 104 (1990), the Supreme Court recognized that "such materials […] may be used by pedophiles to seduce other children." More recently, in *Paroline v. United States*, 572 U.S. 434, 440 (2014), the Supreme Court eloquently described the injury flowing to the victim from a child pornography offense:

> [C]hild pornography is "a permanent record" of the depicted child's abuse, and "the harm to the child is exacerbated by [its] circulation."

In *Paroline*, a child pornography victim sought restitution under 18 U.S.C.

§ 2259. The Supreme Court analyzed at length the concept of proximate

cause for child pornography injuries:

> [C]ourts have departed from the but-for standard where
> circumstances warrant, especially where the combined conduct of
> multiple wrongdoers produces a bad outcome.

*Id.* at 451. The Court noted that multiple actors play "a part in sustaining

and aggravating this tragedy." *Id.* at 457. It is "Congress' clear intent that

victims of child pornography be compensated." *Id.*

### D.    Omegle Caused C.H. to Suffer Personal Injury

C.H. suffered personal injury as a result of Omegle's causal role in her

abuse. For child pornography victims, "there is a legal presumption of injury"

in cases brought under Section 2255. *In re Boland,* 946 F.3d 335, 339 (6th

Cir. 2020). Placing a child in jeopardy of harm results in "victim" status. *See*

JOSHUA DRESSLER, UNDERSTANDING CRIMINAL LAW 122 (4th ed.

2006). At minimum, C.H. suffered from an invasion of her personal security,

thereby suffering harm. *See id.* at 122 ("'[S]ocial harm' may be defined as the

negation, endangering, or destruction of an individual, group, or state

interest which was deemed socially valuable.") (internal quotation omitted).

"[A] risk of harm on another damages that interest, thus lowering the

victim's baseline welfare." Claire Finkelstein, *Is Risk a Harm?,* 151 U. PA. L.

REV. 963, 964 (2003) (answering "yes" to the question posed in the title of the

article). Thus, Omegle exposed C.H. to the distinct harm of child pornography offenses. Omegle's facilitation of child pornography production resulted in C.H. losing control over the distribution of her child sex abuse images. Omegle is therefore liable to C.H. for the damages it caused.

## IV.   THE PLAINTIFFS PROPERLY PLEADED CLAIMS UNDER 18 U.S.C. § 1595 ("FOSTA")

### A.   Omegle Knowingly Enticed and Harbored Child Pornography Crimes on its Platform

The Plaintiffs cause of action under the Fight Online Sex Trafficking Act ("FOSTA"), 18 U.S.C. § 1595, state a plausible claim for relief. Section 1591(a)(1) provides for liability against an entity who "knowingly…in or affecting interstate or foreign commerce…recruits, entices, harbors, transports, provides, obtains, advertises, maintains, patronizes, or solicits by any means a person," while "knowing, or…in reckless disregard of the fact…that the person has not attained the age of 18 years and will be caused to engage in a commercial sex act[.]" 18 U.S.C. § 1591(a). These terms should be construed in their "ordinary or natural" meanings. *Smith v. United States,* 508 U.S. 223, 228 (1993) (internal citation omitted). The Plaintiffs allege that Omegle knowingly benefitted from and participated in the activities of "cappers" which harmed C.H. while using its platform. (Dkt. 75 ¶¶39, 40, 43, 44, 55).

## B.      Omegle Knowingly Benefitted from an Online Sex Trafficking Venture Involving C.H.

Section 1591(a)(2) provides for liability against those who "knowingly…benefits financially or by receiving anything of value, from participation in a venture which has engaged in an act described in violation of paragraph (1)…knowing, or…in reckless disregard of the fact…that the person has not attained the age of 18 years and will be caused to engage in a commercial sex act[.]" 18 U.S.C. § 1591(a). Commercial sex act "means any sex act, on account of which anything of value is given to or received by any person[.]" 18 U.S.C. § 1591(e)(3). "Participation in a venture" is "knowingly assisting, supporting, or facilitating a violation of subsection (a)(1)." 18 U.S.C. § 1591(e)(4).

Similarly, Section 1595(a) allows sex trafficking victims to sue those who benefit financially from the damages caused by the sex trafficking venture: "An individual who is a victim…may bring a civil action against the perpetrator (or whoever knowingly benefits, financially or by receiving anything of value from participation in a venture which that person knew or should have known has engaged in an act in violation of this chapter)." 18 U.S.C. § 1595(a). C.H. is minor victim of child pornography produced using Omegle's website.

## C.    Omegle is Liable for Knowingly Benefitting from "Cappers" on its Platform

The Plaintiffs allege that Omegle knowingly received value for their participation in a venture which Omegle knew endangered C.H. Omegle knowingly recruited, enticed, harbored, obtained, advertised, maintained, patronized, and/or solicited that venture. Such action can be the basis for claims under 18 U.S.C. § 1591. *See e.g., United States v. Flanders,* 752 F.3d 1317, 1330 (11th Cir. 2014); *United States v. Tollefson*, 367 F. Supp. 3d 865, 878-880 (E.D. Wis. 2019) (denying dismissal even though a 13-year-old created pornography of herself over an app and was the primary actor in creating the material).

Section 1595 serves as a civil remedy for criminal action under Section 1591. Section 1591(a)(2) and 1595 nevertheless contain the same language concerning the financial benefit element of the standard. *Compare* 18 U.S.C. § 1591(a) ("Whoever knowingly…benefits, financially or by receiving anything of value[.]") with 18 U.S.C. § 1595(a)("[W]hoever knowingly benefits, financially or by receiving anything of value[.]").

In *B.M. v. Wyndham*, 2020 WL 4368214, at *4, the Court concluded that hotels knowingly received revenue from room rentals where sex trafficking occurred. Numerous other courts have taken this approach. *See S. Y. v. Naples Hotel Co.,* 2020 WL 4504976, at *3 (M.D. Fla. Aug. 5,

2020); *J.C. v. Choice Hotels Int'l, Inc., No.* 20-CV-00155-WHO, 2020 WL 6318707, at *4 (N.D. Cal. Oct. 28, 2020) (same); *H.H. v. G6 Hosp., LLC,* 2019 WL 6682152, at *2 (S.D. Ohio Dec. 6, 2019) (same); *Doe S.W. v. Lorain-Elyria Motel, Inc.,* No. 2:19-CV-1194, 2020 WL 1244192, at *5 (S.D. Ohio Mar. 16, 2020) (same); *A.B. v. Hilton Worldwide Holdings Inc.,* 2020 WL 5371459, at *7 (D. Or. Sept. 8, 2020) (same). Applying this same standard to Omegle's knowledge of the activities underlying Plaintiffs' Section 1595 claim, Omegle knowingly received a benefit and a thing of value by selling advertisements, as well as by monetizing, enabling, and participating in the activities of "cappers." (Dkt. 75 ¶¶39, 40, 43, 44, 51, 55). Section 230(e)(5)(A) "creates an exemption to Section 230 immunity for civil sex trafficking claims[.]" *Doe v. Twitter,* Inc., No. 21-CV-00485-JCS, 2021 WL 3675207, at *24-25 (N.D. Cal. Aug. 19, 2021).

## V.   THE PLAINTIFFS CLEARLY PLEADED VPPA VIOLATIONS

### A.   The Plaintiffs Properly Alleged that Omegle is a "Video Service Provider"

Omegle denies that it is a "video tape service provider" because Omegle provides live-streaming services. Since C.H. plainly alleges what the law requires, the Court must, at this stage of the litigation, accept the competent pleading that Omegle is a "video service provider" within the meaning of the VPPA until evidence competent indicates otherwise.

16

## B.    C.H. Properly Pleaded That She Was an Omegle Subscriber

Omegle argues that C.H. was not Omegle's "subscriber." However, Omegle overlooks the fact Omegle matched C.H. with another subscriber "John." C.H. was not a first-time user of Omegle when her injury occurred. (Dkt. 75 ¶39-40). Upon loading the Omegle website, C.H. had to do more than simply downloading an application like the plaintiff in *Ellis v. Cartoon Network, Inc.*, 803 F.3d 1251, 1257 (11th Cir., 2015). Courts differ on the meaning of "subscriber." *See Yershov v. Gannett Satellite Information Network, Inc.*, 820 F.3d 482 (1st Cir., 2016). The definition of "subscriber" illustrated in *Yershov* is simply "[a]n agreement to receive or be given access to electronic texts or services." *Id*. at 487. Much like the plaintiff in *Yershov* who provided his mobile location, the Plaintiff became an Omegle "subscriber." *Id*. at 489.

## C.    The Plaintiffs Properly Pleaded that Omegle Disclosed C.H.'s Personally Identifiable Information

The "broad definition" of Personally Identifiable Information ("PII") includes "geolocation" (Dkt. 75 ¶21); *See* 16 U.S.C. § 6501-6505. Although "[n]orms about…private information on the Internet are both constantly in flux and often depend on the novelty of the technology at issue" (*In re Nickelodeon Consumer Privacy Litigation,* 827 F.3d 262, 284 (3d Cir. 2016)),

the Supreme Court specifically recognized the particularly sensitive nature of

an individual's geolocation. *United States v. Jones,* 565 U.S. 400, 412 (2012)

(tracking might constitute "an unconstitutional invasion of privacy").

What is more, in *Yershov,* supra, 820 F.3d at 486, anything identifying a

party's "home and work addresses" constitutes PII. *See* 18 U.S.C.

§ 2710(a)(4). C.H. properly alleges that the geolocation collected from her

by Omegle furnished "John" with the information needed to identify where

she lived and as a consequence threaten, blackmail, and sexually exploit her.

COPPA specifically prohibits services like Omegle from collecting, let alone

disclosing, any PII from a child under the age of 13 without first obtaining a

parents' "verifiable consent." (Dkt. 75 ¶¶22-23); *See* 16 C.F.R. 312.2.

Omegle failed to prevent C.H. from using and being fully ensnared by its

"service" and did not even "require any age verification or authentication."

(Dkt. 75 ¶37). Accordingly, the Defendant's motion must be denied.

## VI.    THE PLAINTIFFS PROPERLY ALLEGED SUFFICIENT COMMON LAW CLAIMS AGAINST OMEGLE

### A.    The Plaintiffs Properly Pleaded Claims for Intentional Infliction of Emotional Distress

Plaintiff's common law claims are properly pled. *See Broberg v.*

*Carnival Corp.*, 303 F. Supp. 3d 1313, 1318 (S.D. Fla. 2017). Here, the

ongoing risk that C.H.'s child pornography will be distributed surely

compounds the trauma she endured. In *Broberg*, the court declined to

dismiss plaintiff's intentional infliction of emotional distress claim in order to allow the parties to further develop the record. *Id.* Omegle's motion should be denied because the Plaintiffs are entitled to discovery.

## B. The Plaintiffs Properly Pleaded Claims for Intrusion Upon Seclusion

Under Florida law intrusions include "electronic" intrusions into private matters. *See Sacco v. Eagle Finance Corp. of North Miami Beach*, 234 So.2d 406, 407–08 (Fla. 3d DCA 1970). Unlike other privacy torts, publication is not required. *Id.* C.H. properly pleaded claims entitling her to "the right of a private person to be free from public gaze." *Id.*

## C. The Plaintiffs Properly Pleaded Claims for Negligence

Omegle attempts to evade accountability for its conduct by arguing that it does not have any special relationship with or duty to C.H. Its argument fails to recognize Omegle's role in the creation of C.H.'s child sex abuse images. Omegle's contentions to the contrary show the truly hollow nature of Omegle's terms of service and age requirements.

Omegle's own monitoring policies and the strategies used by Omegle's to report child pornography and child sex abuse material give rise to its liability. This is reinforced by Omegle's own terms of service which faintly prohibit C.H.'s use of Omegle.

### D.    The Plaintiffs Allege Omegle is a Public Nuisance

Omegle's activities damage children by causing discomfort, inconvenience, annoyance, and other damage to C.H. and other vulnerable children. The Plaintiffs maintain that the "judicial branch alone has the will, the authority, the power and the independence to abate this ongoing nuisance." *See Flo-Sun, Inc. v. Kirk,* 783 So. 2d 1029 (Fla. 2001) *quoting Kirk v. U.S. Sugar Corp.*, 726 So. 2d 822, 824 (Fla. Dist. Ct. App. 1999).

### <u>CONCLUSION</u>

The Plaintiffs presented both cognizable legal theories and sufficient facts in support. Read in the light most favorable to the Plaintiffs, their complaint has properly alleged violations of 18 U.S.C. §§ 2252A and 1591. Therefore, the Plaintiffs advanced potentially viable claims under 18 U.S.C. §§ 2255 and 1595. The proximate cause determination in the *Paroline* decision supports Plaintiff's rights to civil claims under 18 U.S.C. § 2255. Congress intended to permit victims of child pornography crimes to recover against defendants who possess their childhood sexual abuse images through a civil action under 18 U.S.C. §§ 2255 and 1595. The Court should deny Omegle's motion to dismiss in its entirety.

DATED:    New York, New York
          November 3, 2021

**HACH ROSE SCHIRRIPA &
CHEVERIE, LLP**

by_____/s/ Hillary Nappi_____
Frank R. Schirripa, Esq. *Pro Hac Vice*
Hillary M. Nappi, Esq. *Pro Hac Vice*
112 Madison Avenue, 10th Floor
New York, New York 10016
Phone: (212) 213-8311

**MARSH LAW FIRM PLLC**

by_____/s/ Jennifer Freeman_____
Jennifer Freeman, Esq.,
Florida Attorney Registration No. 1014236
31 Hudson Yards, 11th Floor
New York, New York 10001
Phone: (212) 372-3030
Email: JenniferFreeman@marsh.law

by_____/s/ Margaret E. Mabie_____
Margaret E. Mabie, Esq. *Pro Hac Vice*
31 Hudson Yards, 11th Floor
New York, New York 10001
Phone: (212) 372-3030
Email: MargaretMabie@marsh.law

*Attorneys for Plaintiffs*

## <u>CERTIFICATE OF SERVICE</u>

I hereby certify that on November 3, 2021, I caused a copy of Plaintiffs'

Opposition to Defendant's Motion to Dismiss to be served upon counsel of

record for the Defendant *via* email and the Court's ECF system.

<u>    /s/ Margaret E. Mabie       </u>